Reed R. Kathrein (139304)
Peter E. Borkon (212596)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

*Attorneys for Proposed Lead Plaintiffs*

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANIKA R. RIECKBORN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VELTI, PLC, ALEX MOUKAS, WILSON W. CHEUNG, and JEFFREY G. ROSS,<br><br>Defendants. | No. 13-cv-3889 WHO<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO CONSOLIDATE, TO APPOINT VELTI INVESTOR GROUP (GLASSMAN) AS LEAD PLAINTIFF AND TO APPROVE PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS<br><br>Date: November 27, 2013<br>Time: 9:00 a.m.<br>Dept: Courtroom 2, 17th Floor<br>Judge: Hon. William H. Orrick |
| CHRIS VAFINIS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VELTI, PLC, ALEX MOUKAS, WILSON W. CHEUNG, and JEFFREY G. ROSS,<br><br>Defendants. | No. 13-cv-3954 YGR |

010401-11  653195 V1

| | |
|---|---|
| HAN LEE, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>VELTI, PLC, ALEX MOUKAS, WILSON W. CHEUNG, and JEFFREY G. ROSS,<br><br>    Defendants. | No. 13-cv-4140 SI |
| RAYMOND MANABAT, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>VELTI, PLC, ALEX MOUKAS, WILSON W. CHEUNG, JEFFREY G. ROSS, WINNIE W. TSO, CHRIS KASKAVELIS, DAVID W. MANN, DAVID C. HOBLEY, JERRY GOLDSTEIN, NICHOLAS P. NEGROPONTE, JEFFRIES & COMPANY, INC., RBC CAPITAL MARKETS, LLC, NEEDHAM & COMPANY, LLC, CANACCORD GENUITY INC., and THINKEQUITY LLC,<br><br>    Defendants. | No. 13-cv-4606 JSC |

010401-11 653195 V1

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ..............................................................................................1

II. ARGUMENT ..........................................................................................................................2

    A. Yadegar Has Not Established That He is an Appropriate Lead Plaintiff ....................2

        1. Yadegar failed to demonstrate that he has standing to sue..............................3

        2. Yadegar's trading pattern and amounts make him atypical. ...........................5

        3. Yadegar's certification is defective. ................................................................6

    B. The Glassman Group Should Be Appointed Lead Plaintiff ........................................6

        1. The Glassman Group has the largest financial interest. .................................6

        2. The Glassman Group satisfies the requirements of Rule 23. .........................6

            a. The Glassman group is both adequate and typical. .............................7

            b. The Glassman Group is a cohesive group under the PSLRA..............8

            c. Selection of counsel supports the Glassman Group's adequacy. ........9

    C. The Presumption in Favor of the Glassman Group Cannot Be Rebutted by Proof.....9

III. CONCLUSION .....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Baydale v. Am. Express Co.*,
   2009 WL 2603140 (S.D.N.Y., Aug. 14, 2009) ............................................................................3

*Crossen v. CV Therapeutics*,
   2005 U.S. Dist. LEXIS 41396 (N.D. Cal., Aug. 9, 2005) ...........................................................7

*Eichenholtz v. Verifone Holdings, Inc.*,
   2008 WL 3925289 (N.D. Cal., Aug. 22, 2008) ...........................................................................5

*Ferrari v. Gisch*,
   225 F.R.D. 599 (C.D. Cal. 2004) ...............................................................................................10

*Hodges v. Immersion Corp.*,
   2009 U.S. Dist. LEXIS 122565 (N.D. Cal., Dec. 21, 2009) ........................................................5

*In re Bally Total Fitness Sec. Litig.*,
   2005 U.S. Dist. LEXIS 6243, 2005 WL 627960 (N.D.Ill., Mar. 15, 2005) .................................5

*In re Bard Associates, Inc.*,
   2009 WL 4350780 (10th Cir., Dec. 2, 2009) ..............................................................................3

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) .............................................................................................2, 6, 10

*In re Charles Schwab Secs. Litig.*,
   2008 U.S. Dist. LEXIS 116650 (N.D. Cal., July 3, 2008) ..........................................................8

*In re IMAX Sec. Litig.*,
   2009 WL 1905033 (S.D.N.Y., Jun. 29, 2009) .............................................................................3

*In re Network Assocs. Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) ........................................................................................8

*In re SLM Corp. Sec. Litig.*,
   258 F.R.D. 112 (S.D.N.Y. 2009) .................................................................................................3

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ....................................................................................................................3

*MVP Asset Mgmt. (USA) LLC v. Vestbirk*,
   2011 WL 1457424 (E.D. Cal., Apr. 14, 2011) ............................................................................5

*Northstar Fin. Advisors, Inc. v. Schwab Investments*,
   609 F. Supp. 2d 938 (N.D. Cal. 2009) ........................................................................................3

*Siegall v. Tibco Software, Inc.*,
    2006 WL 1050173 (N.D. Cal., Feb. 24, 2006) .................................................................. 6

*Sprint Communs. Co., L.P. v. APCC Servs.*,
    128 S. Ct. 2531 (2008) ..................................................................................................... 5

*Steiner v. Aurora Foods, Inc.*,
    2000 U.S. Dist. LEXIS 20341 (N.D. Cal., June 5, 2000) ............................................. 6, 8

*Takeda v. Turbodyne Techs., Inc.*,
    67 F. Supp. 2d 1129 (C.D. Cal., 1999) ............................................................................ 7

*Tanne v. Autobytel, Inc.*,
    226 F.R.D. 659 (C.D. Cal., 2005) .................................................................................. 10

*W.R. Huff Asset Mgmt. v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008) ............................................................................................ 4

*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................................................................ 3

**STATUTES**

15 U.S.C. §§ 78u-4(a)(1)-(3)(b)(iii)(I) ....................................................................................... 2

15 U.S.C. § 78u-4(a)(3)(B) ......................................................................................................... 6

15 U.S.C. § 78u-4(a)(3)(B)(iii) ................................................................................................... 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................................... 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb) ........................................................................................ 1, 9

**OTHER AUTHORITIES**

Rule 23 ................................................................................................................................ *passim*

Rule 23(a) ................................................................................................................................... 7

Rule 23(a)(3) ........................................................................................................................... 6, 7

Rule 23(a)(4) ........................................................................................................................... 6, 7

## I. PRELIMINARY STATEMENT

Lead Plaintiff Movant, Velti Investor Group II ("VIG II" or "the Glassman Group"), consisting of Bruce Glassman, James Caudle, George Syllantavos, Edward O'Connor, Leonard Doherty, and Fedon John Capas, respectfully submits this Reply Memorandum in Further Support of the Glassman Group's motion to: 1) consolidate the related cases; 2) appoint the Glassman Group as Lead Plaintiff; 3) approve of its selection of Hagens Berman Sobol Shapiro, LLP ("Hagens Berman") as Lead Counsel for the Class; and, 4) in opposition to all competing motions.

Of the nine competing Lead Plaintiff motions submitted, all but two have withdrawn: Bobby Yadegar ("Yadegar"); and the Glassman Group.[1] The Glassman Group, suffered losses of $1,139,040.01 as a result of its members' purchases of Velti PLC securities during the period January 27, 2011, through August 20, 2013, inclusive (the "Class Period"). In contrast, Yadegar personally appears to have suffered no losses. Rather, he is attempting to "bring this litigation on behalf of" others who he claims to control or with whom he has a family relationship. Furthermore, even if Yadegar demonstrates that he has standing, the reported trading history is atypical and Yadegar cannot satisfy the requirements of Rule 23.

Thus, on the papers alone, the Glassman Group has "the largest financial interest in the relief sought" among class members seeking to be appointed Lead Plaintiff who also satisfy the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb). Accordingly, the Glassman Group is the presumptive "most adequate plaintiff."

As for the Glassman Group, competing movants have not, to date, contested the adequacy of Mr. Glassman or the individual members of the Glassman Group. The Glassman Group submitted their Joint Declaration demonstrating that they are a cohesive and dedicated group of experienced investors who have chosen to come together to vigorously represent the Class as Lead Plaintiff and have chosen highly capable counsel. *See* ECF No. 61. Based on the pending motions and supporting

---

[1] The withdrawn motions, or statements of non-opposition, were filed by (1) the Public Pension Funds, ECF No. 59; (2) Todd Deutsch and Donna Chehebar, ECF No. 52; (3) Nigel and Nicola Hopkinson, ECF No. 63; (4) Velti Investor Group (Weiss), ECF No. 54; (5) Wilie Jones, ECF No. 58; and (6) Ronald Slates, ECF No. 54. One group, the Velti Investor Group (Spenser), ECF No. 26 does not appear to have filed a second round of supporting papers.

1  papers, the Glassman Group's motion seeking appointment of the entire group or, if the Court deems

2  appropriate, a subset of individuals from the group should be granted.

3  **II.     ARGUMENT**

4  **A.     Yadegar Has Not Established That He is an Appropriate Lead Plaintiff.**

5  The PSLRA is clear; the movant with the largest financial interest in the relief sought by the

6  class who also satisfies Rule 23 is presumptively the "most adequate plaintiff."  15 U.S.C. §§ 78u-

7  4(a)(1)-(3)(b)(iii)(I); *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).  Here, Yadegar submits a

8  certification alleging the largest financial interest in this litigation but fails to establish whether the

9  transactions on his certification resulted in injury to him or the third parties who own those

10 transactions.  He also submits a 235 page transactional report showing a trading pattern that appears

11 to demonstrate atypical trading behavior.  Accordingly, Yadegar cannot satisfy Rule 23.

12 Yadegar's certification purports to be on behalf of four accounts which bear the names of

13 entities for which Mr. Yadegar fails to identify any relation or authority.  Furthermore, even if

14 Yadegar demonstrates that he has some authority to act on behalf of the beneficial owners of those

15 accounts, Yadegar has not demonstrated that he suffered an injury-in-fact sufficient to satisfy

16 constitutional standing requirements.

17 Yadegar's certification also creates additional doubts because it is incomplete.  Exhibit A,

18 attached to his certification, is a 235 page recitation of Velti transactions.  The Exhibit cuts off data

19 on both sides of the pages, and is impossible to understand.  The enormous amount of Yadegar's

20 alleged losses ($18 million) and the frequency and pattern of his trades is unusual.  So unusual that

21 his pattern is likely to be the focus of extensive inquiry by defendants, as they will use it to argue that

22 Yadegar did not relying on truth in the market.  Such distractions threaten to shift the focus away

23 from the benefit of the class to Yadegar's unique individual issues and questions concerning his

24 typicality and whether he is subject to unique defenses.

25 For these reasons and as further explained below, Mr. Yadegar cannot and should not be

26 appointed Lead Plaintiff.

27

28

REPLY MPA IN FURTHER SUPPORT OF MOT. TO CONSOL.,
TO APPOINT LEAD PL – NO. 13-cv-3889 WHO                - 2 -
010401-11  653195 V1

**1.    Yadegar failed to demonstrate that he has standing to sue.**

Standing is a threshold question in every federal case because it determines the power of the court to entertain the suit. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish constitutional standing, a plaintiff must demonstrate that they have personally suffered an injury-in-fact that is fairly traceable to a defendant's alleged misconduct and is likely to be redressed by a decision in the plaintiff's favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). In other words, a lead plaintiff movant must suffer injury-in-fact in order to establish that they have standing to pursue the action on behalf of the Class. *Baydale v. Am. Express Co.*, 2009 WL 2603140, at *3 (S.D.N.Y., Aug. 14, 2009) (quoting *W.R. Huff Asset Mgmt. v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008)); *In re Bard Associates, Inc.,* 09-6243, 2009 WL 4350780 (10th Cir., Dec. 2, 2009) (same, removing lead plaintiff investment manager appointed pre-Huff); *In re IMAX Sec. Litig.,* No. 06 Civ. 6128, 2009 WL 1905033, at *3 (S.D.N.Y., Jun. 29, 2009) (same), *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) (same); *Northstar Fin. Advisors, Inc. v. Schwab Investments*, 609 F. Supp. 2d 938, 942 (N.D. Cal. 2009) *rev'd and remanded on other grounds*, 615 F.3d 1106 (9th Cir. 2010) (non-PSLRA case granting motion to dismiss with leave to amend).

On November 5, 2013, after the Glassman Group filed its opposition to Yadegar, Yadegar's counsel, The Weizer Group, demanded that the Glassman Group withdraw its opposition to Yadegar's appointment. On that same date the Glassman Group responded, laying out in explicit detail their reasons for opposing Yadegar, including the basis of the Glassman Group's factual contentions and legal conclusions so that Yadegar's counsel could correct any detail or legal basis that may have been missed. To date, the Weiser Group has not responded.

More particularly, Yadegar's PSLRA certification, which provides the basis for Yadegar's claim that he is the Movant with the "largest financial interest" in the outcome of this case, identifies four main accounts and three subaccounts to one of those four main accounts. Losses are identified for each account along with a summary of shares purchased and owned during the Class Period, as well as shares traded at the end. Attached to the loss summary are 235 unnumbered pages of, presumably, transactions in the Class Period within these accounts. The pages are cut off on the

REPLY MPA IN FURTHER SUPPORT OF MOT. TO CONSOL.,
TO APPOINT LEAD PL – NO. 13-cv-3889 WHO           - 3 -
010401-11  653195 V1

1   right and left sides, and largely indecipherable.  These accounts are not described in any manner.  As

2   described in the Glassman Group's November 5 letter, Yadegar's standing is in question because:

3   - Examination of Mr. Yadegar's PSLRA Certification reveals a conflict in the
4     language.  Yadegar, the Movant, does not appear to have purchased anything as is
5     first declared in paragraph 4.

6   - In paragraph 5 of Yadegar's certification, Yadegar declares as the Movant, to have
7     "authority to bring a suit to recover for investment losses on behalf of purchasers of
8     the subject securities (including Movant, any co-owners, any corporations or other
9     entities, and/or any beneficial owners).  Movant has complete authority to bring suit
10    to recover Investment losses on behalf of Y-gar Capital LLC, Zybr Holdings LLC,
11    Arash D. Yadegar, and Shahla Yadegar, including any and all accounts associated
12    with these entities and individuals."  But examination of the PSLRA Certification
13    shows no accounts or transactions in the attached Schedule A that purport to belong to
14    Yadegar.  They all appear to belong to either Y-gar Capital LLC, Zybr Holdings LLC,
15    Arash D. Yadegar, or Shahla Yadegar.

16  - Yadegar also filed Certification of Interested Entities or Person (ECF No. 44) stating
17    that Yadegar's relationship with Y-gar Capital LLC, Zybr Holdings LLC is that
18    Yadegar "exercises control" over them.  With respect to Arash D. Yadegar, and
19    Shahla Yadegar, merely states that they are "familial relatives".

20  - There is nothing in either the initial PSLRA Certification or the Certification of
21    Interested Entities or Persons, that indicates any of the transactions, or losses, were
22    personal transactions or the transactions of the sole Movant - Mr. Yadegar.

23  Mere assignment of prosecutorial rights or ability to act as an "attorney-in-fact" does not

24  create an injury-in-fact.  Injury sufficient to confer standing was suffered by the owner of Velti

25  stock; in this case that appears to be Y-gar Capital LLC, Zybr Holdings LLC, Arash D. Yadegar, and

26  Shahla Yadegar- not Mr. Yadegar himself.  *See W.R. Huff*, at 108-9 ("the minimum requirement for

27  an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim"--- status

28  as both an attorney-in-fact for litigation purposes and an investment advisor with unfettered

discretion over its clients' investment decisions does not confer Article III standing to sue in a representative capacity on its clients' behalf.); *MVP Asset Mgmt. (USA) LLC v. Vestbirk*, 2:10-CV-02483-GEB, 2011 WL 1457424 (E.D. Cal., Apr. 14, 2011) (same). *Compare Sprint Communs. Co., L.P. v. APCC Servs.,* 128 S. Ct. 2531 (2008) (holding standing maybe conferred where assignment of for the sole purpose of litigating claims and remitting recoveries to the beneficiaries transfers legal title to claim).

### 2. Yadegar's trading pattern and amounts make him atypical.

High frequency traders may not be typical of the class because the class's damages stem from reliance upon the company's financial statements, not upon daily market volatility. Specifically, high frequency traders may be subject to a unique defense regarding their reliance upon publicly available information. *See, e.g.*, *Eichenholtz v. Verifone Holdings, Inc.*, No. 07-6140-MHP, 2008 WL 3925289, at *11 (N.D. Cal., Aug. 22, 2008), citing *In re Silicon Storage Tech. Sec. Litig.*, No. C 05-0295 PJH, 2005 U.S. Dist. LEXIS 45246, at *25 (N.D.Cal., May 3, 2005) (Hamilton, J.) (refusing to appoint an in-and-out trader as lead plaintiff because it did not meet typicality requirement); *In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2005 U.S. Dist. LEXIS 6243, at *16-18, 2005 WL 627960 (N.D.Ill., Mar. 15, 2005) (same). Where an investor appears to have traded on "technical pricing" rather than fundamentals, some courts have held the shareholder is not typical of other investors because the investor did not rely on the misstatements or omissions in the market. *Hodges v. Immersion Corp.,* No. C-09-4072, 2009 U.S. Dist. LEXIS 122565, at *11 (N.D. Cal., Dec. 21, 2009).

In the Glassman Group's November 5, 2013, letter to Yadegar's counsel, the Glassman Group informed Yadegar's counsel that trading strategies can create unique defenses, and that much if not most of Yadegar's losses appear to be attributable to volatility strategies rather than Yadegar's reliance upon the market.

To clarify this issue, we asked Yadegar's counsel to provide the "details of Mr. Yadegar's trading strategy that resulted in 235 pages of transactions." To date we have received no response.

REPLY MPA IN FURTHER SUPPORT OF MOT. TO CONSOL.,
TO APPOINT LEAD PL – NO. 13-cv-3889 WHO         - 5 -
010401-11  653195 V1

### 3. Yadegar's certification is defective.

The Glassman Group's letter to Yadegar's counsel on November 5, asked Yadegar to provide clean copies of the trades purportedly shown on Exhibit A so "that we can check your calculation of losses, and fully understand the transactions in Yadegar's PSLRA Certification." The Glassman Group also asked for the "details of Yadegar's trading strategy that resulted in 235 pages of transactions." To date no response has been forthcoming.

### B. The Glassman Group Should Be Appointed Lead Plaintiff

Of the two remaining movants, the Glassman Group is the group or individual with the largest financial interest in this litigation that also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. Therefore, the Glassman Group, or a subset of its individual members if the Court determines that is in the best interests of the Class, should be appointed Lead Plaintiff under the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B).

### 1. The Glassman Group has the largest financial interest.

The Glassman Group, with losses of $1,139,040.01, has the "largest financial interest in the relief sought by the Class" among those seeking appointment as Lead Plaintiff who also satisfy the requirements of Rule 23. According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant or movants who have the largest financial interest in the relief sought by the action. Thus, the Court must determine which plaintiff "has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).

### 2. The Glassman Group satisfies the requirements of Rule 23.

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Courts have made it clear that the PSLRA's focus of the inquiry under this provision is on the typicality requirement of Rule 23(a)(3) and the adequacy requirement of Rule 23(a)(4). *See, e.g.*, *Siegall v. Tibco Software, Inc.*, No. C 05-2146 SBA, 2006 WL 1050173, at *5 (N.D. Cal., Feb. 24, 2006). Courts have uniformly held that, at the Lead Plaintiff appointment stage, the determination of whether a proposed Lead Plaintiff "otherwise satisfies the requirements of rule 23" is subject only to a preliminary analysis. *Steiner v. Aurora Foods, Inc.*, 2000 U.S. Dist. LEXIS

REPLY MPA IN FURTHER SUPPORT OF MOT. TO CONSOL.,
TO APPOINT LEAD PL – NO. 13-cv-3889 WHO           - 6 -
010401-11  653195 V1

20341, at *12 n.6 (N.D. Cal., June 5, 2000) ("For the purposes of a motion for appointment as lead plaintiff, a proposed lead plaintiff must only make a preliminary showing that he or she satisfies the requirements of rule 23(a)") (citing *In re Advanced Tissue Sciences Sec. Litig.*, 184 F.R.D. 346, 349 (S.D. Cal. 1998)).

### a. The Glassman group is both adequate and typical.

The Glassman Group easily satisfies both the typicality and adequacy requirements of Rule 23. The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory. *See Crossen v. CV Therapeutics*, 2005 U.S. Dist. LEXIS 41396, at *13 (N.D. Cal., Aug. 9, 2005). The Glassman Group satisfies the typicality requirement of Rule 23 because, just like all other class members, they: (1) purchased Velti securities during the Class Period at artificially inflated prices; and (2) suffered damages after the fraud was revealed and the price of the stock dropped in response. Thus, the Glassman Group's claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events.

Under Rule 23(a)(4), the representative party must also "fairly and adequately protect the interests of the class." "The Ninth Circuit has held that representation is 'adequate' when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive." *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1137 (C.D. Cal. 1999) (citing *In re Northern Dist. Of Cal. Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982)).

Here, the Glassman Group will fairly and adequately protect the interests of the class. Because the Glassman Group's claims are identical to the claims of other Class members, there is no evidence of antagonism between their interest and those of the proposed Class members. Thus, the Glassman Group's interests are clearly aligned with those of the members of the Class. As illustrated by their Joint Declaration, the members of the Glassman Group understand their obligations as Lead Plaintiffs and potential class representatives, and will cooperate to actively, diligently, and competently discharge their responsibilities in litigating this matter. Jt. Decl., ¶¶ 4,

REPLY MPA IN FURTHER SUPPORT OF MOT. TO CONSOL.,
TO APPOINT LEAD PL – NO. 13-cv-3889 WHO                - 7 -
010401-11  653195 V1

1   13-14.  Further, as demonstrated below, the Glassman Group has selected as proposed Lead Counsel

2   attorneys with extensive experience in successfully prosecuting securities class actions and other

3   complex litigation.

4                     **b.**      **The Glassman Group is a cohesive group under the PSLRA.**

5           The PSLRA expressly provides that "the most adequate plaintiff may be 'a group of

6   persons.'"  *Steiner v. Aurora Foods, Inc.*, 2000 U.S. Dist. LEXIS 20341, at *12.  In *In re Network

7   Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017 (N.D. Cal. 1999) Judge Alsup established a useful

8   framework for determining whether a lead plaintiff group is sufficiently cohesive to control counsel

9   and guide the litigation.  The considerations Judge Alsup outlined include:  (1) any preexisting

10  relationship among the members of the group; (2) an explanation of how the group was formed and

11  how the members would function collectively; and (3) a description of how the members of the

12  group will communicate with one another and counsel about the litigation.  *Network Assocs.*, at

13  1026-27.  Judge Alsup recently applied his reasoning from *Network Assocs*. in *In re Charles Schwab

14  Secs. Litig.*, No. 08-1510, 2008 U.S. Dist. LEXIS 116650, at *5 (N.D. Cal., July 3, 2008).  In

15  appointing a six member group Judge Alsup noted that groups who demonstrate that they are

16  cohesive, coherent, have the means to control the litigation and lawyers, and have a decision making

17  apparatus in place can serve as Lead Plaintiff even where there are more than five members of the

18  Group.  *Id.*, at *16-18.  Judge Alsup noted that a group's ability to terminate counsel at any time

19  demonstrated their ability to control counsel.

20          As illustrated in their Joint Declaration, the Glassman Group is a small, cohesive group of

21  sophisticated investors who will assertively and collaboratively direct counsel in this litigation.  Jt.

22  Decl., ¶¶ 1-4.  Moreover, through the professional experiences of its individual members, the

23  Glassman Group brings a solid understanding of the complex business involved in the litigation.  *Id*.

24  at ¶ 2.  In addition to their extensive investment experience, each member of the Glassman Group

25  brings a professional background in business, science, or medicine.  *Id*. at ¶¶ 5-10.  The Glassman

26  Group is comprised of business people with MBAs and a pilot, the founder of multiple US exchange

27  listed companies all of whom have significant investment and management experience.  *Id*.

28

As noted in the Joint Declaration, prior to the filing of their motion, the members of the Glassman Group agreed to move together to be appointed Lead Plaintiff. *Id*. at ¶ 2. Further, the Glassman Group has a plan in place to effectively direct counsel, manage the litigation, and actively represent the interests of the Class. *Id*. at ¶¶ 3-4. If selected as Lead Plaintiff, the members of the Glassman Group will meet regularly with and/or without counsel to discuss the progress of the litigation and to approve the strategies recommended by counsel. *Id*. at ¶¶ 4, 16. Finally, the Glassman Group members have a plan to share decision-making responsibilities, and in the unlikely event that an emergency arises in the course of litigation, the members have selected Mr. Glassman to serve as the Glassman Group spokesperson and liaison. *Id*. at ¶¶ 15, 16.

In light of the foregoing, presumptive Lead Plaintiff the Glassman Group is more than adequate to represent the Class. Its choice of counsel further confirms this adequacy.

      **c.**      **Selection of counsel supports the Glassman Group's adequacy.**

The Glassman Group's selection of Hagens Berman supports a finding of adequacy in the determination of the "most adequate plaintiff." As noted in the Glassman Group's opening brief, Hagens Berman is a seasoned class action litigation firm that has achieved numerous successes throughout the country and in this District. For example, Hagens Berman recently settled a securities fraud class action against Charles Schwab in the Northern District of California for $235 million (recovering 42% and 82% of recoverable losses for two classes of investors), and has previously been appointed lead counsel in *Morrison Knudsen* ($63 million), *Raytheon/Washington Group* ($39 million), *Boston Chicken* and numerous other cases. With offices in this District, Hagens Berman will also benefit the Class by controlling the costs of litigation by virtue of its close proximity to the Court. *See* Opening Declaration Exs. D and F.

As the Glassman Group has sustained the largest amount of losses, and satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this motion, in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Glassman Group is presumptively the "most adequate plaintiff."

**C.**      **The Presumption in Favor of the Glassman Group Cannot Be Rebutted by Proof**

Once the presumption in favor of a movant attaches, the PSLRA requires proof of inadequacy to rebut that presumption. The express language of the PSLRA confirms that the presumptive lead

REPLY MPA IN FURTHER SUPPORT OF MOT. TO CONSOL.,
TO APPOINT LEAD PL – NO. 13-cv-3889 WHO       - 9 -
010401-11  653195 V1

plaintiff is the "person or group of persons" with the "largest financial interest" in the relief sought who also satisfies Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb). Courts may not engage in any sort of comparative analysis. *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 670 (C.D. Cal. 2005); *Ferrari v. Gisch*, 225 F.R.D. 599, 610 (C.D. Cal. 2004) ("Although the court may compare putative lead plaintiffs when assessing financial state, once the statutory presumption has attached it cannot be rebutted through relative comparison."). As noted by the 9th Circuit, "[t]he "most capable" plaintiff – and hence the lead plaintiff – is the one who has the greatest financial stake in the outcome of the case." *In re Cavanaugh*, 306 F.3d at 729. As such, the Glassman Group should be appointed as Lead Plaintiff in the case before this Court.

### III.   CONCLUSION

For the foregoing reasons, the Glassman Group's motion to appoint it as Lead Counsel should be granted and its selection of Hagens Berman as Lead Counsel should be approved. In the event the Court deems it appropriate, the members of the Glassman Group are willing to combine their group with other movants to serve as Lead Plaintiff in an effort to ensure that the Class is represented by investors who purchased shares between the second and third corrective disclosures.

Dated:  November 12, 2013               HAGENS BERMAN SOBOL SHAPIRO LLP

By:  _____/s/ Reed R. Kathrein_____
REED R. KATHREIN
Peter E. Borkon
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

Steve Berman
HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

*Attorneys for Proposed Lead Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2013, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have caused to be mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

      /s/ Reed R. Kathrein
      REED R. KATHREIN

REPLY MPA IN FURTHER SUPPORT OF MOT. TO CONSOL.,
TO APPOINT LEAD PL – NO. 13-cv-3889 WHO    - 11 -
010401-11  653195 V1