UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIKA R. RIECKBORN,<br><br>    Plaintiff,<br><br>    v.<br><br>VELTI PLC, et al.,<br><br>    Defendants. | Case No. 13-cv-03889-WHO<br><br>**ORDER GRANTING MOTION TO CONSOLIDATE AND APPOINT LEAD PLAINTIFF**<br><br>Re: Dkt. Nos. 11, 14, 26, 27, 28, 38, 41, 43, 44. |

Currently before the Court are motions to consolidate and appoint Lead Plaintiff. The Court heard argument on these motions on November 27, 2013. Having considered the pleadings and the arguments made, the Court consolidates the cases, appoints movant Bobby Yadegar and Ygar Capital LLC as Lead Plaintiff, and appoints the Weiser Law Firm P.C. as Lead Counsel.

## BACKGROUND

This is a putative securities class action, filed on August 22, 2013, against defendant Velti plc, three officers of Velti plc and two employees of Velti plc. The Complaint alleges violations of the Securities Exchange Act of 1934 (the "Exchange Act") based on false and/or misleading statements and failure to disclose material adverse facts about the Company's business, operations, and prospects. Complaint ¶ 5. Notice of this action was published on August 22, 2013 in Business Wire. Following that publication, three other cases were filed in this District alleging similar causes of action. *See Vafinis v. Velti PLC, et al.*, 4:13-cv-03954-YGR (the "*Vafinis* Action"), *Lee v. Velti PLC, et al.*, 3:13-cv-04140-SI (the "*Lee* Action"), and *Manabat v. Velti PLC, et al.*, 3:13-cv-04606-JSC (the "*Manabat* Action").[1]

---

[1] Plaintiff in the *Manabat* Action alleges violations of the Securities Act of 1933 (the "Securities Act"), in addition to violations of the Exchange Act.

Nine plaintiffs/groups filed motions seeking to be appointed as "Lead Plaintiff" under the Private Securities Litigation Reform Act of 1995, as amended (the "PSLRA") and, relatedly, to appoint the Lead Plaintiff's choice of counsel as Lead Counsel. Docket Nos.11, 14, 26, 27, 28, 38, 41, 43 and 44. After reviewing the competing motions, six plaintiffs/groups either withdrew their motions or filed statements not opposing the selection of another plaintiff to be Lead, and one did not file a response. *See* Docket Nos. 52, 53, 54, 58, 59, 63.[2] Two plaintiffs/groups are left competing for appointment as Lead Plaintiff: Bobby Yadegar and the Glassman Group.[3]

The motions to consolidate the four cases were unopposed.

## DISCUSSION

### I. MOTIONS TO CONSOLIDATE

Movants in each of the four cases filed in this District have moved to consolidate this case with *Vafinis v. Velti PLC, et al.*, 4:13-cv-03954-YGR; *Lee v. Velti PLC, et al.*, 3:13-cv-04140-SI; and *Manabat v. Velti PLC, et al.*, 3:13-cv-04606-JSC. Defendant Velti plc agrees that consolidation of the four cases is appropriate. Docket No. 56 at 1. The Court finds that these actions are related cases within the meaning of Civil L.R. 3-12. Pursuant to Federal Rule of Civil Procedure 42(a), these cases are hereby consolidated into Civil Action No. 3:13-cv-03889-WHO for pretrial proceedings before this Court. The Court will issue a separate Order consolidating the cases, setting forth the master docket and caption, and setting case management deadlines for the filing of a consolidated complaint.

### II. MOTIONS TO APPOINT LEAD PLAINTIFF

#### A. Legal Standard

Under the PSLRA, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing

---

[2] The Velti Investor Group, comprised of Frank C. Spencer, Nikolaos Langis, Chris Mardekian, Jawdat Munther Nabulsi, and Dr.Sameh Labib, did not file a response to the competing motions informing the Court whether they are still moving for appointment as Lead Plaintiff. *See* Docket No. 26. Because no response was filed by this group, and the group's financial loses (at $261,396) are significantly less than the parties who are pursuing appointment, the Court will not address this group's motion separately.

[3] Plaintiffs in the Glassman Group are Bruce Glassman, James Caudle, George Syllantavos, Edward O'Connor, Leonard Doherty and Fedon John Capas.

the interests of the class members ... in accordance with this subparagraph." 15 U.S.C. § 78u–4(a)(3)(B)(i). "The 'most capable' plaintiff—and hence the lead plaintiff—is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of [Federal Rule of Civil Procedure] 23." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).

The PSLRA directs district courts to appoint the lead plaintiff through a three-step process. At the first step, the first plaintiff to file an action covered by the PSLRA must publicize the pendency of the action, the claims made, the purported class period, and the right of other members of the purported class to move to serve as lead plaintiff. *Id.*, 306 F.3d at 729.

At the second step, the district court identifies the presumptive lead plaintiff. *Id*. at 729–30. The PSLRA creates a rebuttable presumption that the lead plaintiff shall be the one who: (1) filed the first complaint or brought a motion for appointment of lead counsel in response to the publication of notice; (2) possesses the "largest financial interest" in the relief sought by the class; and (3) otherwise satisfies the requirements of FRCP 23. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa)-(cc). To determine the size of each movant's financial interest, "the court may select accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d at 730 n. 4. The district court's Rule 23 inquiry focuses on the requirements of "typicality" and "adequacy." *Id*. at 730.

At the third step, other candidates have the opportunity to rebut the presumption that the putative lead plaintiff identified in step two can adequately represent the class. *Id*. By statute, this presumption is rebuttable in only two ways: proof that the presumptive plaintiff either (1) will not fairly and adequately protect the interests of the class or (2) is subject to "unique defenses" that make the plaintiff unable to adequately represent the class. 15 U.S.C. § 78u–4 (a)(3)(B)(iii)(II)(aa)-(bb). If the presumption is successfully rebutted, the district court must turn to the movant with the next-largest financial interest and repeat the process, continuing sequentially until it identifies the most capable plaintiff. *In re Cavanaugh*, 306 F.3d at 731.

Once a lead plaintiff is appointed, the PLSRA gives the lead plaintiff the right, subject to court approval, to "select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). "[I] f the lead plaintiff has made a reasonable choice of counsel, the district court should

generally defer to that choice." *Cohen v. U.S. Dist. Court*, 586 F.3d 703, 712 (9th Cir.2009).

**B. Contenders for Lead Plaintiff**

As noted above, there are two plaintiffs/groups that are still competing to be appointed as Lead Plaintiff.[4] Plaintiff/movant Bobby Yadegar contends that through his "purchase and sale transaction(s)" he suffered losses in excess of $18,000,000, making him the presumptive lead plaintiff. Certification of Bobby Yadegar, Docket No. 44-2. Yadegar explains that he has "authority" to bring suit for the losses "on behalf of purchasers of the subject securities (including Movant, any co-owners, any corporations or other entities, and/or beneficial owners). Movant has complete authority to bring suit to recover investment losses on behalf of Ygar Capital LLC, Zybr Holdings LLC, Arash D. Yadegar, and Shahla Yadegar." *Id*. ¶ 5. The schedule of transactions attached to his Certification shows purchases of Velti plc stock on behalf of four entities, SHAHLA 2947, ARASHI 7138, ZYBR and Y-GAR. *Id*. In a supplemental Declaration (submitted with his Reply), Yadegar explains that he is the sole owner and operator of Ygar Capital LLC ("Ygar") and explains that his mother (Shahla Yadegar), his brother (Arash Yadegar) and Zybr Holdings LLC ("Zybr"), executed assignments transferring all interest in any claims arising from violations of the federal security laws in connection with the purchase of the Velti securities to Ygar. Docket No. 65-1.[5]

Plaintiffs/movants the Glassman Group also continue to seek appointment as Lead Plaintiff. The Glassman Group argues that while their financial interest is the third largest (at $1,139,040), it should be appointed because neither of the two plaintiffs/groups that have a larger financial interest satisfy the requirements of Rule 23. *See, e.g*., Docket No. 60. It argues that Yadegar has failed to show that he personally has standing to represent the interests of Ygar (and the other individuals and entity which have assigned the rights to these claims to Ygar). The

---

[4] The plaintiffs/groups who have withdrawn their motions for appointment as Lead Plaintiff or not objected to the competing motions have generally expressed their continued interest and ability to be appointed as Lead Plaintiff if the Court finds that Yadegar or the Glassman Group are not appropriate for appointment.

[5] The Glassman Group objects to the Yadegar Declaration as being improperly submitted in Reply. However, as the Yadegar Declaration was submitted in order to address deficiencies with Yadegar's Certification alleged by the Glassman Group, the Court will consider it.

Glassman Group also argues that Yadegar cannot be considered a typical plaintiff under Rule 23 in light of the "enormous size" of his losses and his "unusual" trading behavior.

The Glassman Group also seeks to undermine the position of the Public Pension Funds group, which has the second largest loss at $1,589,683.[6] While the Public Pension Funds do not oppose the appointment of Yadegar as Lead Plaintiff, they stand willing to be appointed if the Court finds that Yadegar cannot be appointed. *See* Docket No. 59. The Glassman Group argues that as "in-and-out traders" who did not own stock through the time periods covered by all four of the alleged corrective disclosures, the Public Pension Funds is not typical under Rule 23.

**C. Largest Financial Interest**

The Glassman Group challenges Yadegar's showing of financial loss because the schedules attached to Yadegar's Certification show Velti stock trades by various individuals or entities, none of whom is Bobby Yadegar.[7] In its Reply brief, the Glassman Group relies on a number of cases holding that acting as a mere attorney-in-fact is not sufficient to confer standing on investment managers and other third parties to be able to prosecute Securities and Exchange Act claims, but that formal assignments of legal claims could confer that standing. *See, e.g., W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) (acting as power-of-attorney or attorney-in-fact does not confer standing to sue in the holder's own right, but because an "assignment of claims transfers legal title or ownership of those claims," the assignment "fulfills the constitutional requirement of an 'injury-in-fact.'"); *cf. Northstar Fin. Advisors, Inc. v. Schwab Investments*, 609 F. Supp. 2d 938, 942 (N.D. Cal. 2009) ("The assignment of claims from one of Northstar's clients would, however, cure this deficiency" and would allow investment manager to pursue suit.), *rev'd and remanded on another ground*, 615

---

[6] Plaintiffs in the Public Pension Fund Group are the St Paul Teacher's Retirement Fund Assn, Oklahoma Firefighters Pension and Retirement System, and the Newport News Employees' Retirement Fund.

[7] At various points in their briefing, the Glassman Group complains that some of the information from the schedule attached to the Yadegar Certification is cut-off and/or missing, making the losses suffered by Yadegar hard to confirm. *See, e.g.*, Glassman Group Reply Br. (Docket No. 66) at 6. However, none of the other movants complain that the schedule filed with the Court contains insufficient information to confirm Yadegar's losses, and the Glassman Group does not identify what specific information is missing from the schedule that prevents the Group from being able to confirm and/or challenge Yadegar's losses.

F.3d 1106 (9th Cir. 2010).

Evidence submitted with Yadegar's Reply shows that assignments were made for three of the accounts listed on the Certification's attachment (from Bobby Yadegar's mother, brother and Zybr LLC) assigning the rights for the claims in this case to Ygar Capital LLC. Those assignments were made *before* the date on which Yadegar sought to be appointed as Lead Plaintiff.[8] Yadegar also declares that he is the "sole owner and operator of Ygar Capital LLC," Yadegar Decl. ¶ 2, and the Court notes that the amount of losses suffered by Ygar Capital LLC (not counting the assigned claims) is almost $13 million.[9] After reviewing the evidence provided by Yadegar, and the Glassman Group's complaints and objections to it, the Court concludes that Ygar Capital LLC has suffered the largest financial losses and that Bobby Yadegar – through his sole ownership and operation of Ygar Capital LLC – has suffered the requisite injury in fact to pursue those claims. To avoid any potential issues of standing, the Court finds that Bobby Yadegar and Ygar Capital LLC shall be considered as the "group" suffering the largest financial losses.[10]

### D. Typicality and Adequacy

The Glassman Group argues that the "enormous" amount of Yadegar's loss and the frequency and pattern of his trades is "unusual," so much so that his trades will be the focus of extensive inquiry by defendants fatally undermining Yadegar's typicality. Glassman Group Reply Br. (Docket No. 66) at 5-6. To support their argument, the Glassman Group relies on cases

---

[8] The Glassman Group questions the timing of the assignments, relying on cases holding that assignments that *post-date* the time a party moves to be appointed Lead Plaintiff are insufficient. Glassman Group's Objections to Evidence (Docket No. 71) at 3. Here, however, the assignments were signed on August 29, 2013, well before Yadegar filed his motion seeking appointment on October 21, 2013. The Glassman Group also questions the validity of the assignment by Zybr Holdings LLC to Ygar Capital LLC, because Yadegar provides no evidence of his relationship to Zybr, other than his statement that he exercises "complete authority" over the Zybr trading accounts. *See* Glassman Group's Objections at 2-3; Yadegar Decl. ¶ 5. However, even if the losses of Zybr and the assignments from his mother and brother are excluded, the losses of Ygar Capital LLC itself are almost $13,000,000.
[9] At oral argument, Yadegar's counsel confirmed that the Y-GAR accounts listed in the trading records attached to Yadegar's Certification were accounts owned by Ygar Capital LLC.
[10] At oral argument, Yadegar's counsel argued that because the losses of Ygar Capital LLC were the losses of Bobby Yadegar, Yadegar could pursue the claims in his own name. However, Yadegar's counsel did not object to the idea of treating Ygar Capital LLC and Yadegar as a group for appointment as Lead Plaintiff.

6

holding that "day traders" may not be typical because of the defense that they bought shares not based on market information but simply based on pricing. *See, e.g., Eichenholtz v. Verifone Holdings, Inc.*, C07-06140MHP, 2008 WL 3925289, *11 (N.D. Cal. Aug. 22, 2008) (rejecting proposed Lead Plaintiff "due to the vulnerability created by the unique day-trader defense"). The Group also relies on cases recognizing that "in-and-out" traders who sell all of their stock before the corrective disclosures may not be typical because of difficulties in proving their damages. *See, e.g.*, *In re Silicon Storage Tech., Inc.*, 2005 U.S. Dist. LEXIS 45246, *26 (N.D. Cal. May 3, 2005) (rejecting proposed Lead Plaintiff "because both members of this group are in/out traders, and as such, are potentially subject to unique defenses."); *In re Bally Total Fitness Sec. Litig.*, 04C3530, 2005 WL 627960 (N.D. Ill. Mar. 15, 2005) (recognizing that in-and-out traders "face difficulties in attributing the decline in the price of their stock to the alleged fraudulent conduct.").

Here, however, the Glassman Group has not shown – based on the extensive trading records provided in the schedules attached to Yadegar's Certification – that the trades claimed by Yadegar are indicative of day trading or in-and-out trading. *See, e.g., Hodges v. Immersion Corp.*, 2009 U.S. Dist. LEXIS 122565, *11 (N.D. Cal. Dec. 21, 2009) (rejecting contention proposed Lead Plaintiff's trading could be characterized as day trading, because challenger offered no evidence to support that contention). Nor can the fact that Yadegar's suffered "enormous" losses by itself give rise to unique defenses that would undermine his typicality, especially in light of the PSLRA's clear mandate that a Lead Plaintiff should have suffered the largest losses. The Glassman Group has not shown that Yadegar is not typical for purposes of meeting the requirements of Rule 23.

The Glassman Group does not challenge Yadegar's adequacy or the adequacy of his selected counsel, the Weiser Law Firm, P.C. Based on the review of the materials submitted in support of Yadegar's motion, the Court finds that Yadegar, along with Ygar Capital LLC, and the Weiser Law Firm are adequate under Rule 23. They do not have any conflicts with the class and appear prepared to vigorously and effectively represent the class.[11]

---

[11] The Court need not reach the Glassman Group's argument that the Public Pension Fund group – the group with the second largest loss – is not typical because it did not hold stock through all

7

For the foregoing reasons, the Court finds that Bobby Yadegar and Ygar Capital LLC have suffered the largest financial loss. This group is also typical, adequate, and satisfies the other requirements of Rule 23 to be the presumptive Lead Plaintiff. The Glassman Group has presented no proof that Yadegar/Ygar Capital LLC will not fairly and adequately represent the interests of the class or that they are subject to unique defenses that undermine their adequacy.

**E. Discovery**

Finally, the Glassman Group seeks limited discovery to respond to the evidence regarding Bobby Yadegar's interest and authority with respect to Ygar Capital LLC and Zybr Holding LLC, and to explore the details surrounding the assignments from his mother and brother to Ygar Capital LLC. *See* Glassman Group's Objections at 4. Under the PLSRA, "discovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C.A. § 78u-4 (a)(3)(B)(iv). The Court finds that discovery is not warranted at this juncture because the Glassman Group has not demonstrated a reasonable basis to find that Yadegar/Ygar Capital LLC are not capable of adequately representing the class.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to consolidate and consolidates for pretrial purposes this case with *Vafinis v. Velti PLC, et al.*, 4:13-cv-03954-YGR; *Lee v. Velti PLC, et al.*, 3:13-cv-04140-SI; and *Manabat v. Velti PLC, et al.*, 3:13-cv-04606-JSC. The Court also GRANTS the motion to appoint Lead Plaintiff and appoints Bobby Yadegar/Ygar Capital LLC as the Lead Plaintiff. The Court finds that Yadegar/Ygar Capital LLC's choice of counsel, the Weiser Law Firm, P.C., is reasonable and appoints them as Lead Counsel. The Court

---

four potential corrective disclosures. However, the Court notes that the Fund group held the stock through at least three of the four possible corrective disclosures, including the March 12, 2013 disclosure which led to the largest drop in the stock's value, and would therefore likely meet Rule 23's requirements for typicality at this juncture. *See, e.g., Brown v. China Integrated Energy, Inc.*, 2011 U.S. Dist. LEXIS 151131, 39 (C.D. Cal. Aug. 29, 2011) ("the fact that subsequent disclosures occurred after Puerto Rico TRS no longer owned China Integrated stock does not show that Puerto Rico TRS will be an inadequate lead plaintiff."); *In re CornerStone Propane Ptnrs*, 2006 U.S. Dist. LEXIS 25819, * 26-30 (N.D. Cal. May 3, 2006).

1 will issue a separate Order consolidating the cases, setting forth the master docket and caption, and
2 setting case management deadlines for the filing of a consolidated complaint.

3 **IT IS SO ORDERED**.

4 Dated: December 3, 2013

_____
WILLIAM H. ORRICK
United States District Judge