THE WEISER LAW FIRM, P.C.
KATHLEEN A. HERKENHOFF (168562)
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone:  (858) 794-1441
Facsimile:  (858) 794-1450
kah@weiserlawfirm.com

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re VELTI PLC SECURITIES LITIGATION | Master File No. 3:13-cv-03889-WHO |
| | (Consolidated with Case Nos. 3:13-cv-03954-WHO 3:13-cv-04140-WHO 3:13-cv-04606-WHO 3:14-cv-00372-WHO) |
| This Document Relates To: | |
| ALL ACTIONS. | CLASS ACTION |
| | LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |

DATE:        July 2, 2014
TIME:        2:00 p.m.
CTRM:       2, 17th Floor
JUDGE:      The Hon. William H. Orrick

Date Action Filed: 8/22/13

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND OVERVIEW OF SETTLEMENT ............................................2

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY.......................................4

III.    PRELIMINARY APPROVAL OF THE PARTIAL SETTLEMENT IS
        WARRANTED ................................................................................................................8

        A.    The Partial Settlement Merits Preliminary Approval ............................................8

              1.    Preliminary Approval Standards.................................................................8

              2.    The Partial Settlement Resulted from Arm's-Length Negotiations.............9

              3.    The Partial Settlement Has No Obvious Deficiencies and Falls
                    Within the Range for Approval..................................................................10

              4.    The Risk, Expense and Complexity of the Action....................................11

              5.    The Proceedings Are Sufficiently Advanced to Permit Preliminary
                    Approval of the Partial Settlement............................................................12

        B.    The Proposed Plan of Distribution Should Be Preliminarily Approved...............12

IV.     CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.....................13

        A.    The Proposed Partial Settlement Class Meets the Prerequisites for Class
              Certification Under Rule 23...............................................................................13

              1.    Numerosity................................................................................................14

              2.    Commonality.............................................................................................15

              3.    Typicality ..................................................................................................16

              4.    Adequacy...................................................................................................17

              5.    Common Questions of Law Predominate and a Class Action Is the
                    Superior Method of Adjudication .............................................................17

        B.    The Proposed Plan and Method for Notice Meets All Requirements...................19

        C.    The Proposed Fee and Expense Award Is Fair and Reasonable...........................21

        D.    The Proposed Reimbursement of Expenses Is Fair and Reasonable ...................22

        E.    Proposed Schedule for Final Approval ................................................................23

V.      CONCLUSION................................................................................................................23

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alfus v. Pyramid Tech. Corp.*,
   764 F. Supp. 598 (N.D. Cal. 1991) ...................................................................16

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591, 117 S. Ct. 2231 (1997)..........................................................16, 18

*Athale v. Sinotech Energy Ltd.*,
   No. 11-CV-05831, slip op. (S.D.N.Y. Sept. 4, 2013) ........................................12

*Auto. Prods. PLC v. Tilton Eng'g, Inc.*,
   855 F. Supp. 1101 (C.D. Cal. 1994) .................................................................23

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ......................................................................14, 15

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)............................................................................................21

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) .....................................................................9

*Churchill Village, L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) .............................................................................11

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ............................................................................8

*CLRB Hanson Indus., LLC v. Google*,
   05-03649-JW, slip op. (N.D. Cal. Sept. 14, 2009).............................................21

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
   258 F.R.D. 545 (N.D. Ga. 2007)........................................................................18

*Danis v. USN Commc'n, Inc.*,
   189 F.R.D. 391 (N.D. Ill. 1999) ........................................................................16

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   131 S. Ct. 2179 (2011).......................................................................................17

*Gittin v. KCI USA, Inc.*,
   No. 09-CV-0583 RS, 2011 WL 1467360 (N.D. Cal. Apr. 12, 2011) ..................19

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...............................................................8, 13, 17

1

2                                                                                           **Page**

3

*Hanon v. Dataproducts Corp.,*
4      976 F. 2d 497 (9th Cir. 1992) ...............................................................16

5
*Harris v. Marhoefer,*
6      24 F.3d 16 (9th Cir. 1994) ...................................................................23

7   *Harris v. Palm Springs Alpine Estates, Inc.,*
       329 F. 2d 909 (9th Cir. 1964) ..............................................................14
8
*Hicks v. Stanley,*
9      No. 01 CIV 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2007) ................................9

10  *Hodges v. Akeena Solar Inc.,*
       274 F.R.D 259 (N.D. Cal. 2011)...............................................................13, 15, 17
11
*In re Adobe Sys., Inc. Sec. Litig.,*
12     139 F.R.D. 150 (N.D. Cal. 1991)..............................................................14

13
*In re Apollo Group, Inc. Sec. Litig.,*
14     No. CV 04-2147-PHX, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008).................................11

15  *In re Apple Computer Sec. Litig.,*
       No. 84-20148-JW, 1991 WL 238298 (N.D. Cal. Sept 6, 1991) ..............................11
16
*In re Cisco Systems Inc. Sec. Litig.,*
17     No. C-01-20418-JW(PVT), slip op. (N.D. Cal. Dec. 5, 2006) ................................22

18  *In re Cooper Companies Inc. Sec. Litig.,*
       254 F.R.D. 628 (C.D. Cal. 2009) ..................................................13, 14, 17, 19
19
*In re Diet Drugs,*
20     Nos. 1203, 99-20593, 2000 WL 1222042 (E.D. Pa. Aug. 28, 2000)...........................18

21
*In re Emulex Corp., Sec. Litig.,*
22     210 F.R.D. 287 (C.D. Cal. 2002) ............................................................16

23  *In re Emulex Corp., Sec. Litig.,*
       210 F.R.D. 717 (C.D. Cal. 2002) ........................................................15, 19
24
*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,*
25     No. MDL 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) ...................................9

26
*In re Heritage Bond Litig.,*
27     No. 02ML1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ......................10, 22

28

1

2                                                                                                  **Page**

3

4  *In re Immune Response Sec. Litig.*,
      497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................9, 22

5

6  *In re Initial Pub. Offering Sec. Litig.*,
      226 F.R.D. 186 (S.D.N.Y. 2005) ...........................................................................18

7  *In re Initial Pub. Offering Sec. Litig.*,
      260 F.R.D. 81 (S.D.N.Y. 2009) .............................................................................18

8

9  *In re Inter-Op Hip Prosthesis Liab. Litig.*,
      204 F.R.D. 330 (N.D. Ohio 2001) ........................................................................18

10  *In re LDK Solar Sec. Litig.*,
      255 F.R.D. 519 (N.D. Cal. 2009).....................................................................17, 19

11

12  *In re Media Vision Tech. Sec. Litig.*,
      913 F. Supp. 1362 (N.D. Cal. 1996) ................................................................22, 23

13

14  *In re Mego Fin. Corp. Sec. Litig.*,
      213 F.3d 454 (9th Cir. 2000) .................................................................................11

15  *In re OmniVision Techs., Inc.*,
      559 F. Supp. 2d 1036 (N.D. Cal. 2008) .........................................................9, 10, 22

16

17  *In re Oracle Sec. Litig.*,
      C-90-0931, 1994 WL 502054 (N.D. Cal. Jun. 18, 1994) ......................................12

18

19  *In re Portal Software, Inc. Sec. Litig.*,
      No. C 03 5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ....................21

20  *In re Seagate Tech. II Sec. Litig.*,
      843 F. Supp. 1341 (N.D. Cal. 1994) ......................................................................14

21

22  *In re Sorbates Direct Purchaser Antitrust Litig.*,
      C 98-4886MMC, 2002 WL 31655191 (N.D. Cal. Nov. 15, 2002).........................21

23

24  *In re Tableware Antitrust Litig.*,
      484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................................................9

25  *In re UTStarcom, Inc. Sec. Litig.*,
      No. C006- 4908, 2010 WL 1945737 (N.D. Cal. May 12, 2010) ..........................13, 15, 16, 19

26

27  *In re VeriSign, Inc. Sec. Litig.*,
      No. C 02-02270-JW, 2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005)...............15, 16

28

Page

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ..............................................................................21

*In re Wireless Facilities, Inc. Sec. Litig. II*,
  No. 07CV482, 2008 WL 4146126 (S.D. Cal. Sept. 3, 2008) ...........................9, 21

*Knight v. Red Door Salons, Inc.*,
  No. 08-01520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...................................11

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F. 2d 507 (9th Cir. 1978) .............................................................................17

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ...............................................................................8

*Munoz v. UPS Ground Freight, Inc.*,
  No. 07-00970 MHP, 2009 WL 1626376 (N.D. Cal. June 9, 2009) .......................22

*Murillo v. Pac. Gas & Elec. Co.*,
  266 F.R.D. 468 (E.D. Cal. 2010) .........................................................................18

*O'Keefe v. Mercedes-Benz USA, LLC*,
  214 F.R.D. 266 (E.D. Pa. 2003) ..........................................................................18

*Ofcrs. for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ...............................................................................10

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ...............................................................................21

*Perez-Funez v. Dist. Director, Immigration & Naturalization Serv.*,
  611 F. Supp. 990 (C.D. Cal. 1984) ......................................................................14

*Ramirez v. DeCoster*,
  203 F.R.D. 30 (D. Me. 2001) ...............................................................................18

*Rosenburg v. IBM*,
  No. C06-00430, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007) .....................8, 12, 21

*Satchell v. Fed. Express Corp.*,
  No. C03-2659, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .............................8, 9

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) ...............................................................................19

1

2                                                                                          **Page**

3
*Schwartz v. Harp*,
4        108 F.R.D. 279 (C.D. Cal. 1985) .........................................................................14

5   *Six Mexican Workers v. Az. Citrus Growers*,
6        904 F.2d 1301 (9th Cir. 1990) ............................................................................21

7   *Sullivan v. Chase Inv. Servs., Inc.*,
         79 F.R.D. 246 (N.D. Cal. 1978)...........................................................................15
8
    *Torrisi v. Tucson Elec. Power*,
9        8 F.3d 1370 (9th Cir. 1993) ................................................................................21

10  *Vathana v. EverBank*,
11       No. C 09-02338 RS, 2010 WL 934219 (N.D. Cal. Mar. 15, 2010)........................17

12  *Vizcaino v. Microsoft Corp.*,
         290 F.3d 1043 (9th Cir. 2002) ......................................................................21, 22
13
    *Wahl v. Am. Sec. Ins. Co.*,
14       No. C08-00555-RS, 2011 U.S. Dist. LEXIS 59559 (N.D. Cal. Jun. 2, 2011)........19

15  *Wehner v. Syntex Corp.*,
16       715 F.R.D. 641 (N.D. Cal. 1987) .........................................................................15

17  *Welling v. Alexy*,
         155 F.R.D. 654 (N.D. Cal. 1994).........................................................................14
18
    *West v. Circle K Stores, Inc.*,
19       No. S-04-0438 WBS GGH, 2006 WL 1652598 ........................................8, 10, 16, 21

20  *Yamner v. Boich*,
21       No. C-92 - 20597 RPA, 1994 WL 514035 (N.D. Cal. Sept. 15, 1994) ..................15

22  *Ybarrondo v. NCO Fin. Sys., Inc.*,
         No. 05cv 2057-L(JMA), 2009 WL 3612864 (S.D. Cal. Oct. 28, 2009) .................18
23
    *Young v. Polo Retail, LLC*,
24       No. C-02-4546, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ...............................8
25

26

27

28

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4(a)(7 ..............................................................................................................20
§78j(b) ..................................................................................................................4, 7
§78t(a) of the Exchange Act ..................................................................................4, 7
§77k..................................................................................................................5, 7, 18
§77o....................................................................................................................5, 7
§77l ..................................................................................................................3, 6, 7

Federal Rules of Civil Procedure
Rule 23 ...................................................................................................... *passim*
Rule 23(a).........................................................................................................13, 17
Rule 23(a)(1).............................................................................................14, 17, 19
Rule 23(a)(2)...................................................................................................15, 16
Rule 23 (a)(3).........................................................................................................16
Rule 23(a)(4)...........................................................................................................17
Rule 23(b) ...............................................................................................................19
Rule 23(b)(3) ............................................................................................. *passim*
Rule 23(c)................................................................................................................21
Rule 23(c)(2)(B)......................................................................................................19
Rule 23(e).................................................................................................................8

17 C.F.R.
§240.10b-5 .........................................................................................................4, 7

**SECONDARY AUTHORITIES**

Manual for Complex Litigation, Second (1985)
§30.44.......................................................................................................................8

Newberg on Class Actions, (1992)
§11.25.......................................................................................................................8

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Wednesday, July 2, 2014, at 2:00 p.m., or as soon thereafter as the matter may be heard, Lead Plaintiff Bobby Yadegar/Ygar Capital LLC (the "Lead Plaintiff"), will, and hereby does, move the Honorable William H. Orrick, located in Courtroom 2, 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94101, for an order: (1) granting preliminary approval of the proposed $9,500,000 settlement (the "Partial Settlement") documented within the May 23, 2014 Stipulation and Agreement of Partial Settlement and exhibits thereto (collectively the "Stipulation" or the "Settlement Agreement")[1], entered between the Settling Parties to the above-captioned consolidated securities class action (the "Action")[2]; (2) preliminarily certifying the Settlement Class, appointing Plaintiffs as representatives for the Settlement Class (the "Class Representatives"), and appointing Lead Counsel as counsel for the Settlement Class ("Class Counsel"); (3) approving the form and manner of giving notice of the proposed Partial Settlement to

---

[1]     All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation.  A true and correct copy of the Stipulation is attached as Exhibit A to the Declaration of Christopher L. Nelson in Support of Preliminary Approval of Partial Settlement (the "Nelson Decl.").  Unless otherwise stated, all citations herein to "¶__" are to paragraphs of the Consolidated Complaint for Violations of the Securities Act of 1933 and the Securities and Exchange Act of 1934 (the "Complaint"), ECF Dkt. No. 105 in 3-13-cv-03889-WHO (the "Lead Action").  Unless otherwise stated herein, all citations to "ECF Dkt. No. ___" are to docket entries in the Lead Action.

[2]     As defined in the Stipulation, the Settling Parties include: the Lead Plaintiff, Plaintiff St. Paul Teachers' Retirement Fund Association, Plaintiff Newport News Employees' Retirement Fund, Plaintiff Oklahoma Firefighters Pension and Retirement System (collectively the "Plaintiffs"), Velti plc ("Velti" or the "Company"), Wilson W. Cheung ("Cheung"), Jeffrey G. Ross ("Ross"), Winnie W. Tso ("Tso"), and Nicholas P. Negroponte ("Negroponte").  Defendants Alex Moukas ("Moukas"), Chris Kaskavelis ("Kaskavelis"), David W. Mann ("Mann"), David C. Hobley ("Hobley"), and Jerry Goldstein ("Goldstein") (the "Director Defendants.") are also released pursuant to the Stipulation.  Velti, Cheung, Ross, Tso and Negroponte are collectively referred to as the "Settling Defendants."  The instant settlement provides for the release of all claims alleged in the action against the foregoing Defendants.  Defendants Jefferies LLC, RBC Capital Markets, LLC, Needham & Company, LLC, and Canaccord Genuity Inc. (the "Underwriter Defendants") and Defendant Baker Tilly Virchow Krause, LLP ("Baker Tilly") are the Non-Settling Defendants and are not parties to the Stipulation.  Lead Plaintiff intends to continue prosecution of the claims as to the Non-Settling Defendants.  Lead Plaintiff further anticipates – based on representations from counsel for certain of the Non-Settling Defendants – that certain of the Non-Settling Defendants expect to seek to litigate, among other matters, the question of whether the Settling Defendants must indemnify the Non-Settling Defendants against potential losses.  Further, in exchange for the releases and consideration, Settling Defendants and the Director Defendants have agreed to cooperate with Lead Plaintiff to further its litigation against the Non-Settling Defendants.

the Settlement Class[3]; (4) preliminarily approving the Plan of Distribution; and (5) setting a hearing date for final approval thereof (the "Settlement Hearing") and a schedule for various deadlines relevant thereto (the "Notice Order").

As demonstrated herein, the proposed Partial Settlement is an excellent result for the Settlement Class under the circumstances, is fair, reasonable and adequate under the governing standards within the Ninth Circuit, and warrants approval of this Court. In support of this Motion, Lead Plaintiff submits herewith a Memorandum of Points and Authorities, the Nelson Decl. and exhibits thereto, and the proposed Notice Order (*i.e.*, the [Proposed] Order Preliminarily Approving Partial Settlement and Providing for Notice).

## STATEMENT OF ISSUES TO BE DECIDED

1.    Whether the $9,500,000 Partial Settlement should be preliminarily approved by this Court as within the range of fairness, reasonableness and adequacy?

2.    Whether the proposed Settlement Class should be preliminarily certified, the Plaintiffs appointed as Class Representatives, and Lead Counsel appointed as the Class Counsel?

3.    Whether the Notices adequately apprise Settlement Class Members about the terms of the Partial Settlement and their rights with respect to it?

4.    Whether the proposed Plan of Distribution should be preliminarily approved?

5.    Whether a date for a Settlement Hearing (*i.e.* including a hearing date for the Fee and Expense Application and any application by Plaintiffs (as defined herein) for a payment in recognition of their time and expenses contributed to the prosecution of the Action should be set?

## MEMORANDUM

## I.    INTRODUCTION AND OVERVIEW OF SETTLEMENT

Lead Plaintiff respectfully submits this memorandum in support of its Motion for Preliminary Approval of Partial Settlement (the "Motion"). The proposed Partial Settlement, as embodied within

---

[3]    As set forth in Exhibits A-1 and A-3 to the Stipulation, the Settlement Agreement provides for both a Summary Notice and a Notice of Pendency and Proposed Partial Settlement of Class Action (collectively the "Notices").

1  the Stipulation, provides a recovery of $9,500,000 in cash to resolve the claims in this Action as to

2  the Settling Defendants.

3       The Partial Settlement, as detailed herein, is the product of extensive investigation of the

4  relevant claims asserted in the Action, and follows the filing of two complex and detailed complaints

5  by the Lead Plaintiff: 1) the filing on January 24, 2014 of the Yadegar/Ygar Capital LLC Action (as

6  defined herein) to preserve certain claims as to Baker Tilly (not named in the Initial Related Actions,

7  as defined herein), claims pursuant to Section 12 of the Securities Act of 1933 (the "Securities Act")

8  (15 U.S.C. §77a) in connection with the Company's January 28, 2011 initial public offering (the

9  "IPO") and the Company's June 14, 2011 secondary public offering (the "SPO"); and 2) the filing on

10  April 22, 2014 of the Consolidated Complaint for Violations of the Securities Act of 1933 and the

11  Securities Exchange Act of 1934 (the "Complaint"), which Complaint is in excess of 130 pages.

12  During the course of such investigation and litigation efforts, Lead Plaintiff engaged in dialogue with

13  Velti[4] concerning potential early resolution of the claims as to Velti and the Individual Defendants,

14  which was critical given the November 4, 2013 filing for bankruptcy protection pursuant to Chapter

15  11 by Velti's U.S. based operations (the "Velti U.S. Bankruptcy"). *See* Nelson Decl., Ex. B.

16       Thus, in the interest of securing a sound, well-considered recovery for the Settlement Class,[5]

17  Lead Plaintiff undertook a simultaneous path of engaging in settlement discussions with Velti and

18  the Individual Defendants while continuing with due speed on litigation and investigation efforts.[6]

19  These dual-track efforts included formal mediation before the Honorable Layn Phillips (the

20  "Mediator") on March 14, 2014 (the "Mediation"). The Mediation was contentious and did not

21  result in the Partial Settlement. The Settling Parties continued, however, to engage in ongoing

---

[4]      Velti is a Jersey corporation with its principal executive offices located in the Republic of Ireland. Velti provides mobile marketing and advertising technology and solutions for brands, advertising agencies, mobile operators and media.

[5]      The Settlement Class means all Persons, save those expressly exempted as set forth in the Stipulation, who purchased or otherwise acquired the Shares of Velti between January 27, 2011 and August 20, 2013, inclusive. While the definition of the Settlement Class represents a simplified characterization of the Class alleged in the Complaint, membership is identical between the two.

[6]      The Underwriter Defendants were invited to attend and participate in the Mediation, but they refused to do so.

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
PARTIAL SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF - 3:13-cv-03889-WHO      - 3 -

1   dialogue with the Mediator following the Mediation.  Meanwhile, to continue to protect the interests

2   of the Settlement Class, Lead Plaintiff filed the Complaint on April 22, 2014, thus further evidencing

3   the arms'-length basis of the Settling Parties' negotiations in the Action.

4         As a result of the above well-timed and diligent efforts, Lead Plaintiff has secured a

5   Settlement Fund of $9.5 million, and valuable provisions requiring the cooperation of the Settling

6   Defendants in furthering the Lead Plaintiff's litigation as to the Non-Settling Defendants, *i.e.*, Baker

7   Tilly (Velti's former auditor) and the Underwriter Defendants.  *See* Nelson Decl., Ex. A.  As detailed

8   herein, Lead Plaintiff submits that the Partial Settlement amply warrants preliminary approval.

9   **II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY**

10        Between August 22, 2013 and September 6, 2013, three related securities class actions (the

11  "First Three Related Actions") were filed in this District against Velti and the Individual Defendants

12  on behalf of all persons who purchased Velti shares during the period January 27, 2011 and August

13  20, 2013 (the "Class Period").  The First Three Related Actions alleged violations of Sections 10(b)

14  and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the PSLRA

15  (15 U.S.C. §§78j(b) and 78t), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

16        The First Three Related Actions were filed following the August 21, 2013 announcement by

17  the Company of its 2013 fiscal second quarter financial results, wherein it was revealed that the

18  Company had made the decision to write-down approximately $111 million to its trade receivables

19  and accrued contract receivables relating to its enterprise business.  ¶15.  A "major restructuring" of

20  Velti's business was also announced.  *Id.*  In response to this news, shares of Velti declined $0.66

21  per share, or more than 66%, to close on August 21, 2013, at $0.34 per share, on heavy trading

22  volume.  *Id.*  The First Three Actions, consistent with the allegations in the current Complaint, allege

23  that throughout the proposed Class Period, certain of the Defendants, among other things, made

24  materially false and/or misleading statements, as well as failed to disclose material adverse facts

25  about Velti's financial statements and reported financial results.  *Id.* at ¶17.  It is alleged that

26  Defendants made false and/or misleading statements and/or failed to disclose, *inter alia*: (1) that the

27  Company was having difficulties collecting certain receivables; (2) that certain of the Company's

28

1  receivables were uncollectible; (3) that, as a result, the Company's revenues and receivables were

2  overstated during the proposed Class Period; (4) that the Company lacked adequate internal and

3  financial controls; and (5) that, as a result of the foregoing, the Company's statements and reported

4  financial results were materially false and misleading.  *Id.*

5      On October 4, 2013, a fourth related securities class action (the "Fourth Action") was also

6  filed in this District , which action included substantially the same factual claims and counts filed in

7  the First Three Related Actions,[7] but also alleged violations of Sections 11 and 15 of the Securities

8  Act of 1933 (the "Securities Act") (15 U.S.C. §§77k and 77o) on behalf of persons or entities who

9  purchased or otherwise acquired Velti shares pursuant and/or traceable to the IPO and SPO.

10     On October 21, 2013, Lead Plaintiff filed one of several competing motions in this District

11 seeking consolidation of the Initial Related Actions (and any subsequently filed actions related

12 thereto), appointment as Lead Plaintiff and appointment of Lead Counsel pursuant to the Private

13 Securities Litigation Reform Act of 1995 (the "PSLRA").  ECF Dkt. No. 44.

14     On December 3, 2013, following briefing and oral argument (held November 27, 2013), the

15 Court entered an Order Granting Motion to Consolidate and Appoint Lead Plaintiff (the "Lead

16 Order") ECF Dkt. No. 80, which appointed the aforementioned Lead Plaintiff and its choice of

17 counsel, The Weiser Law Firm, P.C. (the "Weiser Firm"), as Lead Counsel.  On December 3, 2013,

18 the Court also entered an Order Consolidating Cases and Setting Case Management Deadlines (the

19 "Consolidation Order"), therein consolidating the Initial Related Actions, and providing a

20 mechanism for the consolidation of additional related actions filed at a subsequent time.[8]  ECF Dkt.

21 No. 81.

22

23  _____

24  [7]     The First Three Related Actions and the Fourth Action are referred to herein as the "Initial Related Actions."

25  [8]     Pursuant to the Consolidation Order, the following five securities class actions have been consolidated: (1) *Rieckborn v. Velti plc, et al.*, No. 3:13-cv-03889-WHO (filed Aug. 22, 2013); and

26  (2) *Vafinis v. Velti plc, et al.*, No. 4:13-cv-03954-WHO (filed Aug. 26, 2013); (3) *Lee v. Velti plc, et al.*, No. 3:13-cv-04140-WHO (filed Sept. 6, 2013); (4) *Manabat v. Velti plc, et al.*, No. 3:13-cv-

27  04606-JSC (filed Oct. 4, 2013); and (5) *Yadegar v. Velti plc*, No. 3:14-cv-00372-WHO (filed January 24, 2014) (the "Yadegar/Ygar Capital LLC Action").

28  LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
    PARTIAL SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
    THEREOF - 3:13-cv-03889-WHO                                                                      - 5 -

1    On December 13, 2013, pursuant to the Consolidation Order, Lead Plaintiff filed a

2  Stipulation and [Proposed] Order Setting Schedule for Filing of Consolidated Complaint and Related

3  Matters (the "Initial Scheduling Stipulation"), which was entered as an order of the Court on

4  December 26, 2013.  *See* ECF Dkt. No. 89.  As detailed in the Initial Scheduling Stipulation,

5  following appointment, Lead Plaintiff immediately set out to achieve what no party to date in the

6  Initial Related Actions appears to have completed, namely service of the operative pleadings.  As

7  noted in the Initial Scheduling Stipulation, however, service continued as to many of the Individual

8  Defendants.[9]  ECF Dkt. Nos. 90-92**.**

9    On January 24, 2014, as detailed above, the Yadegar/Ygar Capital LLC Action was filed, and

10 was later consolidated with, and into, the Action.  The Yadegar/Ygar Capital LLC Action was filed

11 proactively to preserve certain claims as to Baker Tilly (not named in the Initial Related Actions),

12 and claims pursuant to Section 12 of the Securities Act (15 U.S.C. §77(a)) in connection with the

13 IPO and SPO.  While continuing to protect the Settlement Class at every step of the litigation events

14 already underway, Lead Plaintiff also began a dialogue with Velti concerning possible early

15 resolution of the Action, particularly in view of the Velti U.S. Bankruptcy.

16    Accordingly, on March 14, 2014, counsel for Plaintiffs, Velti, and certain of the Individual

17 Defendants participated in an in-person mediation (the "Mediation") before the Honorable Layn

18 Phillips (the "Mediator").  *See* Exhibit A (Stipulation) at 2.  The Settling Parties engaged in

19 substantial preparation for the Mediation.  While a settlement of the Action was not reached at the

20 Mediation, the Settling Parties continued their ongoing dialogue with the Mediator and with each

21 other.  *Id.*

22    On April 22, 2014, Lead Plaintiff filed a 130 page, consolidated complaint (the "Complaint")

23 in the Action.  *See* ECF Dkt. No. 105.  The Complaint contains five counts.  Count One alleges

24

25 [9]    To date, it appears that certain of the Individual Defendants (Alex Moukas, Kris Kaskavelis,
David W. Mann, David C. Hobley and Jerry Goldstein) are located outside the territorial limits for
26 service in this Action.  The issue of service as to certain of the Individual Defendants, particularly
when combined with the overall publicly reported financial condition of Velti, dictated immediate
27 action to determine if a reasonable resolution of the claims as to Velti and the Individual Defendants
was possible.
28

1   violations of Section 11 of the Securities Act of 1933 (the "Securities Act") against all Defendants.

2   Count Two alleges violations of Section 12(a)(2) of the Securities Act against the Underwriter

3   Defendants, Velti, Moukas, Kaskavelis, Mann, Goldstein, Hobley, and Negroponte.  Count Three

4   alleges violations of Section 15 of the Securities Act against all Individual Defendants.  Count Four

5   alleges violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 against the Company,

6   Baker Tilly, and the Officer Defendants.  Lastly, Count Five alleges violations of Section 20(a) of

7   the Exchange Act against the Officer Defendants.

8        After the Complaint was filed, the Settling Parties continued their dialogue with the Mediator

9   and ultimately agreed to the Partial Settlement outlined in the Stipulation.  Lead Plaintiff submits

10  that the $9,500,000 proposed Partial Settlement – including an agreement by the Settling Defendants

11  to cooperate with Lead Plaintiff in furthering its claims against the Non-Settling Defendants – is a

12  very good result for the Settlement Class, when considering the risk of a much less or no recovery if

13  the Action proceeded through motion to dismiss, class certification, summary judgment, trial and

14  perhaps appeals.  Moreover, if Lead Plaintiff had elected to continue its litigation efforts as to the

15  Settling Defendants, there existed a real risk that at least some of the Settling Defendants were

16  beyond the reach of this Court and would not be in a position to satisfy any judgment rendered

17  against them in any regard.  In that scenario, Lead Plaintiff and the Settlement Class Members would

18  receive nothing from such defendants.

19       Reached by experienced litigators and only after a comprehensive investigation at the

20  direction of Lead Counsel, the proposed Partial Settlement was the result of fully informed, arms'-

21  length bargaining, and an in-person mediation session before an experienced and well-respected

22  mediator, Judge Phillips.  For the reasons stated herein, Lead Plaintiff respectfully requests that the

23  Court grant its motion for preliminary approval of the Partial Settlement.

24

25

26

27

28

### III.    PRELIMINARY APPROVAL OF THE PARTIAL SETTLEMENT IS WARRANTED

#### A.    The Partial Settlement Merits Preliminary Approval

##### 1.    Preliminary Approval Standards

Rule 23(e) of the Federal Rules of Civil Procedure requires Court approval for a class action settlement. The Ninth Circuit maintains a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *West v. Circle K Stores, Inc.*, No. S-04-0438 WBS GGH, 2006 WL 1652598, at *1 (E.D. Cal. June 13, 2006 ("*West*"). Approval of a proposed class action settlement is within the broad authority of the district court consistent with this long-standing policy favoring settlements. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). The class action settlement approval process involves two steps: first, preliminary approval, followed by notice to the class, and then final approval. *See, e.g.*, *West*, 2006 WL 1652598, at *2. The test for whether preliminary approval should be granted has both a procedural and a substantive component. The court in *Young v. Polo Retail, LLC*, No. C-02-4546, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006) (quoting from NEWBERG ON CLASS ACTIONS, §11.25 (1992) explained the procedure as follows:

> If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing. . . .MANUAL FOR COMPLEX LITIGATION, Second §30.44 (1985). In addition, '[t]he court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid.' NEWBERG ON CLASS ACTIONS §§11.25 (1992).

*See also Rosenburg v. IBM*, No. C06-00430, 2007 WL 128232, at *5 (N.D. Cal. Jan. 11, 2007) (preliminary approval granted where "Settlement has no obvious defects and is within the ranges of possible Settlement approval such that notice to the Class is appropriate"); *Satchell v. Fed. Express Corp.*, No. C03-2659, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (preliminarily approving non-collusive settlement that had no obvious defects and was within the range of fairness).

1

## 2.   The Partial Settlement Resulted from Arm's-Length Negotiations

2

3        There is an initial presumption of fairness for a proposed settlement that results from arm's-

4   length negotiations. *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008); *In*

5   *re Wireless Facilities, Inc. Sec. Litig. II*, No. 07CV482, 2008 WL 4146126, at *3 (S.D. Cal. Sept. 3,

6   2008).   Here, the proposed settlement is the product of arm's-length negotiations over a several-

7   month period between Lead Plaintiff, through Lead Counsel, and the Settling Defendants, through

8   their counsel.   As noted above, in March 2014, the Settling Parties engaged in a Mediation before

9   Judge Phillips, but were not successful in reaching a resolution the same day of the Mediation.   *See*

10  *Hicks v. Stanley*, No. 01 CIV 10071 (RJH), 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2007) ("A

11  breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-

12  collusive nature.").   Nonetheless, with the continued oversight of Judge Phillips, and the mutual

13  efforts of the Setting Parties, which were reinvigorated after the April 22 filing of the Complaint, the

14  Settling Parties were able to reach an agreement in principle.   "[T]he assistance of an experienced

15  mediator in the settlement process confirms that the settlement is non-collusive." *Satchell*, 2007 WL

16  1114010, at *4; *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).   As

17  a result, the Settling Parties were able to negotiate a fair settlement, taking into account the costs and

18  risks of continued litigation.

19        The settlement negotiations undertaken in connection with the Partial Settlement, produced a

20  result that the Settling Parties believe to be within their respective best interests.   Indeed, the opinion

21  of well-informed and experienced counsel in favor of the Partial Settlement is also entitled to

22  significant weight. *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal.

23  2007); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL 901, 1992 WL 226321,

24  at *2 (C.D. Cal. June 10, 1992) (counsel's opinion favoring settlement is a compelling factor); *Boyd*

25  *v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).   Lead Plaintiff and Lead Counsel consider

26  their claims meritorious, but not without risk.   They have concluded that it is in the best interests of

27  the Settlement Class to settle with the Settling Defendants after considering the following factors: (1)

28  the immediate benefits provided for the Settlement Class; (2) the risks and uncertainties in predicting

1   the outcome of complex litigation, particularly given the current status of bankruptcy proceedings as

2   to Velti's operations within the United States, the possibility of a bankruptcy proceeding by Velti

3   itself, the difficulties in serving certain of the Individual Defendants and certain issues with the path

4   for obtaining discovery overseas, particularly in Greece; (3) the expense and length of time

5   necessary to prosecute the Action through trial and appeal; and (4) the challenges asserted by and

6   available to the Settling Defendants that could substantially reduce the claimed damages.

7            **3.    The Partial Settlement Has No Obvious Deficiencies and Falls
                      Within the Range for Approval**

8            "[A]t this preliminary approval stage, the court need only 'determine whether the proposed

9   settlement is within the range of possible approval.'" *West*, 2006 WL 1652598, at *11 (citation

10  omitted); J. Moore, et al., MOORE'S FED. PRAC., ¶23.8102-1, at 23-479 (2d ed. 1993).  Under this

11  Partial Settlement, the Settling Defendants, through Velti's insurance carriers, will pay $9,500,000.

12           It is difficult to compare the Partial Settlement to the theoretical amount that the Settlement

13  Class might have obtained had it been completely successful in establishing liability at trial, because

14  the Settling Parties strenuously debated issues of causation and damages.  During the course of

15  negotiations, the Settling Parties discussed at length Settling Defendants' loss causation challenges

16  with respect to the alleged corrective disclosures alleged in the Complaint.  The $9.5 million

17  proposed Partial Settlement represents a substantial percentage of recovery that ranges from 3% of

18  damages to 28% depending on which of the corrective disclosures and claims on which Lead

19  Plaintiff might prevail.[10]  Such percentages of recoveries are well above the median percentage of

20  investor losses recovered recovery level in securities class action settlements.  *See OmniVision*, 559

21  F. Supp. 2d at 1042 (approving 6% recovery of maximum damages) (citing *In re Heritage Bond*

22  *Litig.*, No. 02ML1475, 2005 WL 1594403, at *8-*9 (C.D. Cal. June 10, 2005) (average recovery

23  between 2% to 3% of maximum damages)).  *See also Ofcrs. for Justice v. Civil Serv. Comm'n*, 688

24

25  ───────────────────────

26  [10]      Lead Plaintiff recognizes that this is a large range of recovery.  This is due to the fact that the damages analysis provides for recoveries depending on whether it would have been able to recover damages from one to five (or any combination therein) of the operative disclosures in this case.

27  Lead Plaintiff, of course, also recognizes that as the timeline of the case progressed, the strength of their case on each successive disclosure only increased.

28  LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
    PARTIAL SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
    THEREOF - 3:13-cv-03889-WHO                                                      - 10 -

1   F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a

2   fraction of the potential recovery will not *per se* render the settlement inadequate or unfair"); *Knight*

3   *v. Red Door Salons, Inc.*, No. 08-01520, 2009 WL 248367, at *3 (N.D. Cal. Feb. 2, 2009) ("The

4   immediacy and certainty of the settlement award justifies a recovery smaller than the Class Members

5   could seek in the case").

6               **4.       The Risk, Expense and Complexity of the Action**

7               The fairness of the Partial Settlement is further underscored when the obstacles the

8   Settlement Class faced in succeeding on the merits, as well as the expense and likely duration of the

9   litigation, are considered.  *See Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004).

10  Although Lead Plaintiff believes that Defendants' arguments described above lack merit, a

11  substantial risk existed that Defendants would prevail on one or more of these arguments on their

12  motion for judgment on the pleadings, at summary judgment, or ultimately at trial.[11]  The Partial

13  Settlement will confer an immediate benefit to the Settlement Class and eliminate the risk of

14  continued litigation as to the Settling Defendants under circumstances where a favorable outcome

15  against such defendants is far from certain.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463

16  (9th Cir. 2000) (affirming approval of settlement because "[c]omplex litigation is inherently

17  uncertain and Plaintiffs would have had much difficulty proving scienter"); *see also Knight*, 2009

18  WL 248367, at *3 (acknowledging that the settlement agreement offered an immediate and certain

19  award for the Class was a superior alternative to continued litigation in light of the uncertain risks

20  associated with plaintiffs' claims).

21  _____

22  [11]        As discussed in further detail herein, even if Lead Plaintiff were to prevail at trial, risks to the
    Settlement Class would remain.  For example, the Settling Defendants certainly would initiate a
    lengthy and costly appeal process to challenge the verdict.  Moreover, any verdict returned by a jury

23  would be subject to the presiding judge's evaluation and, as such, could be overturned.  *See, e.g., In
    re Apple Computer Sec. Litig.*, No. 84-20148-JW, 1991 WL 238298 (N.D. Cal. Sept 6, 1991) (this

24  District entered a judgment notwithstanding the verdict for the individual defendants and ordered a
    new trial against the corporate defendant); *In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-

25  PHX, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008) (overturning a trial verdict because there was
    insufficient evidence at trial to prove loss causation).  Similarly, the fact that many of the individual

26  defendants are not located within the United States – most reside in Greece – presents substantial
    impediments to enforcement and collection of any judgment against them (assuming such judgment

27  was rendered in the first place) in foreign jurisdictions.  The Settlement, of course, avoids those risks
    and impediments.

28

1

2

### 5. The Proceedings Are Sufficiently Advanced to Permit Preliminary Approval of the Partial Settlement

3

Lead Plaintiff, through Lead Counsel, is thoroughly familiar with the factual and legal issues

4

in this case. *See* ECF Dkt. Nos. 44, 65. Even before formal mediation, counsel for Lead Plaintiff

5

and Counsel for the Settling Defendants had an extensive in-person meeting to discuss and explore

6

the facts and legal issues underlying the case. Lead Plaintiff and the Settling Defendants presented

7

comprehensive submissions in connection with the Mediation. The Settling Parties' respective

8

positions on liability and damages were explored most recently in great detail before the Mediator, a

9

former federal judge who routinely mediates complex securities fraud class actions. In addition,

10

Lead Plaintiff filed two complaints, including the 130 page Complaint, after extensive investigation

11

and research. As a result, Lead Counsel is thoroughly familiar with the facts of the case and has had

12

ample opportunity to assess the strengths and weaknesses of the claims in which to appraise the

13

sufficiency of the settlement. *See e.g.*, *Athale v. Sinotech Energy Ltd.,* No. 11-CV-05831, slip op.

14

(S.D.N.Y. Sept. 4, 2013) (approving partial settlement of securities class action at parallel stage of

15

proceedings).

16

### B. The Proposed Plan of Distribution Should Be Preliminarily Approved

17

The proposed plan of distribution will govern how the settlement proceeds will be distributed

18

among Settlement Class Members who timely file a Claim Form. A plan of allocation will be

19

preliminarily approved so long as "the proposed plan is rationally related to the relative strengths and

20

weaknesses of the respective claims asserted." *Rosenburg*, 2007 WL 128232, at *5. *See also In re*

21

*Oracle Sec. Litig.*, C-90-0931, 1994 WL 502054, at *1 (N.D. Cal. Jun. 18, 1994) (reasonable to

22

allocate more to class members with stronger claims). The proposed plan of allocation was prepared

23

by Lead Counsel in consultation with its experts and its proposed settlement administrator, Strategic

24

Claims Services, who found it to be fair and equitable. *See* Declaration of Paul Mulholland (the

25

"Mulholland Decl."), attached to the Nelson Decl. as Exhibit C.

26

The structure of the plan of allocation, which is set forth in full in the Notice and attached as

27

an exhibit to the Mulholland Decl., is comparable to plans of allocation that have been used in

28

numerous securities class actions. The Plan of Distribution allocates the Net Settlement Fund based

1    on Lead Counsel's estimate (after consultation with its experts and settlement administrator) of the

2    amounts by which Lead Plaintiff alleges the market price of the Velti shares were artificially inflated

3    at various points during the Class Period, and takes into consideration when an Authorized Claimant

4    purchased his/her/its Velti shares and, if the claimant sold the Shares, when the Shares were sold.

5    Plaintiffs submit that the Plan is fair and reasonable and should be approved together with the Partial

6    Settlement.

7    **IV.     CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE**

8        **A.     The Proposed Partial Settlement Class Meets the Prerequisites for
             Class Certification Under Rule 23**

9

10       The Ninth Circuit has long recognized that class actions may be certified for the purpose of

11   settlement only.  *Hanlon*, 150 F.3d 1019.  Rule 23(a) sets forth the following four prerequisites to

12   class certification: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of

13   representation.  In addition, the class must meet one of the three requirements of Rule 23(b).  *See*

14   Fed. R. Civ. P. 23; *In re UTStarcom, Inc. Sec. Litig.*, No. C006- 4908, 2010 WL 1945737, at * 3

15   (N.D. Cal. May 12, 2010) (citing *Hanlon*, 150 F.3d at 1019).  The Settlement Class is defined as "all

16   Persons . . . who purchased or otherwise acquired the Shares of Velti between January 27, 2011 and

17   August 20, 2013, inclusive."[12]

18       Courts routinely endorse the use of the class action device to resolve claims brought pursuant

19   to the federal securities laws.  *See, e.g.*, *Hodges v. Akeena Solar Inc.*, 274 F.R.D 259, 266 (N.D.  Cal.

20   2011); *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009). "[C]lass

21   ───────────────
     [12]     The Settlement Class definition excludes the following: (1) Persons who submit valid and

22   timely requests for exclusion from the Settlement Class; and (2) Defendants, members of the
     immediate family of any Defendant, any person, firm, trust, corporation, officer, director or other

23   individual or entity in which any Defendant has or had a controlling interest, the officers and
     directors of any Defendant, and legal representatives, agents, executors, heirs, successors or assigns

24   of any such excluded Person.  *See* Stipulation at 7-8.  The Defendants or any entity in which any of
     the Defendants has or had a controlling interest (for purposes of this paragraph, together a

25   "Defendant-Controlled Entity") are excluded from the Settlement Class only to the extent that such
     Defendant-Controlled Entity itself purchased a proprietary (*i.e.*, for its own account) interest in the

26   Company's Shares.  To the extent that a Defendant-Controlled Entity purchased Velti Shares in a
     fiduciary capacity or otherwise on behalf of any third-party client, account, fund, trust, or employee

27   benefit plan that otherwise falls within the Settlement Class, neither such Defendant-Controlled
     Entity nor the third-party client, account, fund, trust, or employee benefit plan shall be excluded

28   from the Settlement Class with respect to such Velti Shares.

     LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
     PARTIAL SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
     THEREOF - 3:13-cv-03889-WHO                                                      - 13 -

1   actions commonly arise in securities fraud cases as the claims of separate investors are often too

2   small to justify individual lawsuits, making class actions the only efficient deterrent against

3   securities fraud.  Accordingly, the Ninth Circuit and courts in this district hold a liberal view of class

4   actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal.

5   1991) (citations omitted); *see also In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1350 (N.D.

6   Cal.  1994) (same); *Cooper*, 254 F.R.D. at 642  ("The availability of the class action to redress such

7   frauds has been consistently upheld, in large part because of the substantial role that the deterrent

8   effect of class actions plays in accomplishing the objectives of the securities laws.") (quoting *Blackie

9   v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975)).  This Action is no exception, and Lead Plaintiff

10   submits that the proposed Partial Settlement Class satisfies each of the requirements of Rules 23(a)

11   and 23(b)(3).

12              **1.     Numerosity**

13              Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is

14   impracticable.  The Ninth Circuit has stated that "'impracticability' does not mean 'impossibility,'

15   but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs

16   Alpine Estates, Inc*., 329 F. 2d 909, 913-14 (9th Cir. 1964) (citation omitted).   Indeed, classes

17   consisting of 25 members have been held to be large enough to justify certification.  *See Perez-

18   Funez v. Dist. Director, Immigration & Naturalization Serv*., 611 F. Supp. 990, 995 (C.D. Cal.

19   1984); s*ee also Welling v. Alexy*, 155 F.R.D. 654, 656 (N.D. Cal. 1994) (no set number cut-off for

20   numerosity).   Additionally, the exact size of the class need not be known so long as general

21   knowledge and common sense indicate that the class is large.  *Id.; see also Schwartz v. Harp*, 108

22   F.R.D. 279, 281-282 (C.D. Cal. 1985) ("A failure to state the exact number in the proposed class

23   does not defeat class certification, and plaintiff's allegations plainly suffice to meet the numerosity

24   requirement of Rule 23.") (citations omitted).

25              Here, Velti's shares traded on the NASDAQ, with more than 65 million shares of common

26   stock outstanding during the Class Period.  *See* Nelson Decl., Ex. D.  Accordingly, the proposed

27   Settlement Class consists of thousands of investors who purchased Velti shares during the Class

28

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
PARTIAL SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF - 3:13-cv-03889-WHO                                                          - 14 -

1  Period.  *See also Akeena Solar*, 274 F.R.D. at 266 (*citing Sullivan v. Chase Inv. Servs., Inc.*, 79

2  F.R.D. 246, 257 (N.D. Cal. 1978)).  A class of this size is sufficiently numerous to make individual

3  joinder impracticable.  *See UTStarcom*, 2010 WL 1945737, at *4; *Yamner v. Boich*, No. C-92 -

4  20597 RPA, 1994 WL 514035, at *3 (N.D. Cal. Sept. 15, 1994).  Thus, the numerosity element is

5  satisfied.

6                    **2.    Commonality**

7          Rule 23(a)(2) is satisfied where the proposed class representatives share at least one question

8  of fact or law with the claims of the prospective class.  *Wehner v. Syntex Corp.*, 715 F.R.D. 641, 644

9  (N.D. Cal. 1987).  Further, commonality exists even if there are varying fact situations among

10  individual members of the class so long as the claims of the plaintiffs and other class members are

11  based on the same legal or remedial theory.  *Blackie*, 524 F. 2d at 902.

12          The common questions of fact and law include: (i) whether Defendants violated the federal

13  securities laws; (ii) whether Defendants misstated and/or omitted to state material facts in public

14  statements and filings with the SEC; (iii) whether Defendants participated directly or indirectly in

15  the course of misconduct; (iv) whether Defendants knew or recklessly disregarded that their

16  statements were false and misleading; (v) whether the price of Velti shares, was artificially inflated;

17  and (vi) the extent of damage sustained by Settlement Class Members, and the appropriate measure

18  of damages.[13]

19          Securities actions containing common questions such as the ones listed above repeatedly

20  have been held to be prime candidates for class certification.  Additionally, because the core

21

22

23  [13]      *See also UTStarcom*, 2010 WL 1945737, at *4 (finding common questions of law and fact as
    to whether "Defendants engaged in a fraudulent scheme and omitted or misrepresented material

24  facts," whether the "publicly traded securities were artificially inflated," and whether "Defendants'
    . . . omissions caused class members to suffer economic losses").  Here, there are common questions

25  of law and fact because Defendants' alleged misconduct affected all Settlement Class Members in
    the same manner; *i.e.*, Defendants' false and misleading statements and omissions artificially inflated

26  the price of Velti's Shares. *See, e.g., In re VeriSign, Inc. Sec. Litig.*, No. C 02-02270-JW, 2005 U.S.
    Dist. LEXIS 10438, at *32 (N.D. Cal. Jan. 13, 2005) ("Here, the issues common to the class –

27  namely, the nature and extent of Defendants' alleged misrepresentations and the like – are
    predominant."); *In re Emulex Corp., Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal.  2002).

28

1    complaint of all Settlement Class Members is that they purchased shares of Velti shares at artificially

2    inflated prices, the commonality requirement of Rule 23(a)(2) is satisfied.

3                    **3.       Typicality**

4           The typicality requirement of Rule 23 (a)(3) is satisfied when the claims or defenses of the

5    party or parties representing the class are typical of the claims or defenses of the other class

6    members.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231 (1997)

7    (common-issues test readily met in securities cases).  Differences in the amount of damage, the size

8    or manner of purchase, the nature of the purchaser, and the date of purchase are insufficient to defeat

9    class certification.  *See Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 606 (N.D. Cal. 1991).  In

10   other words, typicality exists "even where factual distinctions exist between the claims of the named

11   representative and the other class members."  *Danis v. USN Commc'n, Inc.*, 189 F.R.D. 391, 395-97

12   (N.D. III. 1999); *see also West*, 2006 WL 1652598, at *5.

13          Here, the claims of the Plaintiffs (defined herein) arise from the same events or course of

14   conduct that give rise to claims of other Settlement Class Members, and the claims asserted are

15   based on the same legal theories.  *See UTStarcom*, 2010 WL 1945737, at *5 (explaining that the test

16   for typicality is "whether 'other members have the same or similar injury, whether the action is

17   based on conduct which is not unique to the named plaintiffs, and whether other class members have

18   been injured by the same course of conduct'") (quoting *Hanon v. Dataproducts Corp.*, 976 F. 2d

19   497, 508 (9th Cir. 1992)).  Indeed, this case satisfies the Rule 23(a)(3) typicality requirement

20   because the claims of all Settlement Class Members derive from the same legal theories and allege

21   the same set of operative facts.  Plaintiffs, like the other Settlement Class Members, purchased Velti

22   shares in the same manner; *i.e.*, Defendants' false and misleading statements and omissions

23   artificially inflated the price of Velti's shares.  *See, e.g., In re VeriSign, Inc. Sec. Litig.*, No. C 02-

24   02270-JW, 2005 U.S. Dist. LEXIS 10438, at *32 (N.D. Cal. Jan. 13, 2005) ("Here, the issues

25   common to the class – namely, the nature and extent of Defendants' alleged misrepresentations and

26   the like – are predominant."); *In re Emulex Corp., Sec. Litig.*, 210 F.R.D. 287 (C.D. Cal. 2002).

27   Additionally, Plaintiffs are not subject to any unique defenses that could make them atypical of

28

1    Settlement Class Members.  Therefore, Lead Counsel respectfully submits that this Court should find

2    that Plaintiffs' claims are typical of the claims of the Settlement Class.  *See Akeena Solar*, 274

3    F.R.D. at 266-67; *Cooper*, 254 F.R.D. at 635-36.

4              **4.      Adequacy**

5              The representative parties must satisfy Rule 23(a)'s adequacy requirement by showing that

6    they will fairly and adequately protect the interests of the Settlement Class.   To satisfy this

7    requirement, the proposed class representative must be free of interests that are antagonistic to the

8    other members of the class, and counsel representing the class must be qualified, experienced and

9    capable of conducting the litigation.  *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F. 2d 507, 512

10   (9th Cir. 1978); *Hanlon*, 150 F.3d at 1020.

11             As described above, Plaintiffs have claims that are typical of and coextensive with those of

12   the Settlement Class.  Plaintiffs, like all Settlement Class Members, purchased Velti shares at

13   artificially inflated prices as a result of Defendants' alleged materially false and misleading

14   statements and/or omissions.  Further, Lead Plaintiff has retained counsel highly experienced in

15   securities class action litigation and who have successfully prosecuted many securities and other

16   complex class actions throughout the United States.[14]  Thus, Plaintiffs are adequate representatives

17   of the Settlement Class, and Lead Counsel (as has already been demonstrated) is qualified,

18   experienced and capable of prosecuting this Action, in satisfaction of Rule 23(a)(4).

19             **5.      Common Questions of Law Predominate and a Class Action Is
                        the Superior Method of Adjudication**

20

21             In addition to meeting the prerequisites of Rule 23(a), this case also satisfies Rule 23(b)(3),

22   which requires that the proposed class representative establish that common questions of law or fact

23   predominate over individual questions, and that a class action is superior to other available methods

24   of adjudication.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011); *In

25   re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 525 (N.D. Cal. 2009); *Vathana v. EverBank*, No. C 09-

26   02338 RS, 2010 WL 934219, at * 2 (N.D. Cal. Mar. 15, 2010) (noting that "subsection [23(b)(3)]

---

27

28   [14]      *See* ECF Dkt. No. 44.

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
PARTIAL SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF - 3:13-cv-03889-WHO                                                                    - 17 -

1    encompasses 'those cases in which a class action would achieve economies of time, effort, and

2    expense, and promote uniformity of decision as to persons similarly situated, without sacrificing

3    procedural fairness or bringing about other undesirable results'") (quoting Fed. R. Civ. P. 23. 1966

4    advisory committee's note).

5         Common questions of law and fact predominate and a class action is clearly the superior

6    method available to fairly and efficiently litigate this securities action.[15]  "[C]ommon issues need

7    only predominate, not outnumber individual issues." *In re Inter-Op Hip Prosthesis Liab. Litig*. 204

8    F.R.D. 330, 345 (N.D. Ohio 2001).  Further, the superiority of class actions in large securities cases

9    is well recognized. *See Amchem Prods.*, 521 U.S. at 625 (finding common questions predominated

10   in securities class action certified for settlement).

11        As discussed above, there are a number of common questions of law and fact that would

12   warrant class certification of this matter.  These questions clearly predominate over individual

13

---

14   [15]    When certifying a class for settlement purposes only, the standards for satisfying the class
15   certification element of "superiority" under Rule 2 3(b)(3) may be relaxed because the Court does
     not need to consider the difficulties of managing the class in any future litigation or at trial.  *See,*
16   *e.g.*, *Ybarrondo v. NCO Fin. Sys., Inc.*, No. 05cv 2057-L(JMA), 2009 WL 3612864, at *7 n.3 (S.D.
     Cal. Oct. 28, 2009); *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 477 (E.D. Cal. 2010).  Indeed,
17   courts have certified class actions for settlement purposes even where certification was or likely
     would have been denied for litigation purposes. *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 260
18   F.R.D. 81, 116 & n.308 (S.D.N.Y. 2009) (granting preliminary approval of a settlement class that
     included §11 claimants who had been excluded from the litigation class on grounds of
19   "predominance") (citing *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 194-95 (S.D.N.Y.
     2005) (reasoning that the "predominance" and "manageability" concerns under Rule 23(b)(3) were
20   intertwined and "because the litigation was no longer going to trial, manageability was no longer an
     issue, and the 'predominance defect [] no longer fatal'")); *Columbus Drywall & Insulation, Inc. v.*
21   *Masco Corp.*, 258 F.R.D. 545, 557-58 (N.D. Ga. 2007) (certifying a settlement class in antitrust case
     despite noting serious questions about whether a litigation class could be certified; finding "that the
22   fact of settlement is relevant to the decision to certify a class" and that "Courts have, thus, certified
     classes at the settlement stage noting that such a certification does not present the same problems
23   that certification of a litigation class proposing the same class definition would present"); *O'Keefe v.*
     *Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 292-93 (E.D. Pa. 2003) (certifying a settlement class
24   bringing state law fraud claims; recognizing that a "manageability problem" was rendered moot by
     the settlement, and thus was not a bar to class certification in the settlement context); *Ramirez v.*
25   *DeCoster*, 203 F.R.D. 30, 36-37 (D. Me. 2001) (certifying a settlement class despite having
     previously ruled that predominance requirement was not met; the settlement context mooted the
26   court's concerns that calculation of individual damages would overwhelm common issues in the
     litigation); *In re Diet Drugs*, Nos. 1203, 99-20593, 2000 WL 1222042, at *43 (E.D. Pa. Aug. 28,
27   2000) ("[W]hen taking the settlement into consideration for purposes of determining class
     certification, individual issues which are normally present in personal injury litigation become
28   irrelevant, allowing the common issues to predominate.").

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
PARTIAL SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF - 3:13-cv-03889-WHO                                                                    - 18 -

1   questions because Defendants' alleged conduct affected all Settlement Class Members in the same

2   manner.  *See, e.g.*, *Cooper*, 254 F.R.D. at 632 ("The common questions of whether

3   misrepresentations were made and whether Defendants had the requisite scienter predominate over

4   any individual questions of reliance and damages.").  Indeed, issues relating to Defendants' liability

5   are common to all members of the Settlement Class.  *Id.; see also LDK Solar*, 255 F.R.D. at 530;

6   *UTStarcom*, 2010 WL 1945737, at *9 (same); *Emulex*, 210 F.R.D. at 721 ("The predominant

7   questions of law or fact at issue in this case are the alleged misrepresentation Defendants made

8   during the Class Period and are common to the class.").

9       Falsity, materiality, scienter, and loss causation are issues that "affect investors alike," and

10  whose proof "can be made on a class-wide basis" because they "affect[] investors in common."

11  *Schleicher v. Wendt*, 618 F.3d 679, 682, 685, 687 (7th Cir. 2010).  Likewise, here, Velti's

12  misstatements during the Class Period "affect[ed] [all] investors alike" and proof of falsity,

13  materiality, scienter, and causation will "be made on a class-wide basis."  *Schleicher*, 618 F.3d at

14  685, 687; *Cooper*, 254 F.R.D. at 641.  As a result, common questions of law and fact predominate.

15      In light of the foregoing, all of the requirements of Rule 23(a) and (b) are satisfied, and there

16  are no issues that would prevent the Court from certifying this Settlement Class for settlement

17  purposes, appointing Plaintiffs (as defined herein) as the Class Representatives, and appointing Lead

18  Counsel as counsel for the Settlement Class.  *See, e.g.*, *Wahl v. Am. Sec. Ins. Co.*, No. C08-00555-

19  RS, 2011 U.S. Dist. LEXIS 59559, at *5-*6 (N.D. Cal. Jun. 2, 2011) (class certified for settlement

20  purposes); *Gittin v. KCI USA, Inc.*, No. 09-CV-0583 RS, 2011 WL 1467360, at * 19(N.D. Cal. Apr.

21  12, 2011) (same).

22      **B.      The Proposed Plan and Method for Notice Meets All Requirements**

23      "For any class certified under Rule 23(b)(3), the court must direct to class members the best

24  notice practicable under the circumstances, including individual notice to all members who can be

25  identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The proposed notice program,

26  provided under the Stipulation, complies with the requirements of Rule 23, and the PSLRA.

27

28

1    Lead Plaintiff proposes to give interested parties notice via two separate approaches: (1) by

2    first-class mail, addressed to all Settlement Class Members who can reasonably be identified and

3    located; and (2) by publication.  Lead Plaintiff has retained Strategic Claims Services ("Strategic"),

4    an experienced claims administrator, to handle the notice and claims process.

5    Strategic anticipates that administration of the settlement, including the costs of publishing

6    and distributing the required notices, locating Settlement Class members, calculating the losses and

7    recovery for each Settlement Class member, and preparing and distributing settlement checks will

8    most likely cost less than $500,000 and are thus within the range of reasonableness.

9    Strategic will mail the Notice of Pendency and Proposed Partial Settlement of Class Action

10   (the "Notice," Exhibit A-1 to the Stipulation) and the Proof of Claim and Release (the "Claim

11   Form," Exhibit A-2 to the Stipulation) to all Settlement Class Members who may be identified

12   through reasonable effort, including through the cooperation of Velti and/or its agents.  *See* Nelson

13   Decl., at Exhibit A (Stipulation).  In addition, Strategic will cause the Summary Notice, Exhibit A-3

14   to the Stipulation, to be published once in the national edition of *Investor's Business Daily* and over

15   the *Business Wire* no later than ten (10) business days after entry the Notice Date (as defined in the

16   Notice Order).  *Id.*  The Notice advises putative Settlement Class Members of the existence of the

17   Action, and their rights with respect to the proposed Partial Settlement.  Specifically, the Notice

18   describes (1) the basis for the Partial Settlement and potential recovery on an average per share basis

19   and as between open market purchases during the Class Period and purchases pursuant to either the

20   IPO or the SPO; (2) a brief description of the maximum amount of fees and expenses that Lead

21   Counsel will seek (no more than 25% of the Settlement Fund after payment of reasonable expenses)

22   and such amount on a per share basis; (3) the Plan of Distribution, which apprises Settlement Class

23   Members how their "Recognized Loss" will be calculated; (4) information about how to participate

24   in the Partial Settlement; (5) the Court's procedures for final approval of the Partial Settlement; (6)

25   procedures for a Settlement Class Member to opt out or to object to any aspect of the proposed

26   Partial Settlement, Plan of Distribution, or requested Fee and Expense Award; and (7) instructions as

27   to how to obtain additional information regarding the Action and the Partial Settlement.  *See* 15

28

1   U.S.C. §78u-4(a)(7).   Similar forms of notice routinely have been approved.   *E.g.*, *Wireless*

2   *Facilities*, 2008 WL 4146126; *In re Portal Software, Inc. Sec. Litig.*, No. C 03 5138 VRW, 2007 WL

3   1991529, at *7 (N.D. Cal. June 30, 2007) (holding that "notice by mail and publication is the 'best

4   notice practicable under the circumstances,' as mandated by FRCP 23(c)(2)(B)"); *In re Sorbates*

5   *Direct Purchaser Antitrust Litig.*, C 98-4886MMC, 2002 WL 31655191, at *1 (N.D. Cal. Nov. 15,

6   2002); *see also West*, 2006 WL 151652598, at *11 (settlement notice that explains to class members

7   what their options are was more than adequate).

8          Moreover, the Proof of Claim and Release (Ex. A-2 to the Stipulation) apprises Settlement

9   Class Members that failure to complete and submit a Claim Form, in the manner and time specified,

10   constitutes a waiver of any right to share in the Settlement Fund.   Accordingly, the manner of notice

11   satisfies due process and Rule 23.   *See Rosenburg*, 2007 WL 128232, at *5-*6; *Wireless Facilities*,

12   200816 WL 4146126, at *8.

13          **C.      The Proposed Fee and Expense Award Is Fair and Reasonable**

14          For their efforts in creating a common fund for the benefit of the Settlement Class, in

15   connection with the Motion for Final Approval, Lead Counsel will seek approval of its request for an

16   award of no more than 25% of the Settlement Fund.   It has long been recognized that a lawyer who

17   "recovers a common fund for the benefit of persons other than himself or his client is entitled to a

18   reasonable attorney's fee from the fund as a whole."   *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478

19   (1980).[16]   The Ninth Circuit and this District have approved the use of the percentage method in

20   common fund cases.   *E.g.*, *CLRB Hanson Indus., LLC v. Google*, 05-03649-JW, slip op. (N.D. Cal.

21   Sept. 14, 2009) (awarding 25% of $25 million settlement); *see also Vizcaino v. Microsoft Corp.*, 290

22   F.3d 1043, 1047 (9th Cir. 2002); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir.

23   1989); *Six Mexican Workers v. Az. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990); *Torrisi v. Tucson*

24   *Elec. Power* Co., 8 F.3d 1370 (9th Cir. 1993).

25

26   [16]      This rule, known as the common fund doctrine, is firmly rooted in American case law.   The
     purpose of this doctrine is to avoid unjust enrichment so that "those who benefit from the creation of
27   the fund should share the wealth with the lawyers whose skill and effort helped create it."   *In re*
     *Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

28

1    Here, the requested fee of no more than 25% of the Net Settlement Fund is well within the

2    range of reasonableness given (1) the results achieved; (2) the risks of litigation; (3) the skill

3    required and the quality of work; (4) the contingent nature of the fee and the financial burden

4    carried; and (5) awards made in similar cases. *See, e.g.*, *Vizcaino*, 290 F.3d at 1048-50; *Immune*

5    *Response*, 497 F. Supp. 2d at 1175 (recovery of 12% of damages supported a 25% fee award);

6    *OmniVision*, 559 F. Supp. 2d at 1046, (recovery of 9% of damages, three times the usual recovery in

7    securities settlements, supported a 28% fee award) (citing *Heritage Bond*, 2005 WL 1594403, at *11

8    (median shareholder recovery is in the range of 2%-3% of damages, from 2002 through 2007)).

9        **D.**    **The Proposed Reimbursement of Expenses Is Fair and Reasonable**

10    Lead Counsel, in connection with the Settlement Hearing, will request approval of

11    reimbursement of approximately $225,000 in expenses advanced by Lead Counsel, and counsel

12    working at the direction of Lead Counsel, for items such as consultant fees, travel costs, legal

13    research, photocopies, postage and filing fees, as well as substantial costs associated with class

14    notice and claims administration. *See Munoz v. UPS Ground Freight, Inc.*, No. 07-00970 MHP,

15    2009 WL 1626376, at *5 (N.D. Cal. June 9, 2009)(reimbursing routine litigation-related expenses

16    incurred when a review of the proceedings would not reveal any obvious inefficiencies that would

17    require a diminution of the submitted amount); *see also In re Cisco Systems Inc. Sec. Litig.*, No. C-

18    01-20418-JW(PVT), slip op. (N.D. Cal. Dec. 5, 2006) (ORDER) (awarding reimbursement of

19    expenses that amounted to approximately 9% of the total recovery).[17]

20    Among the largest costs incurred by Lead Counsel were those for Lead Plaintiff's financial

21    and accounting consultants and investigators whose assistance was essential to the successful

22    prosecution of the Action to date.  In complex litigation such as this, courts do "not doubt the

23    necessity for counsel to retain expert assistance." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp.

24    1362, 1367 (N.D. Cal. 1996) (recognizing the necessity for counsel to retain securities and financial

25    analysts, forensic accountants, and an investigator to locate and contact potential witnesses); *see also*

26

27    ---

[17]    This does not include costs of administration and notice, which Lead Plaintiff is advised will most likely be below $500,000.

28

1   *Auto. Prods. PLC v. Tilton Eng'g, Inc.*, 855 F. Supp. 1101, 1107-08 (C.D. Cal. 1994) (finding

2   services of antitrust expert to be necessary to provide jury with a factual basis to ascertain damages).

3   The other categories of expenses for which Lead Counsel seeks reimbursement consist of the type of

4   expenses routinely charged to hourly paying clients- such as travel and court reporter expenses- and

5   therefore are appropriate for reimbursement.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.

6   1994) ("[Plaintiff] may recover as part of the award of attorney's fees those out-of-pocket expenses

7   that 'would normally be charged to a fee paying client'") (citation omitted); *Media Vision*, 913 F.

8   Supp. at 1366.

9        **E.     Proposed Schedule for Final Approval**

10        Based on the terms of the Stipulation and Notice Order (Ex. A thereto), Lead Plaintiff

11   proposes the following schedule for the Court's review:

| Event | Time for Compliance |
|---|---|
| Date by which the Claims Administrator shall mail by first-class mail the Notice and the Proof of Claim | 10 business days after the Court's entry of the Notice Order (the "Notice Date") |
| Deadline for publishing Summary Notice | 10 business days after the Notice Date |
| Deadline for filing Proofs of Claim | 90 days following the Notice Date |
| Deadline for submission in support of final approval | 35 calendar days before the Settlement Hearing |
| Deadline for submitting Exclusion Requests or Written Objections | 21 calendar days before the Settlement Hearing (90 days after the Notice Date) |
| Reply/Responses to Any Objections | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | Approximately 100 days following entry of the Notice Order, or later at the Court's convenience |

18   **V.     CONCLUSION**

19        Based upon the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant

20   the Motion.

21   DATED:  May 23, 2014                          Respectfully submitted,

22    

23                              THE WEISER LAW FIRM, P.C.
                           KATHLEEN A. HERKENHOFF (168562)

24    

25                              s/ KATHLEEN A. HERKENHOFF
                           KATHLEEN A. HERKENHOFF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone:  (858) 794-1441
Facsimile:  (858) 794-1450
kah@weiserlawfirm.com

Attorneys for Movant Bobby Yadegar and
Proposed Lead Counsel

THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER (admitted *pro hac vice*)
JOSEPH M. PROFY (admitted *pro hac vice*)
CHRISTOPHER L. NELSON
(admitted *pro hac vice*)
JAMES M. FICARO
22 Cassatt Avenue, First Floor
Berwyn, PA 19312
Telephone: (610) 225-2677
Facsimile:  (610) 408-8062
rw@weiserlawfirm.com
jmp@weiserlawfirm.com
cln@weiserlawfirm.com
jmf@weiserlawfirm.com

Lead Counsel for Plaintiffs

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
PARTIAL SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF - 3:13-cv-03889-WHO                                                    - 24 -

1

<u>CERTIFICATE OF SERVICE</u>

2

      I hereby certify that on May 23, 2014, I authorized the electronic filing of the foregoing with

3

the Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4

e-mail addresses denoted on the attached Electronic Mail Notice List.

5

      I certify under penalty of perjury under the laws of the United States of America that the

6

foregoing is true and correct.  Executed on May 23, 2014.

7

                        <u>s/ KATHLEEN A. HERKENHOFF</u>
                        KATHLEEN A. HERKENHOFF

8

9

                        THE WEISER LAW FIRM, P.C.
                        12707 High Bluff Drive, Suite 200

10

                        San Diego, CA 92130
                        Telephone: 858/794-1441
                        Facsimile: 858/794-1450

11

12

                        Email: kah@weiserlawfirm.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
PARTIAL SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF - 3:13-cv-03889-WHO
- 25 -

# Mailing Information for a Case 3:13-cv-03889-WHO Rieckborn v. Velti plc et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Peter E. Borkon**
  peterb@hbsslaw.com

- **Donald A. Broggi**
  dbroi@scott-scott.com

- **Joseph Daniel Cohen**
  jcohen@scott-scott.com

- **Hal Davis Cunningham**
  hcunningham@scott-scott.com,efile@scott-scott.com

- **Brock Dahl**
  bdahl@wsgr.com

- **Patrick Norton Downes**
  pdownes@loeb.com

- **Cynthia A. Dy**
  cdy@wsgr.com

- **Boris Feldman**
  bbahns@wsgr.com

- **Jonathan Gardner**
  jgardner@labaton.com,cvillegas@labaton.com,fmalonzo@labaton.com

- **Lionel Z. Glancy**
  info@glancylaw.com,lboyarsky@glancylaw.com,lglancy@glancylaw.com

- **Michael M. Goldberg**
  mmgoldberg@glancylaw.com,csadler@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.com

- **Joseph P. Guglielmo**
  jguglielmo@scott-scott.com

- **Christopher T. Heffelfinger**
  cheffelfinger@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Kathleen Ann Herkenhoff**
  kah@weiserlawfirm.com,jmf@weiserlawfirm.com,hl@weiserlawfirm.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,peterb@hbsslaw.com,pashad@hbsslaw.com,sf_filings@hbsslaw.com

- **Nicole Catherine Lavallee**
  nlavallee@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Robert Alan Meyer**
  rmeyer@loeb.com

- **Donald Anthony Miller**
  dmiller@loeb.com,vmanssourian@loeb.com

- **Matthew C Moehlman**
  mmoehlman@labaton.com

- **Christopher Leigh Nelson**
  cln@weiserlawfirm.com

- **John D. Pernick**
  john.pernick@bingham.com

- **Anthony David Phillips**
  aphillips@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Joseph Mark Profy**
  jmp@weiserlawfirm.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,mmgoldberg@glancylaw.com,echang@glancylaw.com

- **Mark Punzalan**
  markp@punzalanlaw.com,office@punzalanlaw.com

- **Brian J. Robbins**
  notice@robbinsarroyo.com

- **Casey Edwards Sadler**
  csadler@glancylaw.com

- **Charlene Sachi Shimada**
  charlene.shimada@bingham.com

- **Evan Jason Smith**
  esmith@brodsky-smith.com

- **Michael Walter Stocker**
  mstocker@labaton.com,drogers@labaton.com,ElectronicCaseFiling@labaton.com,lmehringer@labaton.com

- **Jon A Tostrud**
  jtostrud@tostrudlaw.com,acarter@tostrudlaw.com

- **Diane Marie Walters**
  dwalters@wsgr.com,vshreve@wsgr.com

- **Lucy Han Wang**
  lucy.wang@bingham.com,andrew.obach@bingham.com

- **Robert Brian Weiser**
  rw@weiserlawfirm.com

- **Wendy Hope Zoberman**
  wzoberman@bermandevalerio.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)