THE WEISER LAW FIRM, P.C.
KATHLEEN A. HERKENHOFF (SBN 168562)
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone:  (858) 794-1441
Facsimile:  (858) 794-1450
kah@weiserlawfirm.com

Lead Counsel for Plaintiffs and
Counsel for Lead Plaintiff Bobby Yadegar/Ygar Capital LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re VELTI PLC SECURITIES LITIGATION<br><br>———————————————————<br><br>This Document Relates To:<br><br>ALL ACTIONS.<br><br>———————————————————| )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Master File No. 3:13-cv-03889-WHO<br><br>(Consolidated with Case Nos.<br>3:13-cv-03954-WHO<br>3:13-cv-04140-WHO<br>3:13-cv-04606-WHO<br>3:14-cv-00372-WHO)<br><br>CLASS ACTION<br><br>PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:        January 14, 2015<br>TIME:        2:00 p.m.<br>CTRM:       2, 17th Floor<br>JUDGE:      The Hon. William H. Orrick<br><br>Date Action Filed: 8/22/13 |

## TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ....................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ......................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................2

I.      INTRODUCTION AND OVERVIEW OF PARTIAL SETTLEMENT..........................2

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY.........................................4

III.    FINAL APPROVAL OF THE PARTIAL SETTLEMENT IS WARRANTED................7

        A.      Judicial Policy And Precedent Favors Final Approval ...................................7

        B.      The Partial Settlement Is Fair, Adequate and Reasonable, and Meets All
                Ninth Circuit Requirements for Final Approval ......................................8

                1.      The Strength of Plaintiffs' Case When Balanced Against the Risk,
                        Expense, Complexity, and Likely Duration of Further Litigation
                        Supports Approval of the Partial Settlement ...............................9

                        a.      The Risks of Establishing Liability..............................10

                        b.      The Risks of Proving Loss Causation and Damages ....................12

                        c.      The Complexity, Expense, and Likely Duration of the
                                Litigation Justifies the Partial Settlement ....................................14

                        d.      The Risks of Collectability ..........................................15

                2.      Plaintiffs Have Sufficient Information to Determine the Propriety
                        of the Partial Settlement......................................................16

                3.      The Recommendations of Experienced Counsel After Extensive
                        Litigation and Arm's-Length Settlement Negotiations Favor the
                        Approval of the Partial Settlement..............................................17

                4.      The Partial Settlement Enjoys a Presumption of Reasonableness
                        Because It Is the Product of Arm's-Length Settlement Negotiations........18

IV.     THE PLAN OF DISTRIBUTION IS FAIR AND REASONABLE ...............................19

V.      CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE....................20

        A.      The Proposed Settlement Class Meets the Prerequisites for Class
                Certification Under Rule 23........................................................................20

                1.      Numerosity..............................................................................21

                2.      Commonality............................................................................22

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO

- i -

1

2                                                                                                            **Page**

3

     3.     Typicality ................................................................................................22

4

     4.     Adequacy ...............................................................................................23

5

     5.     Common Questions of Law Predominate and a Class Action Is the

6               Superior Method of Adjudication ..............................................................24

7 VI.    NOTICE AS ORDERED BY THE COURT HAS BEEN PROVIDED TO THE
       SETTLEMENT CLASS ...................................................................................25

8

VII.   CONCLUSION.....................................................................................................25

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Alfus v. Pyramid Tech. Corp.*,
5
    764 F. Supp. 598 (N.D. Cal. 1991) ......................................................................22
6
*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).............................................................................................22, 23
7
*Athale v. Sinotech Energy Ltd.*,
8
    No. 11-cv-05831, slip op. (S.D.N.Y. Sept. 4, 2013)..............................................16
9
*Beecher v. Able*,
    575 F.2d 1010 (2d Cir. 1978)..................................................................................19
10
*Blackie v. Barrack*,
11
    524 F.2d 891 (9th Cir. 1975) ...........................................................................20, 21
12
*Boyd v. Bechtel Corp.*,
13
    485 F. Supp. 610 (N.D. Cal. 1979) ......................................................................9, 18
14
*Church v. Consol. Freightways, Inc.*,
    No. C-90-2290-DLJ, 1993 U.S. Dist. LEXIS 6439 (N.D. Cal. May 3, 1993).........9
15
*Churchill Vill., L.L.C. v. Gen. Elec.*,
16
    361 F.3d 566 (9th Cir. 2004) .............................................................................7, 13
17
*Class Plaintiffs v. City of Seattle*,
18
    955 F.2d 1268 (9th Cir. 1992) ........................................................................7, 9, 19
19
*Crossen v. CV Therapeutics*,
    No. C 03-03709 SI, 2005 WL 1910928 (N.D. Cal. Aug. 10, 2005)......................22
20
*Dura Pharm., Inc. v. Broudo*,
21
    544 U.S. 336 (2005).................................................................................................12
22
*Ellis v. Naval Air Rework Facility*,
23
    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ..................7, 18
24
*Erica P. John Fund, Inc. v. Halliburton Co.*,
    131 S. Ct. 2179 (2011)......................................................................................23, 24
25
*Gittin v. KCI USA, Inc.*,
26
    No. 09-CV-0583 RS, 2011 WL 1467360 (N.D. Cal. Apr. 12, 2011) .....................24

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO

- iii -

**Page**

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................7, 20, 23

*Harris v. Palm Springs Alpine Estates, Inc.*,
329 F. 2d 909 (9th Cir. 1964) ......................................................................21

*Hicks v. Stanley*,
No. 01 CIV 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2007) ..............................18

*Hodges v. Akeena Solar, Inc.*,
274 F.R.D 259 (N.D. Cal. 2011).............................................................20, 22

*In re Adobe Sys., Inc. Sec. Litig.*,
139 F.R.D. 150 (N.D. Cal. 1991) .................................................................20

*In re Apollo Grp., Inc. Sec. Litig.*,
No. CV 04-2147-PHx-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008),
*rev'd*, No. 08-16971, 2010 U.S. App. LEXIS 14478 (9th Cir. June 23, 2010) ......................12

*In re BankAtlantic Bancorp, Inc.*,
No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011).............................12

*In re Chicken Antitrust Litig. Am. Poultry*,
669 F.2d 228 (5th Cir. 1982) ......................................................................19

*In re Cooper Cos. Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009)...........................................................20, 23, 24

*In re Emulex Corp., Sec. Litig.*,
210 F.R.D. 717 (C.D. Cal. 2002)...........................................................22, 23, 24

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
No. MDL 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) ..................................18

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
142 F.R.D. 588 (S.D.N.Y. 1992) .................................................................19

*In re Heritage Bond Litig.*,
No. 02ML1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ..............................20

*In re Ikon Office Solutions, Inc.*,
194 F.R.D. 166 (E.D. Pa. 2000)....................................................................9

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)..............................................................18

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO

- iv

**Page**

*In re LDK Solar Sec. Litig.*,
    255 F.R.D. 519 (N.D. Cal. 2009) ...........................................................................................24

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .................................................................................9, 14, 15, 16

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................................................7, 17, 18, 20

*In re Oracle Corp. Sec. Litig.*,
    No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009)
    *aff'd sub nom. In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) .........................12

*In re Oracle Sec. Litig.*,
    No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. Jun. 18, 1994)................................19

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .............................................................................................7, 8

*In re Portal Software, Inc. Sec. Litig.*,
    No. C 03 5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) .....................................25

*In re Seagate Tech. II Sec. Litig.*,
    843 F. Supp. 1341 (N.D. Cal. 1994) ..................................................................................20

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) .............................................................................18

*In re UTStarcom, Inc. Sec. Litig.*,
    No. C 04-04908 JW, 2010 WL 1945737 (N.D. Cal. May 12, 2010)..........................20, 21, 22

*In re VeriSign, Inc. Sec. Litig.*,
    No. C 02-02270-JW, 2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005).....................22

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) *aff'd,* 798 F.2d 35 (2d Cir. 1986). ..................................13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    720 F. Supp. 1379 (D. Ariz. 1989),
    *aff'd sub nom. Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ....................9

*In re Wireless Facilities, Inc. Sec. Litig. II*,
    253 F.R.D. 607 (S.D. Cal. 2008) ..............................................................................18, 25

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO

- v

**Page**

*Knight v. Red Door Salons, Inc.*,
No. 08-01520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ....................................20

*Lerwill v. Inflight Motion Pictures, Inc.*,
582 F. 2d 507 (9th Cir. 1978) ......................................................................23

*Lewis v. Newman*,
59 F.R.D. 525 (S.D.N.Y. 1973) .........................................................................9

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ....................................................................7, 18

*Linney v. Cellular Alaska P'ship*,
No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997),
*aff'd*, 151 F.3d 1234 (9th Cir. 1998)...............................................................18

*Marshall v. Holiday Magic, Inc.*,
550 F.2d 1173 (9th Cir. 1977) .........................................................................8

*Murillo v. Pac. Gas & Elec. Co.*,
266 F.R.D. 468 (E.D. Cal. 2010) ....................................................................24

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*,
797 F.2d 799 (9th Cir. 1986) ...........................................................................7

*Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................8, 14, 17

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ................................................................. *passim*

*Perez-Funez v. Dist. Director, Immigration & Naturalization Serv.*,
611 F. Supp. 990 (C.D. Cal. 1984) ..................................................................21

*Republic Nat'l Life Ins. Co. v. Beasley*,
73 F.R.D. 658 (S.D.N.Y. 1977) .........................................................................9

*Robbins v. Koger Props.*,
116 F.3d 1441 (11th Cir. 1997) .......................................................................12

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ..........................................................................17

*Satchell v. Fed. Express Corp.*,
Nos. C03-2659 SI, C03-2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)...................18

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO

- vi

1

2                                                                                          **Page**

3

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ...................................................................7, 9, 13

*In re Tyco Int'l, Ltd. Multidist. Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007)..................................................................12

*Util. Reform Project v. Bonneville Power Admin.*,
   869 F.2d 437 (9th Cir. 1989) ..............................................................................7

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ..............................................................................7

*Vathana v. EverBank*,
   No. C 09-02338 RS, 2010 WL 934219 (N.D. Cal. Mar. 15, 2010)........................24

*Wahl v. Am. Sec. Ins. Co.*,
   No. C08-00555-RS, 2011 U.S. Dist. LEXIS 59559 (N.D. Cal. Jun. 2, 2011)........25

*Wehner v. Syntex Corp.*,
   715 F.R.D. 641 (N.D. Cal. 1987)........................................................................22

*Welling v. Alexy*,
   155 F.R.D. 654 (N.D. Cal. 1994)........................................................................21

*West v. Circle K Stores, Inc.*,
   No. S-04-0438 WBS GGH, 2006 WL 1652598 (E.D. Cal. June 13, 2006.........7, 23

*White v. NFL*,
   822 F. Supp. 1389 (D. Minn. 1993)....................................................................19

*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910)............................................................................................7

*Woo v. Home Loan Grp., L.P.*,
   No. 07-CV-202 H (POR), 2008 WL 3925854 (S.D. Cal. Aug. 25, 2008)................9

*Yamner v. Boich*,
   No. C-92-20597 RPA, 1994 WL 514035 (N.D. Cal. Sept. 15, 1994) ....................21

*Ybarrondo v. NCO Fin. Sys., Inc.*,
   No. 05cv 2057-L(JMA), 2009 WL 3612864 (S.D. Cal. Oct. 28, 2009) ..................24

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2                                                                              **Page**

3

**STATUTES, RULES AND REGULATIONS**

4

15 U.S.C.
   §77a ........................................................................................................6, 8
   §77k ...........................................................................................................5
   §77o ...........................................................................................................5
   §78j(b) ........................................................................................................4
   §78t ............................................................................................................4

Federal Rules of Civil Procedure
   Rule 23 ................................................................................................19, 20
   Rule 23(a) ......................................................................................20, 23, 24
   Rule 23(a)(1) ............................................................................................21
   Rule 23(a)(2) ............................................................................................22
   Rule 23(a)(3) ............................................................................................22
   Rule 23(a)(4) ............................................................................................24
   Rule 23(b) ........................................................................................20, 24
   Rule 23(b)(3) ............................................................................................24
   Rule 23(c)(2)(B) ......................................................................................25
   Rule 23(e) ..............................................................................................7, 8

17 C.F.R.
   §240.10b-5 .........................................................................................4, 12

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO:     ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 14, 2015, at 2:00 p.m., or as soon thereafter as the matter may be heard, Plaintiffs will, and hereby do, move (the "Motion") the Honorable William H. Orrick, located in Courtroom 2, 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94101, for an order pursuant to Fed. R. Civ. P. 23(e): (1) granting final approval of the proposed $9,500,000 settlement (the "Partial Settlement") documented in the May 23, 2014 Stipulation and Agreement of Partial Settlement (the "Stipulation" or the "Settlement Agreement")[1], entered between the Settling Parties to the above-captioned securities class action (the "Action"); (2) granting final certification of the Settlement Class, appointing Plaintiffs as representatives for the Settlement Class (the "Class Representatives"), and appointing Lead Counsel as counsel for the Settlement Class ("Class Counsel")[2]; (3) finding that the mailing and/or publication of the Notices of the proposed Partial Settlement to the Settlement Class met all due process requirements; and (4) granting final approval to the Plan of Distribution.

As demonstrated herein, the proposed Partial Settlement is an excellent result for the Settlement Class under the circumstances, is fair, reasonable and adequate under the governing standards within the Ninth Circuit, as well as Rules 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure, and warrants final approval of this Court.  In support of this Motion, Plaintiffs submit herewith a Memorandum of Points and Authorities, the Declaration of Robert Weiser of The Weiser

---

[1]     Unless otherwise defined herein, all capitalized terms have the same meaning as set forth in the Stipulation.  A true and correct copy of the Stipulation is attached as Exhibit A to the Declaration of Robert B. Weiser in Support of Plaintiffs' Motion for Final Approval of Partial Settlement and Motion for Plaintiffs' Counsel's Fee and Expense Award (the "Weiser Decl.").  Citations to the paragraphs of the Weiser Decl. appear in the following format: "Weiser Decl. at __."  All citations to "¶__" are to paragraphs of the Amended Consolidated Complaint for Violations of the Securities Act of 1933 and the Securities and Exchange Act of 1934 (the "Amended Consolidated Complaint"), ECF Dkt. No. 144-3.

[2]     The Court provisionally certified the Settlement Class in the August 19, 2014 Order Preliminarily Approving Partial Settlement and Providing for Notice (the "Preliminary Approval Order") (ECF Dkt. No. 147).

1  Law Firm, P.C. and exhibits thereto, and the [Proposed Revised] Final Judgment and Order of

2  Dismissal with Prejudice (the "Judgment").

3        The deadline for filing objections to the Partial Settlement, Plan of Distribution and Request

4  for Attorneys' Fees is December 2, 2014.  Lead Counsel will address all objections that are timely

5  received in their reply brief to be filed on or before January 5, 2015.

6  **STATEMENT OF ISSUES TO BE DECIDED**

7        1.     Whether the $9.5 million Partial Settlement should be finally approved as fair,

8  reasonable and adequate?

9        2.     Whether the proposed Plan of Distribution should be finally approved as fair and

10  reasonable?

11        3.     Whether the proposed Settlement Class should be certified, the Plaintiffs appointed as

12  Class Representatives, and Lead Counsel appointed as the Class Counsel?

13        4.     Whether the method and manner of issuance of the Notices satisfied due process and

14  Fed. R. Civ. P. 23(c)(2)(B)?

15  **MEMORANDUM OF POINTS AND AUTHORITIES**

16  **I.     INTRODUCTION AND OVERVIEW OF PARTIAL SETTLEMENT**

17        The proposed Partial Settlement provides a recovery of $9,500,000 in cash to resolve the

18  claims in this Action as to the Settling Defendants (and the Released Defendants).  The Partial

19  Settlement is the product of extensive investigation of the relevant claims asserted in the Action, and

20  follows the filing of two complex and detailed complaints by Plaintiffs: (1) the filing on January 24,

21  2014 of the Yadegar/Ygar Capital LLC Action (as defined herein) to preserve certain claims as to

22  Baker Tilly (not named in the Initial Actions, as defined herein), claims pursuant to §12 of the

23  Securities Act of 1933 (the "Securities Act") (15 U.S.C. §77(a)) in connection with the Company's

24  January 28, 2011 initial public offering (the "IPO") and the Company's June 14, 2011 secondary

25  public offering (the "SPO"); and (2) the filing on April 22, 2014 of the Consolidated Complaint for

26  Violations of the Securities Act of 1933 and the Securities Exchange Act of 1934 (the "Consolidated

27  Complaint"), which is in excess of 130 pages.  ECF Dkt. No. 105.  During the course of their

28

1    investigation and litigation efforts, Plaintiffs engaged in dialogue with Velti concerning potential

2    early resolution of the claims as to Velti and the Individual Defendants, which was critical given the

3    November 4, 2013 filing for bankruptcy protection pursuant to Chapter 11 by Velti's U.S. based

4    operations (the "U.S. Bankruptcy").  ACC, ¶407.[3]  Indeed, on August 18, 2014, Velti initiated

5    liquidation proceedings in the Royal Court of Jersey (the "Foreign Bankruptcy").  *See* ECF Dkt. No.

6    150.[4]

7            The importance of securing a swift resolution to the claims against the Company and the

8    Individual Defendants cannot be understated.  Plaintiffs faced significantly substantial obstacles,

9    including quickly diminishing insurance coverage, service on foreign defendants, foreign

10   enforcement of a judgment and complications stemming from the Company's bankruptcy

11   proceedings both domestically and overseas.

12          Thus, in the interest of securing a sound, well-considered recovery for the Settlement Class,[5]

13   Plaintiffs undertook a simultaneous path of engaging in settlement discussions with Velti and the

14   Individual Defendants while continuing with due speed on litigation and investigation efforts.  These

15   dual-track efforts included formal mediation before the Honorable Layn Phillips (the "Mediator" or

16   "Judge Phillips") on March 14, 2014 (the "Mediation").  The Mediation was contentious and the

17   matter was not resolved on the day of the Mediation.  The Settling Parties continued, however, to

18   engage in ongoing dialogue with the Mediator following the Mediation.  Meanwhile, to continue to

19   protect the interests of the Settlement Class, Plaintiffs filed the Consolidated Complaint on April 22,

20   2014, thus further evidencing the arms'-length basis of the Settling Parties' negotiations in the

21   Action. Weiser Decl. at 32-33.

22

23   [3]      "ACC ¶" refers to paragraphs of the Amended Consolidated Complaint filed in redacted form
     on August 12, 2014.  ECF.Dkt. No. 144.

24   [4]      Velti has informed this Court that it does not believe that the initiation of the Foreign
25   Bankruptcy divests this Court of jurisdiction to consider the Stipulation or approve the Partial
     Settlement.  *See* ECF Dkt. No. 150.

26   [5]      The Settlement Class means all Persons, except those expressly excluded as set forth in the
27   Stipulation, who purchased or otherwise acquired the Shares of Velti between January 27, 2011 and
     August 20, 2013, inclusive.

28
     PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL
     SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
     3:13-cv-03889-WHO                                                                          - 3 -

1       The diligent efforts of Plaintiffs have secured a Settlement Fund of $9.5 million, and valuable

2  cooperation provisions as to the continuing litigation against the Non-Settling Defendants, *i.e.*, Baker

3  Tilly and the Underwriter Defendants.  *See* Weiser Decl. at 45.  Plaintiffs submit that the Partial

4  Settlement amply warrants final approval.

5  **II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY**

6       Between August and September of 2013, three related securities class actions (the "First

7  Three Actions") were filed against Velti and the Individual Defendants on behalf of all persons who

8  purchased Velti shares during the period January 27, 2011 and August 20, 2013 (the "Class Period").

9  The First Three Actions alleged violations of §§10(b) and 20(a) of the Securities Exchange Act of

10  1934 (the "Exchange Act"), as amended by the PSLRA (15 U.S.C. §§78j(b) and 78t), and Rule 10b-

11  5 promulgated thereunder (17 C.F.R. §240.10b-5).

12       The First Three Actions were filed following the August 21, 2013 announcement by the

13  Company of its 2013 fiscal second quarter financial results, wherein it was revealed that the

14  Company had made the decision to write-down approximately $111 million of its trade receivables

15  and accrued contract receivables relating to its enterprise business.  ACC, ¶23.  A "major

16  restructuring" of Velti's business was also announced.  *Id.*  In response to this news, shares of Velti

17  declined $0.66 per share, or more than 66%, to close on August 21, 2013, at $0.34 per share, on

18  heavy trading volume.  ACC, ¶24.  The First Three Actions, consistent with the allegations in the

19  operative Complaint, allege that throughout the proposed Class Period, certain of the Defendants

20  made materially false and/or misleading statements, as well as failed to disclose material adverse

21  facts about Velti's financial statements and reported financial results.  ACC, ¶25.  The complaints in

22  the First Three Actions alleged that Defendants made false and/or misleading statements and/or

23  failed to disclose, *inter alia*: (1) that the Company was having difficulties collecting certain

24  receivables; (2) that certain of the Company's receivables were uncollectible; (3) that, as a result, the

25  Company's revenues and receivables were overstated during the proposed Class Period; (4) that the

26  Company lacked adequate internal and financial controls; and (5) that, as a result of the foregoing,

27  the Company's statements and reported financial results were materially false and misleading.  *Id.*

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO                                - 4 -

1    On October 4, 2013, a fourth related securities class action (the "Fourth Action") was filed,

2    which action included substantially the same factual claims and counts filed in the First Three

3    Actions,[6] but also alleged violations of §§11 and 15 of the Securities Act of 1933 (the "Securities

4    Act") (15 U.S.C. §§77k and 77o) on behalf of persons or entities who purchased or otherwise

5    acquired Velti shares pursuant and/or traceable to the IPO and SPO.

6    On October 21, 2013, Lead Plaintiff filed one of several competing motions in this District

7    seeking consolidation of the Initial Actions (and any subsequently filed actions related thereto),

8    appointment as Lead Plaintiff ,and appointment of Lead Counsel pursuant to the Private Securities

9    Litigation Reform Act of 1995 (the "PSLRA").  ECF Dkt. No. 44.  On December 3, 2013, the Court

10   entered an Order Granting Motion to Consolidate and Appoint Lead Plaintiff (the "Lead Order")

11   ECF Dkt. No. 80, which appointed the aforementioned Lead Plaintiff and its choice of counsel, The

12   Weiser Law Firm, P.C. (the "Weiser Firm"), as Lead Counsel.  On December 3, 2013, the Court also

13   entered an Order Consolidating Cases and Setting Case Management Deadlines (the "Consolidation

14   Order").  ECF Dkt. No. 81.

15   On December 13, 2013, pursuant to the Consolidation Order, Lead Plaintiff filed a

16   Stipulation and [Proposed] Order Setting Schedule for Filing of Consolidated Complaint and Related

17   Matters (the "Scheduling Stipulation"), which was entered as an order of the Court on December 26,

18   2013.  *See* ECF Dkt. No. 89.  As detailed in the Scheduling Stipulation, following appointment, Lead

19   Plaintiff immediately set out to achieve what no party to date in the Initial Actions appears to have

20   attempted, namely service of the operative pleadings.  As noted in the Scheduling Stipulation,

21   however, service was not completed as to certain of the Individual Defendants who are foreign

22   residents.[7]  ECF Dkt. Nos. 90-92**.**

23

24

25   _____

[6]    The First Three Actions and the Fourth Action are referred to herein as the "Initial Actions."

26   [7]    The issue of service as to certain of the Individual Defendants, particularly when combined
     with Velti's overall financial condition, dictated immediate action to determine if a reasonable
27   resolution of the claims as to Velti and the Individual Defendants was possible.

28
     PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL
     SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
     3:13-cv-03889-WHO                                                                          - 5 -

1    On January 24, 2014, as detailed above, the Yadegar/Ygar Capital LLC Action was filed, and

2    was later consolidated with, and into, the Lead Action.  The Yadegar/Ygar Capital LLC Action was

3    filed proactively to preserve certain claims as to Baker Tilly (not named in the Initial Actions), and

4    claims pursuant to §12 of the Securities Act (15 U.S.C. §77a) in connection with the IPO and SPO.

5    While continuing to protect the Settlement Class at every step of the litigation, Lead Plaintiff also

6    began a dialogue with Velti concerning possible early resolution of the Action, particularly in view

7    of the U.S. Bankruptcy.

8        Accordingly, on March 14, 2014, counsel for Plaintiffs, Velti, and certain of the Individual

9    Defendants participated in the Mediation before the Judge Phillips.  *See* Weiser Decl. at 32.  The

10   Settling Parties engaged in substantial preparation for the Mediation.  While a settlement of the

11   Action was not reached at the Mediation, the Settling Parties continued their ongoing dialogue with

12   the Mediator and with each other.  *Id.* at 33.

13       On April 22, 2014, Plaintiffs filed the 130 page Consolidated Complaint.  *See* ECF Dkt. No.

14   105.  After the Consolidated Complaint was filed, the Settling Parties continued their dialogue with

15   the Mediator and ultimately agreed to the Partial Settlement.  Plaintiffs submit that the $9,500,000

16   proposed Partial Settlement – including an agreement by the Settling Defendants to cooperate with

17   Plaintiffs in furthering claims against the Non-Settling Defendants – is a very good result for the

18   Settlement Class, especially considering the risk of a much lower recovery or no recovery at all if the

19   Action proceeded through motion to dismiss, class certification, summary judgment, trial and

20   perhaps appeals.  Moreover, if Plaintiffs had elected to continue litigation efforts as to the Settling

21   Defendants, there existed a real risk that at least some of the Settling Defendants were beyond the

22   reach of this Court and would not be in a position to satisfy any judgment rendered against them.  In

23   that scenario, Plaintiffs and the Settlement Class Members would receive nothing from such

24   defendants.

25       Reached by experienced litigators and only after a comprehensive investigation at the

26   direction of Lead Counsel, the proposed Partial Settlement was the result of fully informed, arms'-

27   length bargaining, and an in-person mediation session before an experienced and well-respected

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO                                                                              - 6 -

1    mediator, Judge Phillips.  For the reasons stated herein, Plaintiffs respectfully request that the Court

2    grant its motion for final approval of the Partial Settlement.

3    **III.    FINAL APPROVAL OF THE PARTIAL SETTLEMENT IS WARRANTED**

4              **A.    Judicial Policy And Precedent Favors Final Approval**

5              Rule 23(e) of the Federal Rules of Civil Procedure requires Court approval for a class action

6    settlement.  It is well-established in the Ninth Circuit that "voluntary conciliation and settlement are

7    the preferred means of dispute resolution."  *Officers for Justice v. Civil Serv. Comm'n of City &*

8    *Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Omnivision Techs., Inc.*,

9    559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) ("[T]he court must also be mindful of the Ninth

10   Circuit's policy favoring settlement, particularly in class action law suits.").[8]  Class action suits

11   readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the

12   outcome, and the typical length of the litigation.  It is beyond question that "there is an overriding

13   public interest in settling and quieting litigation," and this is "particularly true in class action suits."

14   *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Util. Reform Project v.*

15   *Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).[9]

16            The district court must exercise "sound discretion" in approving a settlement.  *Ellis v. Naval*

17   *Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*

18   *v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993).  In exercising its discretion,

19            the court's intrusion upon what is otherwise a private consensual agreement
             negotiated between the parties to a lawsuit must be limited to the extent necessary to
20           reach a reasoned judgment that the agreement is not the product of fraud or
             overreaching by, or collusion between, the negotiating parties, and that the
21           settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

22   _____

[8]      *See also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ("strong
23   judicial policy ... favors settlements, particularly where complex class action litigation is
     concerned."); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *West v. Circle*
24   *K Stores, Inc*., No. S-04-0438 WBS GGH, 2006 WL 1652598, at *1 (E.D. Cal. June 13, 2006).

25   [9]      The law consistently favors the compromise of disputed class action claims.  *See Williams v.*
     *First Nat'l Bank*, 216 U.S. 582, 595 (1910); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir.
26   1998); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Churchill Vill., L.L.C. v. Gen.*
     *Elec.*, 361 F.3d 566, 575 (9th Cir. 2004);  *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d
27   799, 802 (9th Cir. 1986).

28

1    *Officers for Justice*, 688 F.2d at 625.  The Ninth Circuit defines the limits of the inquiry to be made

2    by the court in the following manner:

> 3    [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.  Neither the trial court nor this court is to reach any ultimate
> 4    conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of
> 5    wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what
> 6    ***might*** have been achieved by the negotiators.

7    *Id*. (emphasis in original).

8        Courts have taken a liberal approach toward approval of class action settlements, recognizing

9    that the settlement process involves the exercise of judgment and that the concept of

10   "reasonableness" can encompass a broad range of results.  "'In most situations, unless the settlement

11   is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation

12   with uncertain results.'"  *Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526

13   (C.D. Cal. 2004) (citations omitted).

14   **B.    The Partial Settlement Is Fair, Adequate and Reasonable, and Meets
          All Ninth Circuit Requirements for Final Approval**

15

16       In deciding whether to approve a proposed settlement of a stockholders' class action under

17   Rule 23(e), the court must first find that the proposed settlement is "'fair, adequate, and

18   reasonable.'"[10]  The Ninth Circuit has provided factors which may be considered in evaluating the

19   fairness of a class action settlement:

> 20   Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is
> 21   fundamentally fair, adequate and reasonable.  The district court's ultimate determination will necessarily involve a balancing of several factors which may
> 22   include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of
> 23   maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience
> 24   and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.[11]

25

---

26   [10]    *Pac. Enters.*, 47 F.3d at 377 (citations omitted); *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

27   [11]    The deadline for objections by Settlement Class Members to the Settlement is December 2, 2014.  To date, Plaintiffs have received two objections.  The first is from an investor who bought

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO                                                                                  - 8 -

1   *Officers for Justice*, 688 F.2d at 625 (citations omitted).[12]  "'The relative degree of importance to be

2   attached to any particular factor will depend upon . . . the nature of the claim(s) advanced, the type(s)

3   of relief sought, and the unique facts and circumstances presented by each individual case.'"  *Woo*,

4   2008 WL 3925854, at *3 (quoting *Officers for Justice*, 688 F.2d at 625).  As detailed herein, the

5   Stipulation meets all applicable Ninth Circuit requirements for final approval.

6           1.      **The Strength of Plaintiffs' Case When Balanced Against the
                    Risk, Expense, Complexity, and Likely Duration of Further
7                   Litigation Supports Approval of the Partial Settlement**

8           In determining whether the Partial Settlement is fair, reasonable, and adequate, the Court

9   should balance against the continuing risks of litigation, the benefits afforded to the Settlement Class

10  and the immediacy and certainty of a substantial recovery.  *In re Mego Fin. Corp. Sec. Litig.*, 213

11  F.3d 454, 458 (9th Cir. 2000); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979).

12          In the context of approving class action settlements, courts attempting to balance these

13  factors have recognized "that stockholder litigation is notably difficult and notoriously uncertain."

14  *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v.*

15  *Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977).  This is even more so today in this post-PSLRA

16  environment amid defendants' constant attempts to push the envelope and contours of the PSLRA.

17  *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have

18  become more difficult from a plaintiff's perspective in the wake of the PSLRA").

19  _____

20  2,000 Velti shares during the Class Period and sold those shares less than one month later before the
    end of the Class Period. Under the Plan of Distribution (set forth in the Notice), that investor has a
21  Recognized Loss of Zero.  *See* Notice at page 14 ("For shares purchased between May 16, 2012 and
    November 14, 2012, inclusive and. . . sold between May 16, 2012 and November 14, 2012,
22  inclusive, the Recognized Loss shall be zero."). The second objection is from an investor who
    believes the Plan of Distribution improperly covers investors who purchased Velti securities early in
23  the Class Period.  To ensure a consolidated and fulsome response to all objections, the foregoing
    objections and all others (including any from the Non-Settling Defendants) will be fully addressed in
24  the reply brief to be submitted in further support of this Motion which will be filed on or before
    January 5, 2015.

25  [12]     *Accord Torrisi*, 8 F.3d at 1375; *Woo v. Home Loan Grp., L.P.*, No. 07-CV-202 H (POR),
    2008 WL 3925854, at *3 (S.D. Cal. Aug. 25, 2008); *Church v. Consol. Freightways, Inc.*, No. C-90-
26  2290-DLJ, 1993 U.S. Dist. LEXIS 6439 (N.D. Cal. May 3, 1993); *In re Wash. Pub. Power Supply
    Sys. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. City of Seattle*,
27  955 F.2d 1268 (9th Cir. 1992).

28

1    While Lead Counsel and Plaintiffs believe that the Action against the Settling Defendants has

2    significant merit, they recognize that Plaintiffs faced numerous risks and uncertainties and were well

3    aware that many other similar actions have been prosecuted in the belief that they were meritorious,

4    only to lose on dispositive motions, at trial, or on appeal.  The Partial Settlement recognizes the risks

5    of complex litigation involving difficult legal and factual issues.  As discussed herein and in the

6    Weiser Decl., the risks of continued litigation when weighed against the substantial and certain

7    recovery for the Settlement Class confirms the reasonableness of the Partial Settlement.  The Partial

8    Settlement is unquestionably better than another distinct possibility – no or little recovery for the

9    Settlement Class.  In a circumstance where Plaintiffs successfully overcame a motion to dismiss,

10   Plaintiffs immediately would be faced with a discovery hurdle as Greek and European Union privacy

11   laws limit the ability of confidential documents to leave their respective countries.  Weiser Decl. at

12   40.  Proving the underlying merits of the Action without proper access to discovery would nearly

13   impossible.  Further still, assuming Plaintiffs succeeded in obtaining a judgment, there is no certainty

14   any money would be available to the Settlement Class.  Velti's bankruptcy meant the Company's

15   insurance proceeds would be used to satisfy several obligations and a judgment for the Settlement

16   Class years from now could result in a smaller, at best *de minimis*, recovery.

### a.  The Risks of Establishing Liability

18   Based on the evidence gathered to date, including interviews with former Velti employees

19   and the Settling Defendants, and the review of certain documents produced by Velti in confirmatory

20   discovery, Plaintiffs believe that they have a good case as to liability against all Defendants, and

21   would be able to prove that Defendants knowingly misrepresented Velti's financial condition which

22   caused the price of Velti securities to be artificially inflated.  While Plaintiffs believe that their

23   claims are strong, getting past summary judgment and establishing liability at trial would by no

24   means be guaranteed.  Indeed, the Settling Defendants have adamantly denied any liability and have

25   asserted from the outset that they possessed absolute defenses to Plaintiffs' claims.

26   Although Plaintiffs believe that they could present sufficient evidence to support their claims,

27   Plaintiffs are aware that the Settling Defendants would present counter-evidence and other

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO

1   substantial obstacles to obtaining a judgment in their favor at trial.  Settling Defendants' position

2   was that the Company's collapse was due to a confluence of events that were outside their control.

3   Primarily, Settling Defendants assert that Velti's contracts in Greece (and the Balkan region)

4   typically had much longer payment terms than those in other geographic regions, particularly when

5   compared to the U.S. and Western Europe.  But Velti's customers always made good and,

6   eventually, paid their bills.  However, in April 2010 Greek government debt was downgraded,

7   setting off a chain reaction throughout the country (which eventually spread to the entire Balkan

8   region).  Dramatically tightening credit led companies within Greece to substantially delay (already

9   slow) payments to creditors and led multinational companies to reduce their exposure to the

10  country's deteriorating economic situation.

11      Moreover, the Company asserts that it relied on its advisors, namely its auditor Baker Tilly,

12  in assessing whether the now even older receivables should have been written down.  Baker Tilly

13  assured the Company that its financial house was in order and the Company was in full compliance

14  with U.S. accounting standards.  It was in reliance on that – now known to be untenable – position,

15  that lead the Company to continue to assuage any concerns voiced by the market over Velti's

16  growing inability to collect on its receivables.

17      Assuming Plaintiffs survived the Settling Defendants' anticipated motion(s) for summary

18  judgment after completion of discovery, presenting these complex issues to a jury posed a risk to

19  Plaintiffs' hopes for success at trial.  The risks of establishing liability posed by complex issues with

20  conflicting testimony and evidence would be exacerbated by the risks inherent in all shareholder

21  litigation, including the unpredictability of a lengthy and complex jury trial, the risk that witnesses

22  could be unavailable or jurors could react to the evidence in unforeseen ways, the risk that a jury

23  would find that some or all of the alleged misrepresentations were not material, and the risk that the

24  jury could find that the Settling Defendants believed in the appropriateness of their actions at the

25  time.

26

27

28

1

          **b.**      **The Risks of Proving Loss Causation and Damages**

2          Even if Plaintiffs were successful in establishing liability, there is no question that the

3  Settling Defendants would vigorously contest loss causation if the litigation continued as to them.

4  The United States Supreme Court's decision in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346

5  (2005), and subsequent cases interpreting *Dura*, have made proving loss causation, arguably, much

6  more difficult.  Two examples illustrate this point.  In *In re Oracle Corp. Sec. Litig.*, No. C 01-00988

7  SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009) *aff'd sub nom. In re Oracle Corp. Sec. Litig.*, 627

8  F.3d 376 (9th Cir. 2010), the court granted summary judgment in defendants' favor holding that

9  shareholder plaintiffs failed to present sufficient evidence to establish loss causation under Rule 10b-

10  5.  While the Ninth Circuit reversed the decision, the court in *In re Apollo Grp., Inc. Sec. Litig.*, No.

11  CV 04-2147-PHx-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), *rev'd*, No. 08-16971,

12  2010 U.S. App. LEXIS 14478 (9th Cir. June 23, 2010), on a motion for judgment as a matter of law,

13  overturned a jury verdict in favor of shareholders based on insufficient evidence presented at trial to

14  establish loss causation.[13]

15          The amount of damages incurred by Settlement Class Members also would have been hotly-

16  contested at trial.  Damages in securities class action cases are always difficult to prove. At trial, the

17  damage assessments of Plaintiffs' and the Settling Defendants' experts were sure to vary

18  substantially, and in the end, this crucial element at trial would have been reduced to a "battle of the

19  experts."  *In re Tyco Int'l, Ltd. Multidist. Litig.*, 535 F. Supp. 2d 249, 260-61 (D.N.H. 2007) ("even

20  if the jury agreed to impose liability, the trial would likely involve a confusing "battle of the experts"

21  over damages").[14]  The determination of damages is a complicated and uncertain process involving

22  conflicting expert testimony.  Expert testimony could rest on many subjective assumptions, any of

23

[13]    *See also In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla.
24  Apr. 25, 2011) (court granted defendants' judgment as a matter of law on the basis of loss causation,
    overturning jury verdict and award in plaintiff's favor); *Robbins v. Koger Props.*, 116 F.3d 1441
25  (11th Cir. 1997) (finding no loss causation and overturning $81 million jury verdict).

26  [14]    As discussed, *infra*, even if damages could ultimately be proved their collectability was in
    substantial doubt due to the Company's pending bankruptcy and that several defendants are foreign
27  nationals.

28

1   which could potentially be rejected by a jury as speculative or unreliable.  Plaintiffs would have

2   likely faced a motion *in limine* by the Settling Defendants to preclude Plaintiffs' damage expert's

3   testimony under the *Daubert* test and risked a decision that a valuation model might not be

4   admissible in evidence.  The reaction of a jury to battling expert testimony is highly unpredictable

5   and in such a battle, Lead Counsel recognize the possibility that a jury could be swayed by

6   convincing experts for the Settling Defendants, and find that there were no damages or only a

7   fraction of the amount of damages Plaintiffs contended.  *See, e.g.*, *In re Warner Commc'ns Sec.*

8   *Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) *aff'd,* 798 F.2d 35 (2d Cir. 1986). (approving

9   settlement where "it is virtually impossible to predict with any certainty which testimony would be

10  credited, and ultimately, which damages would be found to have been caused by actionable, rather

11  than the myriad nonactionable factors such as general market conditions").

12          While it is certain that Plaintiffs would present evidence at trial that the aggregate damages

13  exceed the amount of the proposed Partial Settlement, that assumes that most, if not all, of the

14  significant liability and damage issues would have been resolved in the Settlement Class's favor, and

15  under *Dura* and its progeny that would be unlikely, perhaps, highly unlikely.  Even if Plaintiffs

16  prevailed and obtained a substantial judgment after trial, there is little doubt that the Settling

17  Defendants would have appealed.  The appeals process would have likely spanned several years,

18  during which the Settlement Class would have received no distribution on any damage award.  In

19  addition, an appeal of any verdict would carry the risk of reversal, in which case the Settlement Class

20  would receive no recovery after having prevailed on the claims at trial.

21          Finally, even with a judgment in hand, there is no guarantee that a significant judgment

22  entered years down the road would be collectable – Velti has already filed for bankruptcy and is in

23  the process of liquidation.  Therefore, the amount of damages the Settlement Class would actually

24  recover if successful at trial is uncertain.

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO                                                                              - 13 -

1

2

               **c.**    **The Complexity, Expense, and Likely Duration of the**
                         **Litigation Justifies the Partial Settlement**

3

       Final approval is also supported by the expense and likely duration of continuing to litigate

4

the claims against the Settling Defendants. *Torrisi,* 8 F.3d at 1376 ("the cost, complexity and time

5

of fully litigating the case all suggest that this settlement was fair").  "In most situations, unless the

6

settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive

7

litigation with uncertain results." *Nat'l Rural*, 221 F.R.D. at 526.  *See also Officers for Justice*, 688

8

F.2d at 626.

9

       The fairness of the Partial Settlement is underscored when the obstacles the Settlement Class

10

faced in succeeding on the merits, as well as the expense and likely duration of the litigation, are

11

considered.  *See Churchill,* 361 F.3d at 576.  Although Plaintiffs believe that any arguments by the

12

Settling Defendants against liability lack merit, in any litigation the risk remains that defendants may

13

prevail on one or more of these arguments on a motion for judgment on the pleadings, summary

14

judgment, or ultimately at trial.[15]   The Partial Settlement will confer an immediate benefit to the

15

Settlement Class and eliminate the risk of continued litigation as to the Settling Defendants under

16

circumstances where a favorable outcome against such defendants is far from certain.  *See Nat'l*

17

*Rural*, 221 F.R.D. at 526-27 ("Given the length, complexity, and number of issues involved, it is

18

very possible that a jury may not have reached a unanimous verdict on all issues . . . [a]voiding such

19

a trial and the subsequent appeals in this complex case strong militates in favor of settlement rather

20

than further protected and uncertain litigation.").  *Mego,* 213 F.3d at 463 (affirming approval of

21

settlement because "[c]omplex litigation is inherently uncertain and Plaintiffs would have had much

22

difficulty proving scienter").

23

       Here, the expense and duration of motion practice on summary judgment, trial preparation,

24

the trial itself, post-trial motions, and any appeals would be significant and could match the

25

---

26

[15]      Even if Plaintiffs were to prevail at trial, risks to the Settlement Class would remain, including but not limited to the court overturning a jury verdict, or an appeal.  Further, that many of the Individual Defendants are not located within the United States presents substantial impediments to enforcement and collection of any judgment against them in foreign jurisdictions.

27

28

1    substantial time and money already spent.  Barring this Partial Settlement, there is no question that

2    this case would be litigated for years, taking a considerable amount of court time and costing

3    millions of additional dollars, with the possibility that the end result would be no better for the class,

4    and might even be worse.  This fact, combined with the Company's bankruptcy proceedings and the

5    diminishing availability of insurance funds all support Plaintiffs' decision to agree to the Partial

6    Settlement.

7                                    d.        The Risks of Collectability

8              Even if Plaintiffs were able to secure a judgment, the likelihood of collecting judgments from

9    both the Individual Defendants and the Company was low, at best.

10             First, before agreeing to the Partial Settlement, Plaintiffs demanded that the Settling

11   Defendants disclose the financial net worth of certain of the individual parties.  Without discussing

12   the specifics of their financial data – revealed only to further the possibility of settlement – Plaintiffs

13   may disclose that the amounts that could possibly be recovered from the individuals were *de*

14   *minimis*.  Weiser Decl. at 42.  Further still, given that several defendants reside outside the United

15   States, Lead Plaintiff faced a substantial – and likely multiyear – litigation to serve, prevail, and then

16   collect any judgment, however small, against these individuals.  As such, it was far more advisable

17   to seek a recovery solely from the insurance policies and to determine if a reasonable resolution of

18   the claims as to Velti and the Individual Defendants was possible.

19             As to the Settling Defendants, the Partial Settlement provides a substantial recovery of $9.5

20   million, versus the risk of no recovery, which is a real risk given both the U.S. Bankruptcy and the

21   Foreign Bankruptcy (as well as the fact that certain of the Settling Defendants are located abroad).

22   As such, the Company's insurance policy – whose available funds were diminishing by the day –was

23   the most viable method to compensate the Proposed Settlement Class and the Partial Settlement

24   protects a significant amount of the funds available to recover.  Further, even in cases where there

25   were a potential for a larger recovery down the road (not the case here), the value of the recovery

26   today often has more value than a recovery years down the road.

27

28

1    Thus, Plaintiffs knew that, even if they were entirely successful, even after trial and appeals,

2    they might recover substantially less from the Settling Defendants than the amount obtained in the

3    Partial Settlement.

4    **2.      Plaintiffs Have Sufficient Information to Determine the Propriety of the Partial Settlement**

5    While the Partial Settlement comes before the end of the discovery process and dispositive

6    proceedings, both the knowledge of Lead Counsel and the proceeding itself have reached a stage

7    where an intelligent evaluation of the Action and the propriety of the Partial Settlement could be

8    made. *See Officers for Justice*, 688 F.2d at 625, *Mego*, 213 F.3d at 458.  As discussed above and in

9    the Weiser Decl., Lead Counsel conducted an extensive investigation of the facts alleged, reviewed

10   and analyzed witness accounts of Velti's operations and finances given by former Velti employees

11   and other witnesses, engaged consultants with expertise in accounting and damages, and reviewed

12   and analyzed documents produced by Velti. Weiser Decl. at 6 and 45.  The Settling Parties also

13   participated in extensive settlement negotiations, including the Mediation, which involved an

14   extensive analysis of the Settlement Class's claims as well as the Settling Defendants' defenses.  As

15   a result, Lead Counsel was able to assess the strengths and weaknesses of the claims asserted and

16   resolve the claims against the Settling Defendants (and Released Defendants) on a highly favorable

17   basis for the Settlement Class.  *See Mego*, 213 F.3d at 459 (""formal discovery is not a necessary

18   ticket to the bargaining table" where the parties have sufficient information to make an informed

19   decision about settlement'") (citations omitted).

20   Plaintiffs, through Lead Counsel, are thoroughly familiar with the factual and legal issues in

21   this Action.  *See* ECF Dkt. Nos. 44, 65.  Even before the Mediation, counsel for Lead Plaintiff and

22   Counsel for the Settling Defendants had an extensive in-person meeting to discuss and explore the

23   facts and legal issues underlying the Action.  Weiser Decl. at 30.  Plaintiffs and the Settling

24   Defendants presented comprehensive submissions in connection with the Mediation. *Id*. at 33.  The

25   Settling Parties' respective positions on liability and damages were explored in great detail before

26   the Mediator, a former federal judge who routinely mediates complex securities fraud class actions.

27

28

1    *Id*. at 32.   In addition, Plaintiffs filed two complaints prior to entering the Partial Settlement,

2    including the Consolidated Complaint, after extensive investigation and research, and engaged in

3    substantial confirmatory discovery following an agreement in principal to settle.   As a result, Lead

4    Counsel is thoroughly familiar with the facts of the case and has had ample opportunity to assess the

5    strengths and weaknesses of the claims in which to appraise the sufficiency of the Partial Settlement.

6    *See e.g.*, *Athale v. Sinotech Energy Ltd.*, No. 11-cv-05831, slip op. (S.D.N.Y. Sept. 4, 2013)

7    (approving partial settlement of securities class action at parallel stage of proceedings).

8              **3.      The Recommendations of Experienced Counsel After**
                **Extensive Litigation and Arm's-Length Settlement**
9              **Negotiations Favor the Approval of the Partial Settlement**

10             As the Ninth Circuit observed, "[t]his circuit has long deferred to the private consensual

11   decision of the parties" and their counsel in settling an action.   *Rodriguez v. W. Publ'g Corp.*, 563

12   F.3d 948, 965 (9th Cir. 2009).   Courts have recognized that "'[g]reat weight is accorded to the

13   recommendation of counsel, who are most closely acquainted with the facts of the underlying

14   litigation.'"   *Nat'l Rural*, 221 F.R.D. at 528.   As this Court previously recognized, "'[t]he

15   recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'"

16   *Omnivision*, 559 F. Supp. 2d at 1043 (citations omitted).   Lead Counsel, having carefully considered

17   and evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims asserted

18   against the Settling Defendants, the likelihood of prevailing on these claims, the risk, expense, and

19   duration of continued litigation, and the likely appeals and subsequent proceedings necessary if

20   Plaintiffs did prevail against Settling Defendants at trial, have concluded that the Partial Settlement

21   is an excellent result for the Settlement Class.   Plaintiffs' Counsel have significant experience in

22   securities and other complex class action litigation and have negotiated numerous other substantial

23   class action settlements throughout the country.   *See* Weiser Decl. Exs. D-F.   Here, "[t]here is

24   nothing to counter the presumption that Lead Counsel's recommendation is reasonable."

25   *Omnivision*, 559 F. Supp. 2d at 1043.

26

27

28

1
2

**4.      The Partial Settlement Enjoys a Presumption of
Reasonableness Because It Is the Product of Arm's-Length
Settlement Negotiations**

3       The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-

4  collusive, negotiated resolution" in approving a class action settlement. *Rodriguez*, 563 F.3d at 965.

5  Indeed, there is an initial presumption of fairness for a proposed settlement that results from arm's-

6  length negotiations. *OmniVision*, 559 F. Supp. 2d at 1043; *In re Wireless Facilities, Inc. Sec. Litig.*

7  *II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008).  Here, as already discussed, *supra*, the Partial Settlement is

8  indisputably the product of arm's-length negotiations before a skilled and independent mediator and,

9  following an unsuccessful first meeting, took place over months.  *See Hicks v. Stanley*, No. 01 CIV

10  10071 (RJH), 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2007) ("A breakdown in settlement

11  negotiations can tend to display the negotiation's arms-length and non-collusive nature.").

12  Nonetheless, with the continued oversight of Judge Phillips, the Settling Parties were able to reach

13  an agreement in principle.  "[T]he assistance of an experienced mediator in the settlement process

14  confirms that the settlement is non-collusive."  *Satchell v. Fed. Express Corp.*, Nos. C03-2659 SI,

15  C03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *In re Immune Response Sec.*

16  *Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).  As a result, the Settling Parties were able to

17  negotiate a fair settlement, taking into account the costs and risks of litigation.

18       The settlement negotiations undertaken in connection with the Partial Settlement produced a

19  result that the Settling Parties believe to be within their respective best interests.  Indeed, the opinion

20  of well-informed and experienced counsel in favor of the Partial Settlement is also entitled to

21  significant weight.  *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal.

22  2007); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL 901, 1992 WL 226321,

23  at *2 (C.D. Cal. June 10, 1992) (counsel's opinion favoring settlement is a compelling factor); *Boyd*

24  *v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).[16] Lead Plaintiff and Lead Counsel consider

25
26
27

[16]      *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal.
July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ("the fact that the settlement agreement was
reached in arm's length negotiations, after relevant discovery [has] taken place create[s] a
presumption that the agreement is fair"); *Ellis*, 87 F.R.D. at 18.

28

1    their claims meritorious, but not without risk.  They have concluded that it is in the best interests of

2    the Settlement Class to settle with the Settling Defendants after considering the following factors: (1)

3    the immediate benefits provided for the Settlement Class; (2) the risks and uncertainties in predicting

4    the outcome of complex litigation, particularly given the current status of the U.S. Bankruptcy and

5    the Foreign Bankruptcy, the difficulties in serving certain of the Individual Defendants and certain

6    issues with the path for obtaining discovery overseas, particularly in Greece; (3) the expense and

7    length of time necessary to prosecute the Action through trial and appeal; and (4) the challenges

8    asserted by and available to the Settling Defendants that could substantially reduce the claimed

9    damages.

10          As a result of the negotiations and mediation, there can be no question that the Settlement is

11   the result of hard-fought, arm's-length negotiations and is "not the product of fraud or overreaching

12   by, or collusion between, the negotiating parties."   *Officers for Justice*, 688 F.2d at 625.

13   Accordingly, this factor, like the other factors discussed above, strongly favors approval of the

14   Partial Settlement.

15   **IV.     THE PLAN OF DISTRIBUTION IS FAIR AND REASONABLE**

16          Assessment of the Plan of Distribution pursuant to Rule 23 is governed by the same

17   standards of review applicable to the Partial Settlement as a whole – the plan must be fair and

18   reasonable.  *See Class Plaintiffs*, 955 F.2d at 1284.  District courts enjoy "broad supervisory powers

19   over the administration of class-action settlements to allocate the proceeds among the claiming class

20   members . . . equitably."  *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken

21   Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  An allocation formula need only

22   have a reasonable, rational basis, particularly if recommended by "experienced and competent" class

23   counsel.  *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993); *In re Gulf Oil/Cities Serv. Tender

24   Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).  *See also In re Oracle Sec. Litig.*, No. C-90-0931-

25   VRW, 1994 WL 502054, at *1 (N.D. Cal. Jun. 18, 1994) (reasonable to allocate more to class

26   members with stronger claims).

27

28

1    The proposed Plan of Distribution was prepared by Lead Counsel in consultation with its

2    consultants and its proposed settlement administrator, Strategic Claims Services, who found it to be

3    fair and equitable.  *See* ECF Dkt. No. 136-2.[17]  The Plan of Distribution provides an equitable basis

4    to allocate the Net Settlement Fund among all Settlement Class Members who submit an acceptable

5    and timely Proof of Claim and Release.  The Plan of Distribution will result in a fair distribution and

6    should be approved.  Weiser Decl. at 51-54.

7    **V.      CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE**

8    **A.      The Proposed Settlement Class Meets the Prerequisites for Class
            Certification Under Rule 23**

9

10    Class actions may be certified for the purpose of settlement only.  *Hanlon*, 150 F.3d 1019.

11    Rule 23(a) sets forth the following four prerequisites to class certification: (i) numerosity, (ii)

12    commonality, (iii) typicality, and (iv) adequacy of representation.  In addition, the class must meet

13    one of the three requirements of Rule 23(b).  *See* Fed. R. Civ. P. 23; *In re UTStarcom, Inc. Sec.

14    Litig.*, No. C 04-04908 JW, 2010 WL 1945737, at * 3 (N.D. Cal. May 12, 2010) (citing *Hanlon*, 150

15    F.3d at 1019).  The Settlement Class is defined as "all Persons . . . who purchased or otherwise

16    acquired the Shares of Velti between January 27, 2011 and August 20, 2013, inclusive."

17    Courts routinely endorse the use of the class action device to resolve claims brought pursuant

18    to the federal securities laws.  *See, e.g.*, *Hodges v. Akeena Solar, Inc.*, 274 F.R.D 259, 266 (N.D.

19    Cal. 2011); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009). "[C]lass

20    actions commonly arise in securities fraud cases as the claims of separate investors are often too

---

21    [17]      Indeed, the Settling Parties discussed at length Settling Defendants' loss causation challenges

22    with respect to the alleged corrective disclosures alleged in the Consolidated Complaint.  The $9.5
     million proposed Partial Settlement represents a substantial percentage of recovery that ranges from

23    3% of damages to 28% depending on which of the corrective disclosures and claims Plaintiffs might
     prevail.  Such percentages of recoveries are well above the median percentage of investor losses

24    recovered recovery level in securities class action settlements.  *See OmniVision*, 559 F. Supp. 2d at
     1042 (approving 6% recovery of maximum damages) (citing *In re Heritage Bond Litig.*, No.

25    02ML1475, 2005 WL 1594403, at *8-*9 (C.D. Cal. June 10, 2005) (average recovery between 2% to
     3% of maximum damages)).  *See also Officers for Justice*, 688 F.2d at 628 ("It is well-settled law

26    that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render
     the settlement inadequate or unfair").  *See also Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009

27    WL 248367, at *3 (N.D. Cal. Feb. 2, 2009) ("The immediacy and certainty of the settlement award
     justifies a recovery smaller than the Class Members could seek in the case").

28

1    small to justify individual lawsuits, making class actions the only efficient deterrent against

2    securities fraud.  Accordingly, the Ninth Circuit and courts in this district hold a liberal view of class

3    actions in securities litigation."  *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal.

4    1991) (citations omitted); *see also In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1350 (N.D.

5    Cal.  1994) (same); *Cooper*, 254 F.R.D. at 642  ("The availability of the class action to redress such

6    frauds has been consistently upheld, in large part because of the substantial role that the deterrent

7    effect of class actions plays in accomplishing the objectives of the securities laws.") (quoting *Blackie*

8    *v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975)).  This Action is no exception, and Lead Plaintiff

9    submits that the proposed Settlement Class satisfies each of the requirements of Rules 23(a) and

10   23(b)(3).

11                     **1.        Numerosity**

12          Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is

13   impracticable.  The Ninth Circuit has stated that "'impracticability' does not mean 'impossibility,'

14   but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs*

15   *Alpine Estates, Inc*., 329 F. 2d 909, 913-14 (9th Cir. 1964) (citation omitted).   Indeed, classes

16   consisting of 25 members have been held to be large enough to justify certification.  *See Perez-*

17   *Funez v. Dist. Director, Immigration & Naturalization Serv*., 611 F. Supp. 990, 995 (C.D. Cal.

18   1984); s*ee also Welling v. Alexy*, 155 F.R.D. 654, 656 (N.D. Cal. 1994) (no set number cut-off for

19   numerosity).

20          Here, Velti's shares traded on the NASDAQ, with more than 65 million shares of common

21   stock outstanding during the Class Period.  Accordingly, the proposed Settlement Class consists of

22   thousands of investors who purchased Velti shares during the Class Period.  A class of this size is

23   sufficiently numerous to make individual joinder impracticable.  *See UTStarcom*, 2010 WL

24   1945737, at *4; *Yamner v. Boich*, No. C-92 - 20597 RPA, 1994 WL 514035, at *3 (N.D. Cal. Sept.

25   15, 1994).  Numerosity is satisfied.

26

27

28

### 2.       Commonality

Rule 23(a)(2) is satisfied where the proposed class representatives share at least one question of fact or law with the claims of the prospective class.  *Wehner v. Syntex Corp.*, 715 F.R.D. 641, 644 (N.D. Cal. 1987).  Further, commonality exists even if there are varying fact situations among individual members of the class so long as the claims of the plaintiffs and other class members are based on the same legal or remedial theory.  *Blackie*, 524 F. 2d at 902.

The common questions of fact and law include: (i) whether Defendants violated the federal securities laws; (ii) whether Defendants misstated and/or omitted to state material facts in public statements and SEC filings; (iii) whether Defendants participated directly or indirectly in the misconduct; (iv) whether Defendants knew or recklessly disregarded that their statements were false and misleading; (v) whether the price of Velti shares was artificially inflated; and (vi) the appropriate measure of damages.[18]  Securities actions containing common questions such as the ones listed above repeatedly have been held to be prime candidates for class certification.  Additionally, because the core complaint of all Settlement Class Members is that they purchased shares of Velti shares at artificially inflated prices, the commonality requirement of Rule 23(a)(2) is satisfied.

### 3.       Typicality

The typicality requirement of Rule 23(a)(3) is satisfied when the claims or defenses of the party or parties representing the class are typical of the claims or defenses of the other class members.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (common-issues test readily met in securities cases); *Crossen v. CV Therapeutics*, No. C 03-03709 SI, 2005 WL 1910928, at *4 (N.D. Cal. Aug. 10, 2005) (same) Differences in the amount of damage, the size or manner of

---

[18]      *See also UTStarcom*, 2010 WL 1945737, at *4 (finding common questions of law and fact as to whether "Defendants engaged in a fraudulent scheme and omitted or misrepresented material facts," whether the "publicly traded securities were artificially inflated," and whether "Defendants' . . . omissions caused class members to suffer economic losses").  Here, there are common questions of law and fact because Defendants' alleged misconduct affected all Settlement Class Members in the same manner; *i.e.*, Defendants' false and misleading statements and omissions artificially inflated the price of Velti's Securities.  *See, e.g., In re VeriSign, Inc. Sec. Litig.*, No. C 02-02270-JW, 2005 U.S. Dist. LEXIS 10438, at *32 (N.D. Cal. Jan. 13, 2005) ("Here, the issues common to the class – namely, the nature and extent of Defendants' alleged misrepresentations and the like – are predominant."); *In re Emulex Corp., Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal.  2002).

1   purchase, the nature of the purchaser, and the date of purchase are insufficient to defeat class

2   certification.  *See Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 606 (N.D. Cal. 1991).  *See also*

3   *West*, 2006 WL 1652598, at *5.

4        Here, because the claims of Plaintiffs arise from the same events or course of conduct that

5   give rise to claims of other Settlement Class Members, and the claims asserted are based on the same

6   facts and legal theories and thus satisfy the typicality requirement.  *See UTStarcom*, 2010 WL

7   1945737, at *5.  That is, Plaintiffs, like the other Settlement Class Members, purchased Velti shares

8   in the same manner and those shares were all inflated based on the same conduct by Defendants.

9   *See, e.g.*, *Emulex*, 210 F.R.D. at 287.

10       Finally, Plaintiffs are not subject to any unique defenses that could render them atypical.

11  Therefore, Lead Counsel submits that this Court should find that Plaintiffs' claims are typical of the

12  claims of the Settlement Class.  *See Akeena Solar*, 274 F.R.D. at 266-67; *Cooper*, 254 F.R.D. at 635-

13  36.

14              **4.      Adequacy**

15       The representative parties must satisfy Rule 23(a)'s adequacy requirement by showing that

16  they will fairly and adequately protect the interests of the Settlement Class.  The proposed class

17  representative must be free of interests that are antagonistic to the other members of the class, and

18  counsel representing the class must be qualified, experienced and capable of conducting the

19  litigation.  *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F. 2d 507, 512 (9th Cir. 1978); *Hanlon*,

20  150 F.3d at 1020.

21       Plaintiffs, like all Settlement Class Members, purchased Velti shares at artificially inflated

22  prices as a result of Defendants' alleged materially false and misleading statements and/or

23  omissions.  Further, Plaintiffs have retained counsel highly experienced in securities class action

24  litigation and who have successfully prosecuted many securities and other complex class actions

25  throughout the United States.[19]  Thus, Plaintiffs are adequate representatives of the Settlement Class,

26

27  ---
    [19]      *See* ECF Dkt. No. 44.

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO                                                                      - 23

1  and its counsel are qualified, experienced and capable of prosecuting this Action, in satisfaction of

2  Rule 23(a)(4).

3        **5.     Common Questions of Law Predominate and a Class Action Is
                   the Superior Method of Adjudication**

4

5        The Partial Settlement also satisfies Rule 23(b)(3), which requires that the proposed class

6  representatives establish that common questions of law or fact predominate over individual

7  questions, and that a class action is superior to other available methods of adjudication. *See Erica P.*

8  *John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011) (common questions must

9  predominate); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 525 (N.D. Cal. 2009); *Vathana v.*

10  *EverBank*, No. C 09-02338 RS, 2010 WL 934219, at *2 (N.D. Cal. Mar. 15, 2010).

11        Common questions of law and fact predominate and a class action is the superior method

12  available to fairly and efficiently litigate this securities action.[20]  The superiority of class actions in

13  large securities cases is well recognized.  *See Amchem Prods.*, 521 U.S. at 625 (finding common

14  questions predominated in securities class action certified for settlement).

15        As discussed above, there are a number of common questions of law and fact that would

16  warrant class certification.  These questions clearly predominate over individual questions because

17  Defendants' alleged conduct affected all Settlement Class Members in the same manner. *See, e.g.*,

18  *Cooper*, 254 F.R.D. at 63 ("The common questions of whether misrepresentations were made and

19  whether Defendants had the requisite scienter predominate over any individual questions of reliance

20  and damages."); *Emulex*, 210 F.R.D. at 721 ("The predominant questions of law or fact at issue in

21  this case are the alleged misrepresentation Defendants made during the Class Period and are

22  common to the class.").

23        All requirements of Rule 23(a) and (b) are satisfied, and there are no issues that would

24  prevent the Court from certifying this Settlement Class for settlement purposes, appointing Plaintiffs

25  _____

26  [20]    When certifying a settlement class, the "superiority" element under Rule 23(b)(3) may be
   relaxed as the Court need not consider the difficulties of future litigation or trial.  *See, e.g.*,
   *Ybarrondo v. NCO Fin. Sys., Inc.*, No. 05cv 2057-L(JMA), 2009 WL 3612864, at *7 n.3 (S.D. Cal.
27  Oct. 28, 2009); *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 477 (E.D. Cal. 2010).

28

1   as the Class Representatives, and appointing Lead Counsel as Class Counsel for the Settlement

2   Class.  *See, e.g.*, *Wahl v. Am. Sec. Ins. Co.*, No. C08-00555-RS, 2011 U.S. Dist. LEXIS 59559, at

3   *5-*6 (N.D. Cal. Jun. 2, 2011) (class certified for settlement purposes); *Gittin v. KCI USA, Inc*., No.

4   09-CV-0583 RS, 2011 WL 1467360, at *19 (N.D. Cal. Apr. 12, 2011) (same).

5   **VI.    NOTICE AS ORDERED BY THE COURT HAS BEEN PROVIDED TO
        THE SETTLEMENT CLASS**

6

7          The Preliminary Approval Order directed Notices to the Settlement Class by mail and

8   publication.  ECF Dkt. No. 147.  The Court's method of Notice satisfies Fed. R. Civ. P. 23(c)(2)(B)

9   and due process.  *See e.g.*, *Wireless Facilities*, 253 F.R.D. 607; *In re Portal Software, Inc. Sec. Litig.*,

10  No. C 03 5138 VRW, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (holding that "notice by

11  mail and publication is the 'best notice practicable under the circumstances,' as mandated by FRCP

12  23(c)(2)(B)").   Pursuant to the Preliminary Approval Order, mailing of 43,110 Notices was

13  completed on September 3, 2014 and publication in the national edition of *Investor's Business Daily*

14  as well as over the *Business Wire* on September 15, 2014.  Weiser Decl. at 50-51.

15  **VII.   CONCLUSION**

16         Based upon the foregoing reasons, Plaintiffs respectfully request that the Court: (1) certify

17  the Settlement Class; (2) grant final approval to the Partial Settlement; (3) grant final approval to the

18  Plan of Distribution; and (4) find the Notice Procedures employed herein meet due process

19  requirements.

    DATED:  November 6, 2014              Respectfully submitted,
20
                                          THE WEISER LAW FIRM, P.C.
21                                        KATHLEEN A. HERKENHOFF (SBN 168562)

22                                        _____
                                              s/ KATHLEEN A. HERKENHOFF
23                                            KATHLEEN A. HERKENHOFF

24                                        12707 High Bluff Drive, Suite 200
                                          San Diego, CA 92130
25                                        Telephone:  (858) 794-1441
                                          Facsimile:  (858) 794-1450
26                                        kah@weiserlawfirm.com

27

28

1

2　　　　　　　　　　　　　THE WEISER LAW FIRM, P.C.
　　　　　　　　　　　　　ROBERT B. WEISER
3　　　　　　　　　　　　　(admitted *pro hac vice*)
　　　　　　　　　　　　　CHRISTOPHER L. NELSON
　　　　　　　　　　　　　(admitted *pro hac vice*)
4　　　　　　　　　　　　　JAMES M. FICARO
　　　　　　　　　　　　　22 Cassatt Avenue, First Floor
5　　　　　　　　　　　　　Berwyn, PA 19312
　　　　　　　　　　　　　Telephone: (610) 225-2677
6　　　　　　　　　　　　　Facsimile:  (610) 408-8062
　　　　　　　　　　　　　rw@weiserlawfirm.com
7　　　　　　　　　　　　　jmp@weiserlawfirm.com
　　　　　　　　　　　　　cln@weiserlawfirm.com
8　　　　　　　　　　　　　jmf@weiserlawfirm.com

9　　　　　　　　　　　　　Lead Counsel for Plaintiffs and Counsel for Lead
　　　　　　　　　　　　　Plaintiff Bobby Yadegar/Ygar Capital LLC
10

11　　　　　　　　　　　　BERMAN DEVALERIO
　　　　　　　　　　　　　JOSEPH J. TABACCO, JR. (SBN 75284)
12　　　　　　　　　　　　NICOLE LAVALLEE (SBN 165755)
　　　　　　　　　　　　　One California Street, Suite 900
13　　　　　　　　　　　　San Francisco, CA 94111
　　　　　　　　　　　　　Telephone: (415) 433-3200
14　　　　　　　　　　　　Facsimile:  (415) 433-6382
　　　　　　　　　　　　　jtabacco@bermandevalerio.com
15　　　　　　　　　　　　nlavallee@bermandevalerio.com

16　　　　　　　　　　　　Attorneys for Plaintiff St. Paul Teachers'
　　　　　　　　　　　　　Retirement Fund Association
17

18　　　　　　　　　　　　LABATON SUCHAROW LLP
　　　　　　　　　　　　　JONATHAN GARDNER
19　　　　　　　　　　　　(admitted *pro hac vice*)
　　　　　　　　　　　　　140 Broadway, 34th Floor
20　　　　　　　　　　　　New York, NY 10005
　　　　　　　　　　　　　Telephone: (212) 907-0700
21　　　　　　　　　　　　Facsimile: (212) 818-0470
　　　　　　　　　　　　　jgardner@labaton.com

22　　　　　　　　　　　　Attorneys for Plaintiffs Newport News
　　　　　　　　　　　　　Employees' Retirement Fund and Oklahoma
23　　　　　　　　　　　　Firefighters Pension and Retirement System

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on November 6, 2014, I authorized the electronic filing of the foregoing

3

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to

4

the e-mail addresses denoted on the attached Electronic Mail Notice List.

5

I certify under penalty of perjury under the laws of the United States of America that the

6

foregoing is true and correct.  Executed on November 6, 2014.

7

8

  s/ KATHLEEN A. HERKENHOFF
KATHLEEN A. HERKENHOFF

9

10

THE WEISER LAW FIRM, P.C.
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone:  (858) 794-1441
Facsimile:  (858) 794-1450

11

12

Email:  kah@weiserlawfirm.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO

- 27 -

## Mailing Information for a Case 3:13-cv-03889-WHO Rieckborn v. Velti plc et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Peter E. Borkon**
  peterb@hbsslaw.com

- **Donald A. Broggi**
  dbroi@scott-scott.com

- **Joseph Daniel Cohen**
  jcohen@scott-scott.com

- **Hal Davis Cunningham**
  hcunningham@scott-scott.com,efile@scott-scott.com

- **Brock Dahl**
  bdahl@wsgr.com

- **Patrick Norton Downes**
  pdownes@loeb.com,ptaylor@loeb.com

- **Cynthia A. Dy**
  cdy@wsgr.com

- **Boris Feldman**
  bbahns@wsgr.com

- **Christine M. Fox**
  cfox@labaton.com,lmehringer@labaton.com,electroniccasefilings@labaton.com,fmalonzo@labaton.com

- **Jonathan Gardner**
  jgardner@labaton.com,jjohnson@labaton.com,cvillegas@labaton.com,tdubbs@labaton.com,lmehringer@labaton.com,acoquin@labaton.com,fmalonzo@labaton.com,acarpio@labaton.com

- **Lionel Z. Glancy**
  info@glancylaw.com,lboyarsky@glancylaw.com,lglancy@glancylaw.com

- **Michael M. Goldberg**
  mmgoldberg@glancylaw.com,csadler@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.com

- **Joseph P. Guglielmo**
  jguglielmo@scott-scott.com

- **Christopher T. Heffelfinger**
  cheffelfinger@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Kathleen Ann Herkenhoff**
  kah@weiserlawfirm.com,jmf@weiserlawfirm.com,hl@weiserlawfirm.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,peterb@hbsslaw.com,pashad@hbsslaw.com,sf_filings@hbsslaw.com

- **Nicole Catherine Lavallee**
  nlavallee@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Robert Alan Meyer**
  rmeyer@loeb.com,ptaylor@loeb.com

- **Donald Anthony Miller**
  dmiller@loeb.com,vmanssourian@loeb.com

- **Matthew C Moehlman**
  mmoehlman@labaton.com

- **Christopher Leigh Nelson**
  cln@weiserlawfirm.com

- **John D. Pernick**
  john.pernick@bingham.com

- **Anthony David Phillips**
  aphillips@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Joseph Mark Profy**
  jmp@weiserlawfirm.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,mmgoldberg@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Mark Punzalan**
  markp@punzalanlaw.com,office@punzalanlaw.com

- **Brian J. Robbins**
  notice@robbinsarroyo.com

- **Casey Edwards Sadler**
  csadler@glancylaw.com

- **Charlene Sachi Shimada**
  charlene.shimada@bingham.com

- **Evan Jason Smith**
  esmith@brodsky-smith.com

- **Michael Walter Stocker**
  mstocker@labaton.com,drogers@labaton.com,ElectronicCaseFiling@labaton.com,lmehringer@labaton.com

- **Jon A Tostrud**
  jtostrud@tostrudlaw.com,acarter@tostrudlaw.com

- **Diane Marie Walters**
  dwalters@wsgr.com,vshreve@wsgr.com

- **Lucy Han Wang**
  lucy.wang@bingham.com,andrew.obach@bingham.com

- **Robert Brian Weiser**
  rw@weiserlawfirm.com

- **Wendy Hope Zoberman**
  wzoberman@bermandevalerio.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)