THE WEISER LAW FIRM, P.C.
KATHLEEN A. HERKENHOFF (168562)
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone:  (858) 794-1441
Facsimile:  (858) 794-1450
kah@weiserlawfirm.com

Lead Counsel for Plaintiffs and
Counsel for Lead Plaintiff Bobby Yadegar/Ygar Capital LLC

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re VELTI PLC SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Master File No. 3:13-cv-03889-WHO<br><br>(Consolidated with Case Nos.<br>3:13-cv-03954-WHO<br>3:13-cv-04140-WHO<br>3:13-cv-04606-WHO<br>3:14-cv-00372-WHO)<br><br><u>CLASS ACTION</u><br><br>NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:        January 14, 2015<br>TIME:        2:00 p.m.<br>CTRM:       2, 17th Floor<br>JUDGE:      The Hon. William H. Orrick<br><br>Date Action Filed: 8/22/13 |

1

**TABLE OF CONTENTS**

2

**Page**

3
NOTICE OF MOTION AND MOTION TO DISMISS ..................................................1

4
ISSUES TO BE DECIDED ...............................................................................1

5
MEMORANDUM OF POINTS AND AUTHORITIES .................................................2

6
I.      INTRODUCTION .................................................................................2

7
II.     THE FEE PORTION OF THE FEE AND EXPENSE AWARD COMPLIES
        WITH APPLICABLE LAW, IS REASONABLE, AND SHOULD BE
8       GRANTED FINAL APPROVAL.................................................................4

9       A.      The Legal Standards Governing the Award of Attorneys' Fees in Common
                Fund Cases Support the Requested Fee and Expense Award.................................4
10
                1.      A Reasonable Percentage of the Settlement Fund Recovered Is the
11                      Appropriate Method for Awarding Attorneys' Fees in Common
                        Fund Cases.................................................................................4
12
        B.      A Percentage Fee of 25% of the Settlement Fund Created By The Partial
13              Settlement Is Reasonable in This Action ..............................................7

14              1.      The Result Achieved Via the Partial Settlement.........................................7

15              2.      The Risks of the Litigation of the Action and the Novelty and
                        Difficulty of the Questions Presented ...........................................10
16
                3.      The Skill Required and the Quality and Efficiency of the Work..............14
17
                4.      The Contingent Fee Nature of the Action and the Financial Burden
18                      Carried by Plaintiffs' Counsel .................................................15

19              5.      A 25% Fee Award Is Consistent With the Market Rate in Similar
                        Complex, Contingent Litigation .................................................16
20
        C.      Reaction of the Settlement Class Supports Approval of the Fee and
21              Expense Award .........................................................................17

22      D.      The Requested Fee and Expense Award Is Reasonable Under a Lodestar
                Cross-Check Analysis .................................................................18
23
        E.      Class Counsel's Hourly Rates and Time Expended Are Reasonable ...................19
24
III.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE
25      NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED .................20

26
IV.     CONCLUSION.................................................................................22

27

28

# TABLE OF AUTHORITIES

Page

**CASES**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) .................................................................3

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ...............................................................16

*Armstrong v. Brown*,
   No. C94-2307, 2011 WL 3443922 (N.D. Cal. Aug. 8, 2011)................20

*Backman v. Polaroid Corp.*,
   910 F.2d 10 (1st Cir. 1990)....................................................................16

*Barbosa v. Cargill Meat Solutions Corp.*,
   No. 1:11-cv-00275-SKO, 2013 WL 3340939 (E.D. Cal. July 2, 2013) ...............21

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ................7, 8

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir. 1979).................................................................16

*Blum v. Stenson*,
   465 U.S. 886 (1984)................................................................................5, 18

*Brown v. Phillips Petroleum Co.*,
   838 F.2d 451 (10th Cir. 1988) ................................................................5

*Camden I Condo. Ass'n v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ................................................................5

*Cent. R.R. & Banking Co. v. Pettus*,
   113 U.S. 116 (1885).................................................................................5

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ..................................................................10

*City of Westland Police and Fire Ret. Sys. v. Sonic Solutions*,
   No. C 07-05111-CW (N.D. Cal. Apr. 8, 2010) (ORDER) ......................17

*Clark v. Lomas & Nettleton Fin. Corp.*,
   79 F.R.D. 641 (N.D. Tex. 1978),
   *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980) ........................13

1

2                                                                                          **Page**

3

*Dura Pharms., Inc. v. Broudo*,
4        544 U.S. 336 (2005)..................................................................................11

5
*Faigman v. AT&T Mobility LLC*,
6        No. C06-04622 MHP, 2011 WL 672648 (N.D. Cal. Feb. 16, 2011).......................................19

7
*Fernandez v. Victoria Secret Stores, LLC*,
        No. CV-06-04149 MMM, 2008 U.S. Dist. LEXIS 123546 (C.D. Cal. July 21, 2008) ..........18
8

*Gates v. Deukmejian*,
9        987 F.2d 1392 (9th Cir. 1992) ..........................................................19

10
*Goldberger v. Integrated Res., Inc.*,
11       209 F.3d 43 (2d Cir. 2000)..............................................................5

12   *Gottlieb v. Barry*,
         43 F.3d 474 (10th Cir. 1994) ..........................................................5

13
*Harman v. Lyphomed, Inc.*,
14       945 F.2d 969 (7th Cir. 1991) ..........................................................5

15   *Harris v. Marhoefer*,
         24 F.3d 16 (9th Cir. 1994) ............................................................20
16

*HCL Partners Ltd. P'ship v. Leap Wireless Intern., Inc.*,
17       07 CV 2245 MMA, 2010 WL 4156342 (S.D.Cal., Oct. 15, 2010).........................................15

18
*Hensley v. Eckerhart*,
19       461 U.S. 424 (1983)..................................................................7

20   *In re Apollo Grp., Inc. Sec. Litig.*,
         No. CV 04-2147-PHx-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), *rev'd*,
21       No. 08-16971, 2010 U.S. App. LEXIS 14478 (9th Cir. June 23, 2010)..........................11, 12

22   *In re Apple Computer Sec. Litig.*,
         No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991)...............16
23

24   *In re BankAtlantic Bancorp, Inc.*,
         No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)....................................12, 16
25

*In re Bluetooth Headset Prods. Liab. Litig.*,
26       654 F.3d 935 (9th Cir. 2011) ..........................................................7

27   *In re Charles Schwab Corp. Sec. Litig.*,
         No. C 08-01510 WHA, 2011 U.S. Dist. LEXIS 44547 (N.D. Cal. April 19, 2011)...............19
28

**Page**

*In re Equity Funding Corp. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977) ...................................................................14, 15

*In re Gilead Sciences Sec. Litig.*,
No. C-03-4999-SI (N.D. Cal. Nov. 5, 2010) (ORDER) ..........................................16

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
No. 02-ML-1475-DT, 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) .......10, 13, 17

*In re Ikon Office Solutions, Inc.*,
194 F.R.D. 166 (E.D. Pa. 2000) ...........................................................................13

*In re Impax Labs., Inc. Sec. Litig.*,
No. C-04-4802-JW (N.D. Cal. May 12, 2009) (ORDER) ........................................17

*In re Infineon Techs. AG Sec. Litig.*,
No. C-04-4156-JW (N.D. Cal. Nov. 2, 2011) (ORDER)....................................16, 17

*In re King Res. Co. Sec. Litig.*,
420 F. Supp. 610 (D. Colo. 1976)............................................................................7

*In re Nuvelo, Inc. Sec. Litig.*,
No. C 07-0405 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011)........................16

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) .................................................7, 10, 15, 18

*In re Oracle Corp. Sec. Litig.*,
No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009)........................11

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) .....................................................................14

*In re Rite Aid Corp. Sec. Litig.*,
269 F. Supp. 2d 603 (E.D. Pa. 2003) *vacated and remanded*,
*as amended (Feb. 25, 2005)* 396 F.3d 294 (3d Cir. 2005)......................................19

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)............................................................................18, 19

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 393 (S.D.N.Y. 1999)................................................................18, 19

*In re Tyco Int'l, Ltd.*,
535 F. Supp. 2d 249 (D.N.H. 2007)........................................................................11

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:13-cv-03889-WHO

- iv

**Page**

*In re U.S. Aggregates, Inc. Sec. Litig.*,
  No. C-01-1688-CW (N.D. Cal. Apr. 6, 2006) (ORDER) .......................................17

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 0165 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ................................13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ......................................................... *passim*

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005)..........................................................8, 16, 19

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ...........................................................................6

*Larsen v. Trader Joe's Co.*,
  Case No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014)..................16, 17

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)......................................................................14

*Miller v. Woodmoor Corp.*,
  No. 74-F-988, 1978 U.S. Dist. LEXIS 15234 (D. Colo. Sept. 28, 1978) ...............................13

*Nguyen v. Radient Pharms. Corp.*,
  No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293
  (C.D. Cal. May 6, 2014) .........................................................................12, 14

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) .......................................................................5, 7

*Perlmutter v. Intuitive Surgical, Inc.*,
  No. 10–CV–03451–LHK, 2011 WL 566814 (N.D.Cal. Feb. 15, 2011)................................12

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) ..........................................................................7

*Redwen v. Sino Clean Energy, Inc.*,
  No. CV 11-3936, 2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013) ...................20, 21

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002) ............................................................................9

*Robbins v. Koger Props.*,
  116 F.3d 1441 (11th Cir. 1997) ....................................................................12, 15

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE
AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:13-cv-
03889-WHO

- v -

**Page**

*Schwartz v. Sec'y of Health & Human Servs.*,
    73 F.3d 895 (9th Cir. 1995) ...................................................................................................19

*Six Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ...................................................................................................5

*Suzuki v. Hitachi Global Storage Techs., Inc.*,
    No. C06-7289, 2010 WL 956896 (N.D. Cal. Mar. 12, 2010)...................................................19

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) .....................................................................................................5

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ....................................................................................................5, 7

*Trustees v. Greenough*,
    105 U.S. 527 (1882)....................................................................................................................5

*Twinde v. Threshold Pharms., Inc., et al.*,
    No. 4:07-cv-04972-CW (N.D. Cal. Apr. 16, 2010) (ORDER)................................................17

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977) .....................................................................................................4

*Vincent v. Reser*,
    No. 11-03572 (CRB), 2013 WL 621865 (N.D. Cal. Feb. 19, 2013) .......................................20

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ......................................................................................... *passim*

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) *aff'd,* 798 F.2d 35 (2d Cir. 1986). ....................................12

*Wren v. RGIS Inventory Specialists*,
    No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .......................................19

*Wyrick v. Redling, et al.*,
    Civ. No. 11-5036 (E.D. Pa. Dec. 12, 2012) (ORDER)...........................................................20

*Young v. Polo Retail, LLC*,
    No. C-02-4546 VRW, 2007 U.S. Dist. LEXIS 27269 (N.D. Cal. Mar. 28, 2007) .................18

1

2                                                                                          **Page**

3

**STATUTES, RULES AND REGULATIONS**

4

Federal Rules of Civil Procedure

5       Rule 1 ...................................................................................................................8

6       Rule 10b-5.............................................................................................................11

7    **SECONDARY AUTHORITIES**

8    Charles Silver, *Due Process and the Lodestar Method: You Can't Get There from Here*,
        (June 2000) 74 Tul. L. Rev. 1809 ........................................................................6

9

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic*

10      *Theory for Private Enforcement of Law Through Class and Derivative Actions*,

11      86 Colum. L. Rev. 669 (1986) ..............................................................................7

12   Richard Posner, *Economic Analysis of Law* (3d ed. 1986)
        §21.9...................................................................................................................15

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**NOTICE OF MOTION AND MOTION TO DISMISS**

2

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

3

        PLEASE TAKE NOTICE that on January 14, 2015, at 2:00 p.m., or as soon thereafter as the

4

matter may be heard, in connection with seeking final approval (the "Final Approval Motion") of the

5

May 23, 2014 Stipulation and Agreement of Partial Settlement (the "Stipulation" or the "Settlement

6

Agreement")[1], Plaintiffs' Counsel will, and hereby do, move (the "Fee and Expense Award Motion")

7

the Honorable William H. Orrick, located in Courtroom 2, 17th Floor, 450 Golden Gate Avenue, San

8

Francisco, California 94101 for an order awarding Plaintiffs' Counsel's Fee and Expense Award of

9

25% of the Settlement Fund plus expenses incurred in the prosecution of the above-captioned action

10

(the "Action").  This Fee and Expense Award Motion is based upon the attached Memorandum of

11

Points and Authorities, the Weiser Decl., the  Declaration of Christopher L. Nelson in Support of

12

Petition for Attorney's Fees and Reimbursement of Expenses of Behalf of The Weiser Law Firm,

13

P.C., the Declaration of Jonathan Gardner in Support of Petition for Attorney's Fees and

14

Reimbursement of Expenses of Behalf of Labaton Sucharow LLP, the Declaration of Nicole

15

Lavallee in Support of Petition for Attorney's Fees and Reimbursement of Expenses of Behalf of

16

Berman Devalerio and all other pleadings and matters of record, and such additional evidence and

17

testimony as may be presented before or at the Settlement Hearing.

18

**ISSUES TO BE DECIDED**

19

        1.     Whether Plaintiffs' Counsel are entitled to the Fee and Expense Award in view of the

20

substantial benefits to the Settlement Class via the $9.5 million Partial Settlement (which includes

21

22

[1]      Unless otherwise defined herein, all capitalized terms have the same meaning as set forth in the Stipulation.  A true and correct copy of the Stipulation is attached as Exhibit A to the Declaration

23

of Robert B. Weiser in Support of Plaintiffs' Motion for Final Approval of Partial Settlement (the "Weiser Decl.").  Citations to the paragraphs of the Weiser Decl. appear in the following format:

24

"Weiser Decl. at __."  In the interest of brevity, Plaintiffs incorporate herein the factual and procedural background of the Action, as set forth in the concurrently filed Final Approval Motion

25

and in the Stipulation (including, but not limited to, the "Statement of Facts and Procedural History" section of the Final Approval Motion).  All cites to "ECF Dkt. No. __" are to the docket in Master

26

File No. 3:13-cv-03889-WHO.   All citations to "¶__" are to paragraphs of the Amended Consolidated Complaint for Violations of the Securities Act of 1933 and the Securities and

27

Exchange Act of 1934 (the "Amended Consolidated Complaint"), ECF Dkt. No. 144-3.

28

1    provisions for cooperation by the Settling Defendants) and the diligent efforts of Plaintiffs' Counsel

2    in litigating the Action to date and in securing the Partial Settlement?

3            2.      Whether the Fee and Expense Award is reasonable pursuant to applicable law within

4    this District and the Ninth Circuit?

5                          **MEMORANDUM OF POINTS AND AUTHORITIES**

6    **I.    INTRODUCTION**

7            Plaintiffs' Counsel have succeeded in obtaining a $9,500,000 cash settlement for the benefit

8    of the Settlement Class.  The substantial recovery obtained for the Settlement Class was achieved

9    through the skill, work, tenacity, and effective advocacy of Plaintiffs' Counsel in the face of

10   considerable risk, including, but not limited to, securing a meaningful recovery from a bankrupt

11   foreign company.  As compensation for their efforts in achieving this result, Plaintiffs' Counsel seek,

12   as part of the Fee and Expense Award provided in the Stipulation, a fee equal to 25% of the

13   Settlement Fund (plus expenses incurred in the prosecution of the Action) in the amount of

14   $2,375,000.  As set forth herein, the requested Fee and Expense Award is consistent with the Ninth

15   Circuit's 25% "benchmark" fee in similar actions, numerous decisions in this Circuit, a recent

16   decision of this Court, and decisions throughout the United States.  The amount requested is

17   warranted in light of the substantial recovery obtained for the Settlement Class, the extensive efforts

18   of Plaintiffs' Counsel in obtaining this highly favorable result, and the significant risks in

19   prosecuting this Action.  *See* Weiser Decl. at 57-66.

20           This Action is subject to the provisions of the Private Securities Litigation Reform Act of

21   1995 ("PSLRA") and, therefore, was challenging from the outset.  It is unquestionable that the effect

22   of the PSLRA is to make it harder for investors to bring and successfully conclude securities class

23   actions; in fact, that was the express purpose of the PSLRA.  Plaintiffs' Counsel were mindful of the

24   fact that in this post-PSLRA environment, a greater percentage of cases are being dismissed than

25   ever before, amid defendants' constant attempts to push the extent of the PSLRA's adverse impact.

26   As retired Supreme Court Justice Sandra Day O'Connor recognized: "To be successful, a securities

27   class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by

28

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE
AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO                                                                                    - 2 -

1    judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d

2    221, 235 (5th Cir. 2009).

3         In addition to the significant risks posed by Velti's bankruptcy, foreign defendants, and

4    dwindling insurance coverage, the prosecution of this Action required great skill and extensive effort

5    by Plaintiffs' Counsel.  Plaintiffs' Counsel, under the direction of Lead Counsel, marshaled

6    considerable resources and committed substantial amounts of time and expense in the prosecution of

7    the Action.  As set forth in the Weiser Decl. at 6 and 45, Plaintiffs' Counsel conducted an extensive

8    pre- and post-filing investigation of the facts underlying the claims in the Action, reviewed and

9    analyzed nearly a dozen witness accounts of Velti's operations and finances, filed two detailed

10   complaints prior to entry of the Stipulation, consulted with loss causation, damage and accounting

11   experts, and reviewed and analyzed key internal documents produced by Velti as part of the

12   provisions of the Partial Settlement.  The negotiations of the Partial Settlement were arm's length

13   and arduous and included, among other things, an all-day mediation session (the "Mediation") with

14   the Honorable Layn R. Phillips (Ret.) (the "Mediator"), a highly respected mediator with extensive

15   experience in the mediation of complex class actions.  *Id*. at 7.

16        Plaintiffs' Counsel undertook the representation of the Settlement Class on a contingent fee

17   basis even though they realized at the outset that Velti was foreign-chartered (and headquartered)

18   company (and thus, were uncertain as to whether Velti would be insured and/or had significant

19   assets such that it could satisfy a settlement or judgment), that ordinarily-simple issues (such as

20   proper service and lawful jurisdiction) could significantly hamper the successful prosecution of the

21   Action.  Nonetheless, Plaintiffs' Counsel began an effort that would eventually cause them to spend

22   more than 3,400 hours prosecuting the Action, and incur nearly $220,000 in litigation expenses.

23   Plaintiffs' Counsel firmly believe that the Partial Settlement is the result of their diligent and

24   effective advocacy, as well as their reputations as attorneys with unwavering dedication to zealously

25   prosecuting cases such as this one.  In a case alleging claims based on complex legal and factual

26   issues which have been vigorously challenged by highly skilled and experienced defense counsel,

27   Plaintiffs' Counsel have succeeded in securing a highly favorable result for the Settlement Class.

28

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE
AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO                                                                                    - 3 -

As discussed herein as well as in the Final Approval Motion and the Weiser Decl., the requested Fee and Expense Award is fair and reasonable when considered under the applicable standards in the Ninth Circuit and is well within the range of awards in class actions in this Circuit and courts nationwide, particularly in view of the substantial risks of bringing and pursuing this Action, the extensive investigation and litigation efforts, and the results achieved for the Settlement Class.  Moreover, the $219,496.67 expense portion of the Fee and Expense Award, as requested in this Motion, is reasonable in amount and were necessarily incurred for the prosecution of this Action.

## II.   THE FEE PORTION OF THE FEE AND EXPENSE AWARD COMPLIES WITH APPLICABLE LAW, IS REASONABLE, AND SHOULD BE GRANTED FINAL APPROVAL

### A.   The Legal Standards Governing the Award of Attorneys' Fees in Common Fund Cases Support the Requested Fee and Expense Award

#### 1.   A Reasonable Percentage of the Settlement Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

For their efforts in creating a common fund for the benefit of the Settlement Class, Plaintiffs' Counsel seek a reasonable percentage of the Settlement Fund recovered as attorneys' fees.  The percentage method of awarding fees has become an accepted, if not the prevailing, method for awarding fees in common fund cases in this Circuit and throughout the United States.

It has long been recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees."  *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  The purpose of this doctrine is to avoid unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").  This rule, known as the "common fund" doctrine, is firmly rooted in

1   American law.  *See, e.g.*, *Trustees v. Greenough*, 105 U.S. 527 (1882); *Cent. R.R. & Banking Co. v.*

2   *Pettus*, 113 U.S. 116 (1885).[2]

3          In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under

4   the common fund doctrine a reasonable fee may be based "on a percentage of the fund bestowed on

5   the class."  In this Circuit, the district court has discretion to award fees in common fund cases based

6   on either the lodestar/multiplier method or the percentage-of-the-fund method.  *WPPSS*, 19 F.3d at

7   1296.  In *Paul, Johnson*, 886 F.2d 268, *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301

8   (9th Cir. 1990), *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993), and *Vizcaino v.*

9   *Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002), the Ninth Circuit expressly approved the use of the

10  percentage method in common fund cases.  Moreover, supporting authority for the percentage

11  method in other circuits is overwhelming.[3]

12         Since *Paul, Johnson* and its progeny, district courts in this Circuit have almost uniformly

13  shifted to the percentage method in awarding fees in common fund representative actions.  The

14  rationale for compensating counsel in common fund cases on a percentage basis is sound.  First, it is

15  consistent with the practice in the private marketplace where contingent fee attorneys are

16

---

17  [2]     In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989), the Ninth Circuit
18  explained the principle underlying fee awards in common fund cases:

19         Since the Supreme Court's 1885 decision in [*Central R.R. & Banking Co. v. Pettus*,
        113 U.S. 116 (1885)], it is well settled that the lawyer who creates a common fund is
        allowed an ***extra*** reward, beyond that which he has arranged with his client, so that
20      he might share the wealth of those upon whom he has conferred a benefit.  The
        amount of such a reward is that which is deemed "reasonable" under the
21      circumstances.

22  *Id.* at 271 (citations omitted, emphasis in original).

23  [3]     Courts in other circuits favor the percentage-of-recovery approach for the award of attorneys'
    fees in common fund cases.  Two circuits have ruled that the ***percentage method is mandatory in***
24  ***common fund cases***.  *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *Camden I*
    *Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991).  Other circuits and commentators
25  have expressly approved the use of the percentage method.  *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir.
    1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (citing footnote 16 of
26  *Blum* recognizing both "implicitly" and "explicitly" that a percentage recovery is reasonable in
    common fund cases); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Goldberger v.*
27  *Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

28

customarily compensated by a percentage of the recovery.  Second, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time.[4]  Indeed, one of the nation's leading scholars in the field of class actions and attorneys' fees, Professor Charles Silver of the University of Texas School of Law, has concluded that the percentage method of awarding fees is the *only* method of fee awards that is consistent with class members' due process rights.  Professor Silver notes:

> The consensus that the contingent percentage approach creates a closer harmony of interests between class counsel and absent plaintiffs than the lodestar method is strikingly broad.  It includes leading academics, researchers at the RAND Institute for Civil Justice, and many judges, including those who contributed to the Manual for Complex Litigation, the Report of the Federal Courts Study Committee, and the report of the Third Circuit Task Force.  Indeed, it is difficult to find anyone who contends otherwise.  No one writing in the field today is defending the lodestar on the ground that it minimizes conflicts between class counsel and absent claimants.
>
> In view of this, it is as clear as it possibly can be that judges should not apply the lodestar method in common fund class actions.  The Due Process Clause requires them to minimize conflicts between absent claimants and their representatives.  The contingent percentage approach accomplishes this.

Charles Silver, *Due Process and the Lodestar Method: You Can't Get There from Here*, (June 2000) 74 Tul. L. Rev. 1809, 1819-20 (footnotes omitted).[5]

---

[4]    In *Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986), the court stated:

> The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client.  The lawyer gains only to the extent his client gains. . . The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment for more hours.  Contingent fees eliminate this incentive and also ensure a reasonable proportion between the recovery and the fees assessed to defendants. . . .

At the same time as it automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation.

[5]    Professor John C. Coffee also argues that a percentage of the recovery is the only reasonable method of awarding fees in common fund cases:

> If one wishes to economize on the judicial time that is today invested in monitoring class and derivative litigation, the highest priority should be given to those reforms that restrict collusion and are essentially self-policing.  The percentage of the recovery fee award formula is such a "deregulatory" reform because it relies on incentives rather than costly monitoring.  Ultimately, this "deregulatory" approach is the only alternative . . . .

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:13-cv-03889-WHO

- 6 -

### B.   A Percentage Fee of 25% of the Settlement Fund Created By The Partial Settlement Is Reasonable in This Action

In *Paul, Johnson*, 886 F.2d at 272, the Ninth Circuit established 25% of a common fund as the "benchmark" award for attorneys' fees.  *See also Torrisi*, 8 F.3d at 1376 (reaffirming 25% benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (same); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 943 (9th Cir. 2011) (reaffirming 25% benchmark in a common fund case).  The guiding principle in this Circuit is that a fee award be "'reasonable under the circumstances.'"  *WPPSS*, 19 F.3d at 1296 (citation and emphasis omitted).  "The Ninth Circuit has approved a number of factors which may be relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).  The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but rather, should be evaluated in light of the totality of the circumstances.  *Vizcaino*, 290 F.3d at 1048-50.  In view of the risks in pursuing this Action, the highly favorable result obtained, the financial commitment of Plaintiffs' Counsel, the contingent nature of the representation, and the skill of Plaintiffs' Counsel, an award of 25% of the recovery obtained for the Settlement Class is entirely appropriate.

### 1.   The Result Achieved Via the Partial Settlement

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48

---

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions*, 86 Colum. L. Rev. 669, 724-25 (1986).

1    (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured

2    by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

3         Here, a substantial and certain recovery of $9.5 million in cash has been obtained through the

4    efforts of Plaintiffs' Counsel at a relatively early stage of the litigation of the Action without the

5    substantial expense, delay, risk, and uncertainty of continued litigation as to the Settling Defendants

6    or the assistance of any regulatory or governmental agency.   Indeed, early settlements are

7    encouraged by courts and are consistent with the purposes of the Federal Rules of Civil Procedure,

8    which "'shall be construed and administered to ensure the *just, speedy, and inexpensive*

9    *determination* of every action.'"   *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F.

10   Supp. 2d 980, 992 (D. Minn. 2005) (quoting Fed. R. Civ. P. 1) (emphasis in original).   The *Xcel*

11   court, in awarding a 25% fee of an $80 million securities class action settlement (over a number of

12   objections, including a sophisticated pension fund), complimented counsel for the efficient

13   prosecution of the case and the prompt resolution of the litigation.   The Ninth Circuit, in *Vizcaino*,

14   290 F.3d 1050 n.5, expressly stated, when considering whether a particular fee is appropriate, that

15   class counsel should not be penalized by receiving a "lesser fee for settling a case quickly; in many

16   instances, it may be a relevant circumstance that counsel achieved a timely result for class members

17   in need of immediate relief."

18        Indeed, the caution of the Ninth Circuit in *Vizcaino* against reducing fees for cases settled

19   early holds particularly true in this case.   While the Partial Settlement was not entered into "early" in

20   the sense that it was entered into only after the filing of two complex pleadings (the Yadegar/Ygar

21   LLC Action and the Consolidated Complaint), the execution of the Partial Settlement was critical in

22   securing a recovery for the Settlement Class in view of the U.S. Bankruptcy (and now the Foreign

23   Bankruptcy), as defined and discussed in the Final Approval Motion and in securing information

24   from the Settling Defendants to be used in the case against the Non-Settling Defendants.

25   Additionally, the liquidation of Velti, the dwindling insurance policies[6] to provide any possible

---

[6]    As stated by Velti's counsel during the hearing on the Motion for Preliminary Approval of
Partial Settlement on July 7, 2014: ". . . I'm proud we settled very early and I'm proud of the carrier
because many carriers would never fund the settlement prior to the motion to dismiss.   And we

1   coverage for the claims in the Action, and the fact that several of the key Defendants in the Action

2   are located abroad (thereby presenting extreme, if not insurmountable) barriers to service of process

3   combined to present substantial barriers to a recovery on behalf of the Settlement Class.[7]

4          Accordingly, as detailed herein, in the Final Approval Motion, and in the Weiser Decl., there

5   were significant legal and factual roadblocks to obtaining a more favorable outcome against the

6   Settling Defendants in this Action.  Despite these obstacles to recovery, Plaintiffs' Counsel secured a

7   sizeable $9.5 million recovery for the benefit of the Settlement Class – a recovery some class action

8   litigants only see after years of litigation and the expenditure of the resources of the Court and the

9   parties.  As a result of this Partial Settlement, Settlement Class Members will receive partial

10  compensation for their losses on Velti Shares now[8], have obtained valuable cooperation from the

11  Settling Defendants in terms of interviews and/or document productions in order to continue to

12  pursue claims against the Non-Settling Defendants, and have managed to streamline the remainder

13  of the litigation of the Action, thereby minimizing the traditional "ills" of litigation in terms of

14  expense, delay, and uncertainty.  Plaintiffs' Counsel submits that there is no question that this Partial

15  Settlement is of immense benefit to the Settlement Class and that  Plaintiffs' Counsel's efforts in

16  securing the Partial Settlement warrant granting this Fee and Expense Award Motion in full.

17

18

19

20  worked very hard on that.  It was – as you know, it's a self-consuming policy.  So the more we litigate, the less there is left of insurance to settle."  *See* Weiser Decl. Ex. H (Transcript) at 20 (lines 8-12).

21

22  [7]       As set forth in the Declarations of Janis Dingman and Ann Mickow, it appears that certain of the Individual Defendants (Moukas, Kaskavelis, Mann, Hobley and Goldstein) are located outside the territorial limits for service in this Action.  *See* ECF Dkt. No. 136-3 & 136-4.  The issue of service as to certain of the Individual Defendants, particularly when combined with Velti's overall financial condition, dictated immediate action to determine if a reasonable resolution of the claims as to Velti and the Individual Defendants was possible.  Plaintiffs' Counsel also notes that, based on confidential information provided to them in connection with settlement communications, certain of these same Defendants (namely, Moukas and Kaskavelis)  lacked material financial resources independent of their Velti common stock, which now trades for approximately $0.05 per share.

23

24

25

26

27  [8]       *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").

28

2.     **The Risks of the Litigation of the Action and the Novelty and Difficulty of the Questions Presented**

Numerous cases have recognized that risk as well as the novelty and difficulty of the issues presented are important factors in determining a fee award.  *E.g.*, *Vizcaino*, 290 F.3d at 1048; *WPPSS*, 19 F.3d at 1299-1301.  Uncertainty that an ultimate recovery would be obtained is highly relevant in determining risk.  *WPPSS*, 19 F.3d at 1300.  *See also In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, No. 02-ML-1475-DT (RCx), 2005 U.S. Dist. LEXIS 13627, at *44 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award."); *Omnivision*, 559 F. Supp. 2d at 1047 (noting that the risks of litigation, including the ability to prove loss causation and the risk that defendants prevail on damages, support the requested fee).

There is no question that from the outset of the litigation of this Action, as in any PSLRA case, there were sharply contested issues of both fact and law, and that Plaintiffs faced uphill fights on the issues of liability and damages.  This is a complex class action involving legal and factual issues under the federal securities laws.  Plaintiffs' claims, as to the Settling Defendants, center on allegations that these Defendants caused Velti to overstate its revenues and earnings by failing to timely write down approximately $111 million in uncollectible receivables, thereby causing the artificial inflation of the price of Velti's securities during the Class Period. When the true facts were revealed on and after August 21, 2013, Velti's stock price experienced a steep decline of more than 66%.  Throughout the litigation, all Defendants have adamantly denied liability and asserted defenses to Plaintiffs' claims.  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (concluding that district court properly weighed risk when it concluded defendant's belief that it had strong case on merits supporting finding of risk).

Based on the evidence gathered to date, including interviews with former Velti employees and the Settling Defendants, and the review of documents produced by Velti, Plaintiffs believe that they have strong liability claims against certain of the Defendants, and may be able to prove that Defendants knowingly misrepresented Velti's financial condition which caused the price of Velti

1   securities to be artificially inflated.  While Plaintiffs believe that their claims are strong, defeating

2   motions to dismiss, getting past summary judgment and establishing liability at trial would by no

3   means be guaranteed.[9]  Indeed, the Settling Defendants have adamantly denied any liability and have

4   asserted from the outset that they possessed absolute defenses to Plaintiffs' claims.  *See also* Weiser

5   Decl. Ex. H (Transcript) at 19-20 (presentation by counsel for Velti concerning its view of Plaintiffs'

6   damages).

7          Therefore, as discussed in the Weiser Decl. and the Final Approval Motion, substantial risks

8   and uncertainties in this type of litigation, and in this Action in particular, made it far from certain

9   that a cash recovery, let alone $9.5 million, would ultimately be obtained.  Indeed, the Partial

10  Settlement is the result of a proposal by the Mediator, and was the result of hard fought and arm's

11  length negotiations by the Settling Parties.  *See* Weiser Decl. at 32-33.  Therefore, as in any PSLRA

12  case, from the outset this Action (no matter the strength of the claims asserted) presented no

13  assurance whatsoever that the litigation would survive Defendants' attacks on the pleadings or

14  motion(s) for summary judgment.

15         Moreover, even if Plaintiffs were successful in establishing liability, there is no question that

16  the Settling Defendants would vigorously contest loss causation if litigation continued.  The United

17  States Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005), and

18  subsequent cases interpreting *Dura*, have made proving loss causation even more difficult and

19  uncertain than in the past.  *See In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007)

20  ("Proving loss causation would be complex and difficult.").  Two examples illustrate this point.  In

21  *In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), the

22  court granted summary judgment in defendants' favor holding that shareholder plaintiffs failed to

23  present sufficient evidence to establish loss causation under Rule 10b-5.  While the Ninth Circuit

24  reversed the decision, the court in *In re Apollo Grp., Inc. Sec. Litig.*, No. CV 04-2147-PHx-JAT,

25  2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), *rev'd*, No. 08-16971, 2010 U.S. App. LEXIS

26  _____

27  [9]        And of course, all of that assumes that Plaintiffs could perfect service on certain foreign
    Defendants, and that the Court could exercise proper jurisdiction over those same Defendants.

28

1    14478 (9th Cir. June 23, 2010), on a motion for judgment as a matter of law, overturned a jury

2    verdict in favor of shareholders based on insufficient evidence presented at trial to establish loss

3    causation.[10]

4         The amount of damages incurred by Settlement Class Members would also have been hotly-

5    contested at trial.  Damages in securities class action cases are always difficult to prove and, at trial,

6    the damage assessments of Plaintiffs' and the Settling Defendants' experts were sure to vary

7    substantially, and in the end, this crucial element at trial would have been reduced to a battle of the

8    experts.  *See Perlmutter v. Intuitive Surgical, Inc.*, No. 10–CV–03451–LHK, 2011 WL 566814, *5

9    (N.D.Cal. Feb. 15, 2011) (collecting cases and noting that "[i]n general, calculating damages in a

10   securities fraud case is a highly technical task that usually involves a battle of experts."); *Nguyen v.*

11   *Radient Pharms. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293, at *2 (C.D. Cal.

12   May 6, 2014) (noting that "[p]roving and calculating damages required a complex analysis, requiring

13   the jury to parse divergent positions of expert witnesses in a complex area of the law"); *Tyco*, 535 F.

14   Supp. 2d at 260-61 ("even if the jury agreed to impose liability, the trial would likely involve a

15   confusing "battle of the experts" over damages").  Plaintiffs would have likely faced a motion *in*

16   *limine* by the Settling Defendants to preclude Plaintiffs' damage expert's testimony under the

17   *Daubert* test and risked a decision that a valuation model might not be admissible in evidence.  The

18   reaction of a jury to battling expert testimony is highly unpredictable and in such a battle, Plaintiffs'

19   Counsel recognize the possibility that a jury could be swayed by convincing experts for the Settling

20   Defendants, and find that there were no damages or only a fraction of the amount of damages

21   Plaintiffs contended.  *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45

22   (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986) (approving settlement where "it is virtually

23   impossible to predict with any certainty which testimony would be credited, and ultimately, which

24   damages would be found to have been caused by actionable, rather than the myriad nonactionable

25   _____

26   [10]     *See also In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (court granted defendants' judgment as a matter of law on the basis of loss causation, overturning jury verdict and award in plaintiff's favor); *Robbins v. Koger Props.*, 116 F.3d 1441

27   (11th Cir. 1997) (finding no loss causation and overturning $81 million jury verdict).

28

1   factors such as general market conditions"); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL

2   0165 (CM), 2007 WL 4115809, at *10 (S.D.N.Y. Nov. 7, 2007) ("The jury's verdict with respect to

3   damages would depend on its reaction to the complex testimony of experts, a reaction which at best

4   is uncertain.").

5          While it is certain that Plaintiffs would present evidence at trial that the aggregate damages

6   exceed the amount of the proposed Partial Settlement, that assumes that most, if not all, of the

7   significant liability and damage issues would have been resolved in the Settlement Class' favor.

8   Even if Plaintiffs prevailed and obtained a substantial judgment after trial, there is little doubt that

9   the Settling Defendants would have appealed.   The appeals process would have likely spanned

10  several years, during which the Settlement Class would have received no distribution on any damage

11  award.   In addition, an appeal of any verdict would carry the risk of reversal, in which case the

12  Settlement Class would receive no recovery after having prevailed on the claims at trial.

13         As the court noted in *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194-95 (E.D. Pa.

14  2000), "[t]here were the legal obstacles of establishing scienter, damages, causation . . . . The court

15  also acknowledges that securities actions have become more difficult from a plaintiff's perspective

16  in the wake of the PSLRA. . . .   The Act imposes many new procedural hurdles . . . .   It also

17  substantially alters the legal standards applied to securities fraud claims in ways that generally

18  benefit defendants rather than plaintiffs."   The court's statement in *Ikon* is certainly applicable

19  here.[11]

20

21

22

---

23  [11]    Even before the passage of the PSLRA, courts had noted that a securities case "by its very
    nature, is a complex animal."  *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 654 (N.D.

24  Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980).  *See also Miller v. Woodmoor
    Corp.*, No. 74-F-988, 1978 U.S. Dist. LEXIS 15234, at *11-*12 (D. Colo. Sept. 28, 1978):

25         The benefit to the class must also be viewed in its relationship to the complexity,
           magnitude, and novelty of the case. . . .
26
27         Despite years of litigation, the area of securities law has gained little predictability.
           There are few "routine" or "simple" securities actions.

28
    NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE
    AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
    3:13-cv-03889-WHO                                                                        - 13 -

### 3.    The Skill Required and the Quality and Efficiency of the Work

The "'prosecution and management of a complex national class action requires unique legal skills and abilities.'"  *Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *40 (citations omitted). These unique skills were called upon here and support the requested Fee and Expense Award.  From the outset Plaintiffs' Counsel engaged in a concerted effort to obtain the maximum recovery for the Settlement Class.  This Action required a determined investigation and the skill to respond to a host of legal and factual defenses raised by the Settling Defendants.  Plaintiffs' Counsel have demonstrated that, notwithstanding the barriers erected by the PSLRA, they developed evidence to strongly support the claims asserted in the Action.

As a result of the preservation of the claims of the Settlement Class via the Yadegar/Ygar LLC Action and the Consolidated Complaint (as defined and discussed in the Final Approval Motion), Plaintiffs' Counsel were positioned to negotiate a highly favorable settlement with Settling Defendants.  The substantial recovery obtained for the Settlement Class is the direct result of the significant efforts of highly skilled and specialized attorneys who possess substantial experience in the prosecution of complex securities class actions.  Unlike those cases where Plaintiffs' Counsel were able to "free ride" on the work of others (such as the SEC or other governmental agency), here Plaintiffs' Counsel developed the claims in the Action against Defendants.  Courts have regularly recognized that the efforts of plaintiffs' counsel in achieving a favorable settlement should be accorded greater weight when achieved without the benefit of a governmental investigation.[12]

The quality of opposing counsel is also important in evaluating the quality of the work done by Plaintiffs' Counsel.  *See, e.g.*, *Nguyen*, 2014 WL 1802293, at *3; *In re Equity Funding Corp. Sec.*

---

[12]    *See In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (in awarding 25% of a $193 million settlement fund, the court noted the skill and efficiency of plaintiffs' counsel and outstanding results "in a litigation that was far ahead of public agencies like the [SEC] and the United States Department of Justice, which long after the institution of this litigation awakened to the concerns that plaintiffs' counsel first identified"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (In awarding 33-1/3% of the settlement fund, the court noted, "[i]n this Action, Plaintiffs' Class Counsel did not 'piggy back' on any prior governmental action . . . . Plaintiffs' Class Counsel developed, litigated and successfully negotiated this Action by themselves, expending substantial time and effort.").

*Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977).  Plaintiffs' Counsel was opposed in this litigation by very skilled and highly respected counsel from Wilson Sonsini Goodrich & Rosati, an international law firm with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases – especially securities class actions such as this one.  In the face of this formidable opposition, Plaintiffs' Counsel was able to develop their case so as to persuade the Settling Defendants to enter into a Partial Settlement of the Action for a substantial sum of money.

> **4.** **The Contingent Fee Nature of the Action and the Financial Burden Carried by Plaintiffs' Counsel**

A determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties which were overcome in obtaining the Partial Settlement.

It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.  *See* Richard Posner, *Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.  *WPPSS*, 19 F.3d at 1299; *see also Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee.").

In awarding counsel's attorneys' fees in *HCL Partners Ltd. P'ship v. Leap Wireless Intern., Inc.*, 07 CV 2245 MMA, 2010 WL 4156342, *4 (S.D. Cal., Oct. 15, 2010),  the court noted the risks that plaintiffs' counsel had taken:

> "The Court hereby awards Plaintiff's Counsel attorneys' fees of 25% of the Settlement Fund, which is $13,750,000, plus the interest earned thereon for the same time period and at the same rate as that earned on the Settlement Fund until the fee is paid, plus reimbursement of litigation expenses in the amount of $112,715.16. The Court finds that the amount of fees awarded is appropriate and is fair and reasonable under both the "percentage-of-recovery" method and the lodestar method given the substantial risks of non-recovery, the time and effort involved, and the result obtained for the Class.

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:13-cv-03889-WHO

- 15 -

1      Indeed, the risk of no recovery is very real in cases like the Action. There are numerous class

2  actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration

3  whatsoever despite their diligence and expertise. As the court in *Xcel* recognized, "[p]recedent is

4  replete with situations in which attorneys representing a class have devoted substantial resources in

5  terms of time and advanced costs yet have lost the case despite their advocacy." *Xcel Energy*, 364 F.

6  Supp. 2d at 994. Even plaintiffs who get past summary judgment and succeed at trial may find their

7  judgment overturned on appeal or on a post-trial motion.[13]

8      Because the fee in this Action was entirely contingent, the only certainties were that there

9  would be no fee without a successful result and that such a result would be realized only after

10  considerable and difficult effort. Plaintiffs' Counsel committed significant resources of both time

11  and money to the vigorous and successful prosecution of this Action for the benefit of the Settlement

12  Class. The contingent nature of counsel's representation strongly favors approval of the Fee and

13  Expense Award.

14          **5.**    **A 25% Fee Award Is Consistent With the Market Rate in**
                  **Similar Complex, Contingent Litigation**

15

16      Courts often look to fees awarded in comparable cases to determine if the fee requested is

17  reasonable. *See Vizcaino*, 290 F.3d at 1050 n.4. A fee of 25% or more has been repeatedly awarded

    by courts within this District with settlement recoveries ranging from $3.375 million to $10 million.

18  *See, e.g.*, *Larsen v. Trader Joe's Co.*, Case No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal.

19  July 11, 2014) (granting fee request of 28% on a $3.375 million settlement fund in consumer class

20  action); *In re Nuvelo, Inc. Sec. Litig.*, No. C 07-0405 CRB, 2011 WL 2650592, at *3 (N.D. Cal. July

21  6, 2011) (awarding 30% of $8.9 million settlement); *In re Gilead Sciences Sec. Litig.*, No. C-03-

22  4999-SI, (N.D. Cal. Nov. 5, 2010) (ORDER) (awarded 30% of $8.25 million recovery, plus

23  expenses); *In re Infineon Techs. AG Sec. Litig.*, No. C-04-4156-JW (N.D. Cal. Nov. 2, 2011)

24

25    ────────────

[13]     *See, e.g.*, *BankAtlantic Bancorp*, 2011 WL 1585605; *Robbins*, 116 F.3d at 1448-49; *Anixter*
26  *v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996); *In re Apple Computer Sec. Litig.*,
    No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608, at *1-*2 (N.D. Cal. Sept. 6, 1991); *Backman*
27  *v. Polaroid Corp.*, 910 F.2d 10, 18 (1st Cir. 1990); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603
    F.2d 263, 309 (2d Cir. 1979).

28

1    (ORDER) (awarded fees of 27% of $6.2 million recovery, plus expenses); *Twinde v. Threshold*

2    *Pharms., Inc., et al.*, No. 4:07-cv-04972-CW (N.D. Cal. Apr. 16, 2010) (ORDER) (awarded fees of

3    25% of $10 million recovery, plus expenses); *City of Westland Police and Fire Ret. Sys. v. Sonic*

4    *Solutions*, No. C 07-05111-CW (N.D. Cal. Apr. 8, 2010) (ORDER) (awarded fees of 25% of $5

5    million recovery, plus expenses); *In re Impax Labs., Inc. Sec. Litig.*, No. C-04-4802-JW (N.D. Cal.

6    May 12, 2009) (ORDER) (awarded fees of 25% of $9 million recovery, plus expenses); *In re U.S.*

7    *Aggregates, Inc. Sec. Litig.*, No. C-01-1688-CW (N.D. Cal. Apr. 6, 2006) (ORDER) (awarded fees

8    of 25% of $3.5 million recovery, plus expenses).  *See* Weiser Decl. Ex. I.  Plaintiffs submit that,

9    based upon these comparable results, the Court here should find that the fee request of 25% is

10   reasonable given the substantial $9.5 million Settlement Fund (not to mention the cooperation

11   provisions of the Partial Settlement that inure to the benefit of the Settlement Class in the continued

12   litigation of the Action).

13       **C.       Reaction of the Settlement Class Supports Approval of the Fee and
                    Expense Award**

14
                Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also
15
     consider the reaction of the class when deciding whether to award the requested fee.  *Heritage Bond*,
16
     2005 U.S. Dist. LEXIS 13627, at *48 ("The presence or absence of objections . . . is also a factor in
17
     determining the proper fee award."); *Larsen*, 2014 WL 3404531, at *5-*6 (considering reaction of
18
     settlement class and upholding settlement despite sixteen objections).
19
                To date, 43,110 copies of the Notice and Claim Form (as defined in the Stipulation) were
20
     mailed to potential Settlement Class Members.  *See* Weiser Decl. at 49.  The Summary Notice (as
21
     defined in the Stipulation) was published once in *Investor's Business Daily* on, and released over
22
     *Business Wire* on September 15, 2014.  *Id.* at 50.  In addition, the Notice, the Summary Notice, and
23
     the Claim Form were posted on the website www.veltisecuritieslitigation.com designed specifically
24
     to administer the Partial Settlement.  Settlement Class Members were informed in the Notice that
25
     Plaintiffs' Counsel were moving the Court for a Fee and Expense Award with the fee portion being
26
     25% of the Settlement Fund and for payment of expenses in an amount not to exceed $225,000.
27

28

While the deadline to file objections – December 2, 2014 – has not yet passed, the Notices advised the Settlement Class Members of their right to object to the Fee and Expense Award.  As of the date of this memorandum, no objections to the Fee and Expense Award provision have been filed.  *See* Weiser Decl. at 46.

### D.    The Requested Fee and Expense Award Is Reasonable Under a Lodestar Cross-Check Analysis

Although Plaintiffs' Counsel seek approval of a fee based on a percentage of the recovery, "[a]s a final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048.[14]  In *Vizcaino*, the Ninth Circuit noted that an analysis of the "lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement."  290 F.3d at 1050 n.5.[15]

Here, Plaintiffs' Counsel spent 3,434.55 hours of attorney and paraprofessional time prosecuting this Action on behalf of the Settlement Class.  The resulting lodestar is $1,914,221.25. The requested fee of 25% would equal $2.375 million.   Thus, the requested fee represents a multiplier of approximately 1.25.  In *Vizcaino*, the Ninth Circuit approved a 28% fee that resulted in a 3.65 multiplier.  *Vizcaino*, 290 F.3d at 1052-54 (finding multipliers ranged as high as 19.6 though most run from 1.0-4.0); *see also In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) ("'In recent years multipliers of between 3 and 4.5 have been common' in federal securities

---

[14]    *See Fernandez v. Victoria Secret Stores, LLC*, No. CV-06-04149 MMM (SHx), 2008 U.S. Dist. LEXIS 123546, at *14 (C.D. Cal. July 21, 2008) (explaining the lodestar cross-check "need not be as exhaustive as a pure lodestar calculation" and "'can be performed with less exhaustive cataloging and review of counsel's hours.'") (quoting *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 U.S. Dist. LEXIS 27269, at *15 (N.D. Cal. Mar. 28, 2007)).

[15]    *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) (cross-check is "not a full-blown lodestar inquiry" and the court "should be satisfied with a summary of the hours expended by all counsel at various stages") (citations omitted).  To the extent the Court would like to review the time detail for Plaintiffs' Counsel, Plaintiffs' Counsel will, upon notification from the Court, submit it to the Court for an in camera review.  *Blum*, 465 U.S. at 895.

1   cases.") (citations omitted); *In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510 WHA, 2011

2   U.S. Dist. LEXIS 44547, at *28-*29 (N.D. Cal. April 19, 2011) (multiplier of 2.68 permitted as

3   reasonable); *Xcel*, 364 F. Supp. 2d at 998-99 (awarding 4.7 multiplier); *In re Rite Aid Corp. Sec.*

4   *Litig.*, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003) (multiplier of 4.07 and recognizing that

5   "'multipliers in this range are fairly common'") (citation omitted), *vacated on other grounds*, 396

6   F.3d 294 (3d Cir. 2005).  Accordingly, the multiplier here is within the range of multipliers typically

7   awarded by courts.

8       **E.**    **Class Counsel's Hourly Rates and Time Expended Are Reasonable**

9           Under the lodestar method, reasonable hourly rates are determined by "prevailing market

10   rates in the relevant community," which are the rates a lawyer of comparable skill, experience and

11   reputation could command in the relevant community.  The relevant community is that in which the

12   court sits; here the Northern District of California.[16]

13           Plaintiffs' Counsel, with this filing, submit sworn declarations attesting to their hourly rates

14   and total hours devoted to the Action, their experience, and describing their efforts to prosecute this

15   Action.[17]  The hourly rates submitted by Plaintiffs' Counsel reflect their actual billing rates in

16   contingent actions or non-contingent work.  *See* Weiser Decl. Exs. D-F.  These hourly rates are

17   consistent with the rates previously approved in this District[18] and have been approved by courts

18   _____

19   [16]    *See Schwartz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).

20   [17]    *See* Weiser Decl. Exs. D-F.  These rates are those currently charged by each firm and it is
well within the Court's discretion to calculate the lodestar based on these prevailing rates. *Vizcaino*,

21   290 F.3d at 1051; *Gates v. Deukmejian*, 987 F.2d 1392, 1406 (9th Cir. 1992) (use of current rates
appropriate "in order to adjust for inflation and loss of use funds").  Otherwise, the Court must add

22   interest at the prime rate to the historic-rates lodestar, as it is an abuse of discretion to deny either of
these two means of adjustment for the delay in receiving payment.  *See WPPSS*, 19 F.3d at 1305

23   (district court is "free to use either current rates for attorneys of comparable ability and experience or
historical rates coupled with a prime rate enhancement," but denial of both is reversible error
because this would "inadequately compensate the firm for the delay in receiving its fees").

24   [18]    *See Faigman v. AT&T Mobility LLC*, No. C06-04622 MHP, 2011 WL 672648, at *5 (N.D.

25   Cal. Feb. 16, 2011) (approving hourly rates ranging up to $735.74 for partner services, $448.86 for
associate attorney services, and $175 for paralegal services); *Wren v. RGIS Inventory Specialists*,

26   No. C-06-05778 JCS, 2011 WL 1230826, at *20 (N.D. Cal. Apr. 1, 2011) (approving hourly rates
ranging up to $725 for partner services); *Suzuki v. Hitachi Global Storage Techs., Inc.*, No. C06-

27   7289, 2010 WL 956896, at *3 (N.D. Cal. Mar. 12, 2010) (finding reasonable attorneys" fees based
on rates of $650 for partner services, $500 for associate attorney services, and $150 for paralegal

28    

1    across the country.[19]  Plaintiffs' Counsel are all highly respected members of their respective bars

2    with extensive experience in prosecuting high-stakes complex litigation, including securities class

3    actions, shareholder derivative actions, and consumer class actions.  *Id.* at Ex. D-F.  Plaintiffs'

4    Counsel's rates are appropriate for complex, nationwide litigation.  Thus, the rates used to generate

5    the lodestar are reasonable.  In addition, given the complexity of the Action, the filing of two

6    substantial pleadings, engaging in the Mediation process, and undertaking extensive investigatory

7    efforts, the hours expended were also reasonable.  *See id.*

8    **III.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE
           NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED**

9

10              Plaintiffs' Counsel also request payment of expenses incurred by them in connection with the

11   prosecution of this Action.  Plaintiffs' Counsel have incurred expenses in the amount of

     $219,496.67.  These expenses are categorized in the Weiser Decl., submitted to the Court herewith.

12              The appropriate analysis to apply in deciding which expenses are compensable in a common

13   fund case of this type is whether the particular costs are of the type typically billed by attorneys to

14   paying clients in the marketplace.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may

15   recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be

16   charged to a fee paying client.'") (citations omitted).  As was also recently explained, "[a]ttorneys

17   who created a common fund are entitled to the reimbursement of expenses they advanced for the

18   benefit of the class."  *Vincent v. Reser*, No. 11-03572 (CRB), 2013 WL 621865, at *5 (N.D. Cal.

19   Feb. 19, 2013).  Therefore, it is proper to pay reasonable expenses even though they are greater than

20   taxable costs.  *Harris*, 24 F.3d at 19.  *See also Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936,

21   2013 U.S. Dist. LEXIS 100275, at *32 (C.D. Cal. July 9, 2013) (reimbursing "expenses for

22

23   _____

24   services); *Armstrong v. Brown*, No. C94-2307, 2011 WL 3443922, at *2-*3 (N.D. Cal. Aug. 8,
     2011) (approving partner-level rates ranging from $560 to $800, associate-level rates ranging from
25   $285 to $510, and litigation support staff and paralegal clerks ranging from $150 to $240 in the "Bay
     Area").

26   [19]    For instance, the rates for the Weiser Firm have recently been approved as fair and
     reasonable.  *See Wyrick v. Redling, et al.*, Civ. No. 11-5036 (E.D. Pa. Dec. 12, 2012) (ORDER)
27   attached to the Weiser Decl. as Exhibit G.

28   NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE
     AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
     3:13-cv-03889-WHO                                                                          - 20 -

1  mediation fees, copying, telephone calls, expert expenses, research costs, travel, postage,

2  messengers, and filing fees."); *Barbosa v. Cargill Meat Solutions Corp.*, No. 1:11-cv-00275-SKO,

3  2013 WL 3340939, at *22 (E.D. Cal. July 2, 2013) (noting that "travel, mediation fees,

4  photocopying,[a] private investigator to locate missing Class Members, and delivery and mail

5  charges" are "routinely reimbursed.")

6          The categories of expenses for which counsel seek reimbursement here are the type of

7  expenses routinely charged to hourly clients and, therefore, should be reimbursed out of the common

8  fund.

9          A significant component of Plaintiffs' Counsel's expenses is the cost of their experts,

10 consultants and investigators.  In the post-PSLRA era the use of investigators to gather detailed fact-

11 specific information from percipient witnesses in order to plead complaints that will survive motions

12 to dismiss is a necessity.  Lead Counsel engaged the services of L.R. Hodges & Associates, Ltd.

13 ("L.R. Hodges") to assist counsel.  L.R. Hodges conducted a substantial amount of work on behalf of

14 the Settlement Class.  L.R. Hodges was able to identify, locate, and interview numerous witnesses

15 who had knowledge of the alleged wrongdoing.  These investigators interviewed dozens of potential

16 witnesses, including numerous former Velti employees (including employees of Velti subsidiaries).

17 These investigators were instrumental in helping Lead Plaintiff achieve this result for the benefit of

18 the Settlement Class.  Lead Counsel also incurred the expense of Strategic Financial Services and

19 Paul Mulholland (separate and apart from their work as the Claims Administrator, to provide the

20 proposed Plan of Distribution), which contributed materially to the benefits achieved for the

21 Settlement Class.  Weiser Decl. at 6.

22         Other expenses include the costs of computerized research.  These are the charges for

23 computerized factual and legal research services including Lexis Nexis, West Publishing

24 Corporation, among others.  It is standard practice for attorneys to use these services to assist them in

25 researching legal and factual issues.  These services allowed counsel to access Velti's SEC filings,

26 perform media searches on Velti, and obtain analysts' reports on Velti.

27

28

1   Plaintiffs' Counsel were also required to travel in connection with this Action – for hearings

2   and mediations, as well as internationally to interview certain of the Settling Defendants – and thus

3   incurred the related costs of meals, lodging, and transportation.  Other expenses that were necessarily

4   incurred in the prosecution of this Action include expenses for court services and/or couriers,

5   photocopying, mediation fees, filing fees, postage and overnight delivery, and telephone and

6   telecopier expenses.

7   **IV.     CONCLUSION**

8   Based on the foregoing and upon the entire record herein, Plaintiffs' Counsel respectfully

9   submit that the Court should grant this Fee and Expense Award Motion, and award attorneys' fees in

10   the amount of 25% of the Settlement Fund, plus expenses in the amount of $219,469.67.

11   DATED:  November 6, 2014                       Respectfully submitted,

12                                                  THE WEISER LAW FIRM, P.C.
                                                    KATHLEEN A. HERKENHOFF (SBN 168562)
13

14                                                        s/ KATHLEEN A. HERKENHOFF
                                                       KATHLEEN A. HERKENHOFF
15
                                                    12707 High Bluff Drive, Suite 200
16                                                  San Diego, CA 92130
                                                    Telephone:  (858) 794-1441
17                                                  Facsimile:  (858) 794-1450
                                                    kah@weiserlawfirm.com
18
                                                    THE WEISER LAW FIRM, P.C.
19                                                  ROBERT B. WEISER
                                                    (admitted *pro hac vice*)
20                                                  CHRISTOPHER L. NELSON
                                                    (admitted *pro hac vice*)
21                                                  JAMES M. FICARO
                                                    22 Cassatt Avenue, First Floor
22                                                  Berwyn, PA 19312
                                                    Telephone: (610) 225-2677
23                                                  Facsimile:  (610) 408-8062
                                                    rw@weiserlawfirm.com
24                                                  jmp@weiserlawfirm.com
                                                    cln@weiserlawfirm.com
25                                                  jmf@weiserlawfirm.com

26                                                  Lead Counsel for Plaintiffs and Counsel for Lead
                                                    Plaintiff Bobby Yadegar/Ygar Capital LLC
27

28

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE
AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO                                                                          - 22 -

BERMAN DEVALERIO
JOSEPH J. TABACCO, JR. (SBN 75284)
NICOLE LAVALLEE (SBN 165755)
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile:  (415) 433-6382
jtabacco@bermandevalerio.com
nlavallee@bermandevalerio.com

Attorneys for Plaintiff St. Paul Teachers'
Retirement Fund Association

LABATON SUCHAROW LLP
JONATHAN GARDNER
(admitted *pro hac vice*)
140 Broadway, 34th Floor
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0470
jgardner@labaton.com

Attorneys for Plaintiffs Newport News
Employees' Retirement Fund and Oklahoma
Firefighters Pension and Retirement System

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE
AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO

- 23 -

1

2

<u>CERTIFICATE OF SERVICE</u>

3

I hereby certify that on November 6, 2014, I authorized the electronic filing of the foregoing

4

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to

5

the e-mail addresses denoted on the attached Electronic Mail Notice List.

6

I certify under penalty of perjury under the laws of the United States of America that the

7

foregoing is true and correct.  Executed on November 6, 2014.

8

s/ KATHLEEN A. HERKENHOFF

9

KATHLEEN A. HERKENHOFF

10

THE WEISER LAW FIRM, P.C.
12707 High Bluff Drive, Suite 200
San Diego, CA 92130

11

Telephone:  (858) 794-1441
Facsimile:  (858) 794-1450

12

13

Email:  kah@weiserlawfirm.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE
AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO

- 24 -

## Mailing Information for a Case 3:13-cv-03889-WHO Rieckborn v. Velti plc et al

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Peter E. Borkon**
  peterb@hbsslaw.com

- **Donald A. Broggi**
  dbroi@scott-scott.com

- **Joseph Daniel Cohen**
  jcohen@scott-scott.com

- **Hal Davis Cunningham**
  hcunningham@scott-scott.com,efile@scott-scott.com

- **Brock Dahl**
  bdahl@wsgr.com

- **Patrick Norton Downes**
  pdownes@loeb.com,ptaylor@loeb.com

- **Cynthia A. Dy**
  cdy@wsgr.com

- **Boris Feldman**
  bbahns@wsgr.com

- **Christine M. Fox**
  cfox@labaton.com,lmehringer@labaton.com,electroniccasefilings@labaton.com,fmalonzo@labaton.com

- **Jonathan Gardner**
  jgardner@labaton.com,jjohnson@labaton.com,cvillegas@labaton.com,tdubbs@labaton.com,lmehringer@labaton.com,acoquin@labaton.com,fmalonzo@labaton.com,acarpio@labaton.com

- **Lionel Z. Glancy**
  info@glancylaw.com,lboyarsky@glancylaw.com,lglancy@glancylaw.com

- **Michael M. Goldberg**
  mmgoldberg@glancylaw.com,csadler@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.com

- **Joseph P. Guglielmo**
  jguglielmo@scott-scott.com

- **Christopher T. Heffelfinger**
  cheffelfinger@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Kathleen Ann Herkenhoff**
  kah@weiserlawfirm.com,jmf@weiserlawfirm.com,hl@weiserlawfirm.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,peterb@hbsslaw.com,pashad@hbsslaw.com,sf_filings@hbsslaw.com

- **Nicole Catherine Lavallee**
  nlavallee@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Robert Alan Meyer**
  rmeyer@loeb.com,ptaylor@loeb.com

- **Donald Anthony Miller**
  dmiller@loeb.com,vmanssourian@loeb.com

- **Matthew C Moehlman**
  mmoehlman@labaton.com

- **Christopher Leigh Nelson**
  cln@weiserlawfirm.com

- **John D. Pernick**
  john.pernick@bingham.com

- **Anthony David Phillips**
  aphillips@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Joseph Mark Profy**
  jmp@weiserlawfirm.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,mmgoldberg@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Mark Punzalan**
  markp@punzalanlaw.com,office@punzalanlaw.com

- **Brian J. Robbins**
  notice@robbinsarroyo.com

- **Casey Edwards Sadler**
  csadler@glancylaw.com

- **Charlene Sachi Shimada**
  charlene.shimada@bingham.com

- **Evan Jason Smith**
  esmith@brodskv-smith.com

Case3:13-cv-03889-WHO   Document175   Filed11/06/14   Page34 of 34

- **Michael Walter Stocker**
  mstocker@labaton.com,drogers@labaton.com,ElectronicCaseFiling@labaton.com,lmehringer@labaton.com

- **Jon A Tostrud**
  jtostrud@tostrudlaw.com,acarter@tostrudlaw.com

- **Diane Marie Walters**
  dwalters@wsgr.com,vshreve@wsgr.com

- **Lucy Han Wang**
  lucy.wang@bingham.com,andrew.obach@bingham.com

- **Robert Brian Weiser**
  rw@weiserlawfirm.com

- **Wendy Hope Zoberman**
  wzoberman@bermandevalerio.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)