1

THE WEISER LAW FIRM, P.C.
KATHLEEN A. HERKENHOFF (168562)

2

12707 High Bluff Drive, Suite 200

3

San Diego, CA 92130
Telephone:  (858) 794-1441

4

Facsimile:  (858) 794-1450
kah@weiserlawfirm.com

5

Lead Counsel for Plaintiffs

6

[Additional counsel appear on signature page.]

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN FRANCISCO DIVISION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| In re VELTI PLC SECURITIES LITIGATION | )<br>)<br>)<br>) |
| _____ | )<br>) |
| This Document Relates To: | )<br>)<br>) |
| ALL ACTIONS. | )<br>)<br>)<br>) |
| _____ | ) |

Master File No. 3:13-cv-03889-WHO

(Consolidated with Case Nos.
3:13-cv-03954-WHO
3:13-cv-04140-WHO
3:13-cv-04606-WHO
3:14-cv-00372-WHO)

CLASS ACTION

LEAD PLAINTIFF'S NOTICE OF MOTION
AND MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

DATE:        September 21, 2016
TIME:        2:00 p.m.
CTRM:        2, 17th Floor
JUDGE:       The Hon. William H. Orrick

Date Action Filed: 8/22/13

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND OVERVIEW OF SETTLEMENT ...................................2

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY .............................4

III.   PRELIMINARY APPROVAL OF THE PARTIAL SETTLEMENT IS
       WARRANTED ........................................................................................................8

       A.    The Partial Settlement Merits Preliminary Approval .............................8

             1.    Preliminary Approval Standards..................................................8

             2.    The Partial Settlement Resulted from Arm's-Length Negotiations.............9

             3.    The Partial Settlement Has No Obvious Deficiencies and Falls
                   Within the Range for Approval..................................................10

             4.    The Risk, Expense and Complexity of the Action....................11

             5.    The Proceedings Are Sufficiently Advanced to Permit Preliminary
                   Approval of the Partial Settlement.............................................12

       B.    The Proposed Plan of Distribution Should Be Preliminarily Approved...............12

IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE....................13

       A.    The Proposed Partial Settlement Class Meets the Prerequisites for Class
             Certification Under Rule 23....................................................................13

             1.    Numerosity...................................................................................15

             2.    Commonality................................................................................16

             3.    Typicality .....................................................................................17

             4.    Adequacy .....................................................................................18

             5.    Common Questions of Law Predominate and a Class Action Is the
                   Superior Method of Adjudication ..............................................18

       B.    The Proposed Plan and Method for Notice Meets All Requirements...................20

       C.    The Proposed Fee and Expense Award Is Fair and Reasonable ............22

       D.    Proposed Schedule for Final Approval ..................................................23

V.     CONCLUSION....................................................................................................23

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-
cv-03889-WHO

- i -

1

**TABLE OF AUTHORITIES**

2

Page

3

**CASES**

4

*Alfus v. Pyramid Tech. Corp.*,

5
    764 F. Supp. 598 (N.D. Cal. 1991) ........................................................................17

6

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591, 117 S. Ct. 2231 (1997)...................................................................17

7

*Blackie v. Barrack*,

8
    524 F.2d 891 (9th Cir. 1975) .........................................................................14, 16

9

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................9

10

*Churchill Vill., L.L.C. v. GE*,

11
    361 F.3d 566 (9th Cir. 2004) .................................................................................11

12

*Class Plaintiffs v. City of Seattle*,

13
    955 F.2d 1268 (9th Cir. 1992) ................................................................................8

14

*CLRB Hanson Indus., LLC v. Google*,

15
    05-03649-JW, slip op. (N.D. Cal. Sept. 14, 2009)................................................22

16

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
    258 F.R.D. 545 (N.DHanl Ga. 2007).......................................................................1

17

*Danis v. USN Commc'n, Inc.*,

18
    189 F.R.D. 391 (N.D. III. 1999) ...........................................................................17

19

*Erica P. John Fund, Inc. v. Halliburton Co.*,

20
    131 S. Ct. 2179 (2011)...........................................................................................18

21

*Gittin v. KCI USA, Inc.*,
    No. 09-CV-0583 RS, 2011 WL 1467360 (N.D. Cal. Apr. 12, 2011) ....................20

22

*Hanlon v. Chrysler Corp.*,

23
    150 F.3d 1011 (9th Cir. 1998) ....................................................................8,13,18

24

*Hanon v. Dataproducts Corp.*,
    976 F. 2d 497 (9th Cir. 1992) ...............................................................................17

25

*Harris v. Palm Springs Alpine Estates, Inc.*,

26
    329 F. 2d 909 (9th Cir. 1964) ...............................................................................15

27

*Hodges v. Akeena Solar Inc.*,

28
    274 F.R.D 259 (N.D. Cal. 2011)...............................................................14, 15, 18

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-
cv-03889-WHO

- ii

1

2                                                                                        **Page**

3

*In re Adobe Sys., Inc. Sec. Litig.*,
  139 F.R.D. 150 (N.D. Cal. 1991) ..........................................................................14

*In re AT & T Mobility Wireless Data Services Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) ……………………………………………… 21

*In re Cisco Systems Inc. Sec. Litig.*,
  No. C-01-20418-JW(PVT), slip op. (N.D. Cal. Dec. 5, 2006)  .............................23

*In re Cooper Companies Inc. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009) ...........................................................14, 18, 20

*In re Diet Drugs*,
  Nos. 1203, 99-20593, 2000 WL 1222042, (E.D. Pa. Aug. 28, 2000)…………………………..19

*In re Emulex Corp., Sec. Litig.*,
  210 F.R.D. 287 (C.D. Cal. 2002) ...........................................................................17

*In re Emulex Corp., Sec. Litig.*,
   210 F.R.D. 717 (C.D. Cal.  2002)………………………………………………….....16, 20

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
  No. MDL 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) .................................9

*In re Initial Pub. Offering Sec. Litig.*,
  226 F.R.D. 186 (S.D.N.Y. 2005)……………………………………………………19

*In re Initial Pub. Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009) ..........................................................…...19

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
  204 F.R.D. 330 (N.D. Ohio 2001) .........................................................................19

*In re LDK Solar Sec. Litig.*,
  255 F.R.D. 519 (N.D. Cal. 2009).....................................................................18, 20

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .................................................................................11

*In re OmniVision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................9

*In re Oracle Sec. Litig.*,
  C-90-0931, 1994 WL 502054-VRW (N.D. Cal. Jun. 18, 1994).............................13

**Page**

*In re Seagate Tech. II Sec. Litig.*,
    843 F. Supp. 1341 (N.D. Cal. 1994) ....................................................................14

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................................................9

*In re UTStarcom, Inc. Sec. Litig.*,
    No. C006- 4908, 2010 WL 1945737 (N.D. Cal. May 12, 2010) ....................13, 15, 16, 17, 20

*In re VeriSign, Inc. Sec. Litig.*,
    No. C 02-02270-JW, 2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005)................16,17

*In re Wireless Facilities, Inc. Sec. Litig. II*,
    No. 07CV482, 2008 WL 4146126 (S.D. Cal. Sept. 3, 2008) ...................................9

*Knight v. Red Door Salons, Inc.*,
    No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .........................................10,11

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F. 2d 507 (9th Cir. 1978) ..............................................................................18

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ..............................................................................8

*Munoz v. UPS Ground Freight, Inc.*,
    No. 07-00970 MHP, 2009 WL 1626376 (N.D. Cal. June 9, 2009) ........................................22

*Murillo v. Pac. Gas & Elec. Co.*,
    266 F.R.D. 468 (E.D. Cal. 2010) ..........................................................................19

*O'Keefe v. Mercedes-Benz USA, LLC*,
    214 F.R.D. 266 (E.D. Pa. 2003)............................................................................19

*Ofcrs. for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ................................................................................10

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ................................................................................22

*Perez-Funez v. Dist. Director, Immigration & Naturalization Serv.*,
    611 F. Supp. 990 (C.D. Cal. 1984) .......................................................................15

*Ramirez v. DeCoster*,
    203 F.R.D. 30 (D. Me. 2001) ...............................................................................19

1

2                                                                                    **Page**

3

*Rosenburg v. IBM*,
4      No. CV06-00430PJH, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007)..................................8, 13

5   *Satchell v. Fed. Express Corp.*,
6      No. C03-2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)............................................ 9

7   *Schleicher v. Wendt*,
       618 F.3d 679 (7th Cir. 2010) ..........................................................................................20

8
    *Schwartz v. Harp*,
9      108 F.R.D. 279 (C.D. Cal. 1985) ....................................................................................15

10  *Six Mexican Workers v. Az. Citrus Growers*,
11     904 F.2d 1301 (9th Cir. 1990) .........................................................................................22

12  *Sullivan v. Chase Inv. Servs., Inc.*,
       79 F.R.D. 246 (N.D. Cal. 1978).......................................................................................15

13
    *Torrisi v. Tucson Elec. Power*,
14     8 F.3d 1370 (9th Cir. 1993) .............................................................................................22

15  *Vathana v. EverBank*,
16     No. C 09-02338 RS, 2010 WL 934219 (N.D. Cal. Mar. 15, 2010).......................................18

17  *Vizcaino v. Microsoft Corp.*,
       290 F.3d 1043 (9th Cir. 2002) ......................................................................................... 22

18
    *Wahl v. Am. Sec. Ins. Co.*,
19     No. C08-00555-RS, 2011 U.S. Dist. LEXIS 59559 (N.D. Cal. Jun. 2, 2011)........................20

20  *Wehner v. Syntex Corp.*,
21     715 F.R.D. 641 (N.D. Cal. 1987)......................................................................................16

22  *Welling v. Alexy*,
       155 F.R.D. 654 (N.D. Cal. 1994)......................................................................................15

23
    *West v. Circle K Stores, Inc.*,
24     No. S-04-0438 WBS GGH, 2006 WL 1652598 .....................................................8, 9, 17, 21

25  *Yamner v. Boich*,
       No. C-92 - 20597 RPA, 1994 WL 514035 (N.D. Cal. Sept. 15, 1994) ..................................15

26
    *Ybarrondo v. NCO Fin. Sys., Inc.*,
27     No. 05cv 2057-L(JMA), 2009 WL 3612864 (S.D. Cal. Oct. 28, 2009) ................................19

28
    LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
    SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-
    cv-03889-WHO                                                                          - v

**Page**

*Young v. Polo Retail, LLC*,
   No. C-02-4546 VRW, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ....................................8

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78j(b) ...........................................................................................................................4
   §78t(a) of the Exchange Act ......................................................................................4, 7
   §77k ...........................................................................................................5, 7, 18
   §77o ...........................................................................................................5, 7
   §77l .......................................................................................................3, 6, 7

Federal Rules of Civil Procedure
   Rule 23 ........................................................................................................ *passim*
   Rule 23(a) ...........................................................................................13, 18
   Rule 23(a)(1) ...........................................................................................15
   Rule 23(a)(2) ...........................................................................................16
   Rule 23 (a)(3) ...........................................................................................17
   Rule 23(a)(4) ...........................................................................................18
   Rule 23(b) ...........................................................................................13
   Rule 23(b)(3) ........................................................................................ *passim*
   Rule 23(c)(2)(B) ...........................................................................................20
   Rule 23(e) ...........................................................................................8

17 C.F.R.
   §240.10b-5 ...........................................................................................4

**SECONDARY AUTHORITIES**

Manual for Complex Litigation, Second (1985)
   §30.44 ...........................................................................................8

Newberg on Class Actions, (1992)
   §11.25 ...........................................................................................8

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 21, 2016, at 2:00 p.m., or as soon thereafter as the matter may be heard, Lead Plaintiff Bobby Yadegar/Ygar Capital LLC (the "Lead Plaintiff"), will, and hereby does, move the Honorable William H. Orrick, located in Courtroom 2, 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94101, for an order: (1) granting preliminary approval of the proposed $750,000 settlement (the "Settlement") documented within the July 28, 2016 Stipulation and Agreement of Settlement with Remaining Defendants and exhibits thereto (collectively the "Stipulation" or the "Settlement Agreement")[1], entered between the Settling Parties to the above-captioned consolidated securities class action (the "Action")[2]; (2) preliminarily certifying the Settlement Class, appointing Plaintiffs as representatives for the Settlement Class (the "Class Representatives"), and appointing Lead Counsel as counsel for the Settlement Class ("Class Counsel"); (3) approving the form and manner of giving notice of the proposed Settlement to the Settlement Class[3]; (4) preliminarily approving the Amended Plan of Distribution; and (5) setting a hearing date for final approval thereof (the "Settlement Hearing") and a schedule for various deadlines relevant thereto (the "Notice Order").

---

[1]   All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation.  A true and correct copy of the Stipulation is attached as Exhibit 1 to the Declaration of Christopher L. Nelson in Support of Lead Plaintiff's Motion for Preliminary Approval 1 Settlement (the "Nelson Decl.").   Unless otherwise stated, all citations herein to "¶__" are to paragraphs of the Consolidated Complaint for Violations of the Securities Act of 1933 and the Securities and Exchange Act of 1934 (the "Complaint"), ECF Dkt. No. 105 in 3-13-cv-03889-WHO (the "Lead Action").  Unless otherwise stated herein, all citations to "ECF Dkt. No. ___" are to docket entries in the Lead Action.

[2]   As defined in the Stipulation, the Settling Parties include: the Lead Plaintiff, Plaintiff St. Paul Teachers' Retirement Fund Association, Plaintiff Newport News Employees' Retirement Fund, Plaintiff Oklahoma Firefighters Pension and Retirement System (collectively the "Plaintiffs") and Jefferies LLC (f/k/a Jefferies and Company, Inc.), RBC Capital Markets, LLC, Needham & Company, LLC and Canaccord Genuity Inc. (the "Underwriter Defendants") and Baker Tilly Virchow Krause LLP ("Baker Tilly" and collectively with the Underwriter Defendants, the "Settling Defendants" or "Remaining Defendants").

[3]   As set forth in Exhibits A-1, A-3 and A-4, respectively, to the Stipulation, the Settlement Agreement provides for a Postcard Notice, a Summary Notice and a Notice of Pendency and Proposed Partial Settlement of Class Action (collectively the "Notices").

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03889-WHO

- 1 -

As demonstrated herein, the proposed Settlement is a good result for the Settlement Class under the circumstances, is fair, reasonable and adequate under the governing standards within the Ninth Circuit, and warrants approval of this Court.  In support of this Motion, Lead Plaintiff submits herewith a Memorandum of Points and Authorities, the Nelson Decl. and exhibits thereto, and the proposed Notice Order (*i.e.*, the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice).

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the $750,000 Settlement should be preliminarily approved by this Court as within the range of fairness, reasonableness and adequacy?

2.      Whether the proposed Settlement Class should be preliminarily certified, the Plaintiffs appointed as Class Representatives, and Lead Counsel appointed as Class Counsel?

3.      Whether the Notices adequately apprise Settlement Class Members about the terms of the Settlement and their rights with respect to it?

4.      Whether the proposed Amended Plan of Distribution should be preliminarily approved?

5.      Whether a date for a Settlement Hearing (*i.e.* including a hearing date for the Fee and Expense Application) should be set?

## MEMORANDUM

## I.      INTRODUCTION AND OVERVIEW OF SETTLEMENT

Lead Plaintiff respectfully submits this memorandum in support of its Motion for Preliminary Approval of Settlement (the "Motion").  The proposed Settlement, as embodied within the Stipulation, provides a recovery of $750,000 in cash to fully resolve the outstanding claims in this Action as to the Remaining Defendants, which in combination with the previous settlement against the Company and certain of its former directors and officers (the "Velti Defendants") (the partial settlement with Velti Defendants is referred to herein as the "Partial Settlement") totals $10.25 million.

1    The Settlement, as detailed herein, is the product of extensive investigation of the

2 relevant claims asserted in the Action, and follows the filing of three complex and detailed

3 complaints by the Lead Plaintiff in their efforts to plead and prosecute claims against the

4 Remaining Defendants pursuant to Sections 11 and 12 of the Securities Act of 1933 (the

5 "Securities Act") (15 U.S.C. §77a) in connection with the Company's January 28, 2011 initial

6 public offering (the "IPO") and the Company's June 14, 2011 secondary public offering (the

7 "SPO"); and the Securities Act of 1933 and the Securities Exchange Act of 1934.  During the

8 course of such investigation and litigation efforts, Lead Plaintiff engaged in extensive

9 discussions and negotiations with the Remaining Defendants, in the interest of securing a sound,

10 well-considered recovery for the Settlement Class.[4]

11    As a result of the foregoing, Lead Plaintiff has secured an additional Settlement Fund of

12 $750,000 to finally resolve the Action.  *See* Nelson Decl., Ex. 1.  Although the Settlement

13 amount is not large, when balanced against the very substantial risks here, it is a favorable result.

14 Here, this Court has dismissed all of the claims against the Remaining Defendants (even though

15 Plaintiffs had the unique benefit of some discovery and cooperation from the Velti Defendants

16 pursuant to the Partial Settlement with them in drafting their complaints against the Remaining

17 Defendants).  Thus, Plaintiffs would need to be successful on appeal of that decision in order to

18 have any chance of even moving their claims forward.  And even if Plaintiffs were successful on

19 appeal, there would still be substantial risks as to the ultimate success of their claims.

20 Additionally, this Court's final judgment order as to the claims against the Velti Defendants

21 expressly provides for a judgment reduction for claims against the Remaining Defendants.  *See*

22 February 3, 2015 Final Judgment and Dismissal with Prejudice ("Partial Sett. Final Judgment") at

23 ¶14.

24

25

---

26

[4]    The Settlement Class means all Persons, save those expressly exempted as set forth in the Stipulation, who purchased or otherwise acquired the Shares of Velti between January 27, 2011 and August 20, 2013, inclusive.  While the definition of the Settlement Class represents a simplified characterization of the Class alleged in the Complaint, membership is identical between the two.

27

28

1    As detailed herein, Lead Plaintiff submits that the Settlement amply warrants preliminary

2    approval.

3    **II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY**

4        Between August 22, 2013 and September 6, 2013, three related securities class actions

5    (the "First Three Related Actions") were filed in this District against Velti and the Individual

6    Defendants on behalf of all persons who purchased Velti shares during the period January 27,

7    2011 and August 20, 2013 (the "Class Period").   The First Three Related Actions alleged

8    violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

9    Act"), as amended by the PSLRA (15 U.S.C. §§78j(b) and 78t), and Rule 10b-5 promulgated

10   thereunder (17 C.F.R. §240.10b-5).

11       The First Three Related Actions were filed following the August 21, 2013 announcement

12   by the Company of its 2013 fiscal second quarter financial results, wherein it was revealed that

13   the Company had made the decision to write-down approximately $111 million to its trade

14   receivables and accrued contract receivables relating to its enterprise business.  ¶15.  A "major

15   restructuring" of Velti's business was also announced.  *Id.*  In response to this news, shares of

16   Velti declined $0.66 per share, or more than 66%, to close on August 21, 2013, at $0.34 per

17   share, on heavy trading volume.   *Id.*   The First Three Related Actions, consistent with the

18   allegations in the current Complaint, allege that throughout the proposed Class Period, certain of

19   the Velti Defendants, among other things, made materially false and/or misleading statements, as

20   well as failed to disclose material adverse facts about Velti's financial statements and reported

21   financial results.   *Id.* at ¶17.   Specifically, the First Three Related Actions alleged that

22   Defendants made false and/or misleading statements and/or failed to disclose, *inter alia*: (1) that

23   the Company was having difficulties collecting certain receivables; (2) that certain of the

24   Company's receivables were uncollectible; (3) that, as a result, the Company's revenues and

25   receivables were overstated during the proposed Class Period; (4) that the Company lacked

26   adequate internal and financial controls; and (5) that, as a result of the foregoing, the Company's

27   statements and reported financial results were materially false and misleading.  *Id.*

28

1    On October 4, 2013, a fourth related securities class action (the "Fourth Action") was

2  also filed in this District.  The Fourth Action included substantially the same factual claims and

3  counts filed in the First Three Related Actions,[5] but also alleged violations of Sections 11 and 15

4  of the Securities Act of 1933 (the "Securities Act") (15 U.S.C. §§77k and 77o) on behalf of

5  persons or entities who purchased or otherwise acquired Velti shares pursuant and/or traceable to

6  the IPO and SPO and added the Underwriter Defendants as defendants.  Baker Tilly was not

7  named as a defendant in any of the Initial Related Complaints.

8    On October 21, 2013, Lead Plaintiff filed one of several competing motions seeking

9  consolidation of the Initial Related Actions (and any subsequently filed actions related thereto),

10  appointment as Lead Plaintiff and appointment of Lead Counsel pursuant to the Private

11  Securities Litigation Reform Act of 1995 (the "PSLRA").  ECF Dkt. No. 44.

12    On December 3, 2013, following briefing and oral argument (held November 27, 2013),

13  the Court entered an Order Granting Motion to Consolidate and Appoint Lead Plaintiff (the

14  "Lead Order") ECF Dkt. No. 80, which appointed the aforementioned Lead Plaintiff and its

15  choice of counsel, The Weiser Law Firm, P.C. (the "Weiser Firm"), as Lead Counsel.  On

16  December 3, 2013, the Court also entered an Order Consolidating Cases and Setting Case

17  Management Deadlines (the "Consolidation Order"), therein consolidating the Initial Related

18  Actions, and providing a mechanism for the consolidation of additional related actions filed at a

19  subsequent time.[6]  ECF Dkt. No. 81.

20    On December 13, 2013, pursuant to the Consolidation Order, Lead Plaintiff filed a

21  Stipulation and [Proposed] Order Setting Schedule for Filing of Consolidated Complaint and

22

23  _____

24  [5]    The First Three Related Actions and the Fourth Action are referred to herein as the "Initial Related Actions."

25  [6]    Pursuant to the Consolidation Order, the following five securities class actions have been
26  consolidated: (1) *Rieckborn v. Velti plc, et al.*, No. 3:13-cv-03889-WHO (filed Aug. 22, 2013);
and (2) *Vafinis v. Velti plc, et al.*, No. 4:13-cv-03954-WHO (filed Aug. 26, 2013); (3) *Lee v.
27  Velti plc, et al.*, No. 3:13-cv-04140-WHO (filed Sept. 6, 2013); (4) *Manabat v. Velti plc, et al.*,
No. 3:13-cv-04606-JSC (filed Oct. 4, 2013); and (5) *Yadegar v. Velti plc*, No. 3:14-cv-00372-
WHO (filed January 24, 2014) (the "Yadegar/Ygar Capital LLC Action").

28

1  Related Matters (the "Initial Scheduling Stipulation"), which was entered as an order of the

2  Court on December 26, 2013. *See* ECF Dkt. No. 89.

3          On January 24, 2014, as detailed above, the Yadegar/Ygar Capital LLC Action was filed,

4  and was later consolidated with, and into, the Action. The Yadegar/Ygar Capital LLC Action

5  was filed proactively to preserve certain claims as to Baker Tilly (not named in the Initial

6  Related Actions), and claims pursuant to Section 12 of the Securities Act (15 U.S.C. §77(a)) in

7  connection with the IPO and SPO. While continuing to protect the Settlement Class at every

8  step of the litigation already underway, Lead Plaintiff also began a dialogue with Velti

9  concerning possible resolution of the Action, particularly in view of the Velti U.S. Bankruptcy

10  and diminishing insurance funds.

11          Accordingly, on March 14, 2014, counsel for Plaintiffs, Velti, and certain of the

12  Individual Defendants participated in an in-person mediation (the "Mediation") before the

13  Honorable Layn R. Phillips (the "Mediator"). The Settling Parties engaged in substantial

14  preparation for the Mediation. While a settlement of the Action was not reached at the

15  Mediation, the Settling Parties continued their ongoing dialogue with the Mediator and with each

16  other.

17          On April 22, 2014, Lead Plaintiff filed a 130 page, consolidated complaint in the Action.

18  *See* ECF Dkt. No. 105. After the Complaint was filed, Plaintiffs reached an agreement with the

19  Velti Defendants and entered into the Partial Settlement which contained an agreement that the

20  defendants to the Partial Settlement would provide voluntary disclosures and confirmatory

21  discovery to Lead Plaintiff including cooperating with Lead Plaintiff in providing information

22  reasonably necessary for the then-ongoing litigation of its claims against the Remaining

23  Defendants. Furthermore, here, the Final Judgment Order as to the claims against the Velti

24  Defendants pursuant to the Partial Settlement expressly provides for a judgment reduction for

25  any verdict arising from the claims against the Remaining Defendants. *See* Partial Sett. Final

26  Judgment. Specifically, it states, "[a]ny final verdict or judgment obtained by or on behalf of

27  Plaintiffs or the Settlement Class against any Person, other than the Released Persons, relating to

28

1    the Released Claims, shall be reduced by the greater of (i) an amount that corresponds to the

2    percentage of responsibility of the Released Persons [in the Partial Settlement], or (ii) the amount

3    paid on behalf of the Released Persons in the Partial Settlement." *Id*.

4         Plaintiffs filed an Amended Consolidated Complaint on August 12, 2014 which included

5    information and discovery provided to Plaintiffs pursuant to the Partial Settlement.   The

6    Amended Consolidated Complaint alleged violations of Section 11 of the Securities Act of 1933

7    (the "Securities Act") against the Underwriter Defendants and Baker Tilly, violations of Section

8    12(a)(2) of the Securities Act against the Underwriter Defendants and violations of Section 10(b)

9    of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 against Baker

10   Tilly.   On October 15, 2014 the Underwriter Defendants and Baker Tilly moved to dismiss the

11   Amended Consolidated Complaint.   After oral argument was held on February 18, 2015, the

12   Court granted the Underwriter Defendants' and Baker Tilly's motions to dismiss and granted

13   Plaintiffs leave to amend the Consolidated Complaint.

14        Plaintiffs filed the Second Amended Consolidated Complaint on April 13, 2015, which

15   the Underwriter Defendants and Baker Tilly moved to dismiss on May 18, 2015.   After hearing

16   oral argument on September 11, 2015, the Court granted the Underwriter Defendants' and Baker

17   Tilly's motions to dismiss the Second Amended Consolidated Complaint on October 1, 2015

18   finding, *inter alia*, that Plaintiffs failed to adequately allege a material misstatement or omission

19   and failed to adequately allege scienter and that the plaintiffs who sought to establish standing

20   under Section 11 have loss causation and other threshold problems.

21        Plaintiffs filed a notice of appeal to the Ninth Circuit on December 1, 2015.   Thereafter,

22   the parties engaged in settlement discussions and on or about February 29, 2016, the Settling

23   Parties agreed to a settlement in principle of the outstanding claims against the Underwriter

24   Defendants and Baker Tilly.   On March 23, 2016, the Settling Parties submitted a stipulation to

25   the Ninth Circuit voluntarily dismissing the appeal without prejudice in order to present the

26   Settlement to the Court.   The stipulation was entered by the Ninth Circuit on April 4, 2016.

27

28

1    Reached by experienced litigators and only after a comprehensive investigation at the

2    direction of Lead Counsel, the proposed Settlement was the result of fully informed, and arms'-

3    length negotiations.  For the reasons stated herein, Lead Plaintiff respectfully requests that the

4    Court grant its motion for preliminary approval of the Settlement.

5    **III.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED**

6          **A.    The Settlement Merits Preliminary Approval**

7                **1.    Preliminary Approval Standards**

8    Rule 23(e) of the Federal Rules of Civil Procedure requires Court approval for a class

9    action settlement.  The Ninth Circuit maintains a "strong judicial policy that favors settlements,

10   particularly where complex class action litigation is concerned."   *Class Plaintiffs v. City of*

11   *Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234,

12   1238 (9th Cir. 1998); *West v. Circle K Stores, Inc.*, No. S-04-0438 WBS GGH, 2006 WL

13   1652598, at *1 (E.D. Cal. June 13, 2006 ("*West*").   Approval of a proposed class action

14   settlement is within the broad authority of the district court consistent with this long-standing

15   policy favoring settlements.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).

16   The class action settlement approval process involves two steps:   first, preliminary approval,

17   followed by notice to the class, and then final approval.  *See, e.g.*, *West*, 2006 WL 1652598, at

18   *2.  The test for whether preliminary approval should be granted has both a procedural and a

19   substantive component.  The court in *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006

20   WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006) (quoting from NEWBERG ON CLASS

21   ACTIONS, §11.25 (1992) explained the procedure as follows:

> If the proposed settlement appears to be the product of serious, informed, non-
> collusive negotiations, has no obvious deficiencies, does not improperly grant
> preferential treatment to class representatives or segments of the class, and falls
> within the range of possible approval, then the court should direct that the notice
> be given to the class members of a formal fairness hearing. . . .MANUAL FOR
> COMPLEX LITIGATION, Second §30.44 (1985).  In addition, '[t]he court may
> find that the settlement proposal contains some merit, is within the range of
> reasonableness required for a settlement offer, or is presumptively valid.'
> NEWBERG ON CLASS ACTIONS §§11.25 (1992).

22

23

24

25

26

27

28

1 | *See also Rosenburg v. IBM*, No. CV06-00430PJH, 2007 WL 128232, at *5 (N.D. Cal. Jan. 11,
2 | 2007) (preliminary approval granted where "Settlement has no obvious defects and is within the
3 | ranges of possible Settlement approval such that notice to the Class is appropriate"); *Satchell v.*
4 | *Fed. Express Corp.*, No. C03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)
5 | (preliminarily approving non-collusive settlement that had no obvious defects and was within the
6 | range of fairness).

7 | **2.      The Settlement Resulted from Arm's-Length Negotiations**

8 |        There is an initial presumption of fairness for a proposed settlement that results from
9 | arm's-length negotiations. *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal.
10 | 2008); *In re Wireless Facilities, Inc. Sec. Litig. II*, No. 07CV482, 2008 WL 4146126, at *3 (S.D.
11 | Cal. Sept. 3, 2008).  Here, the proposed settlement is the product of arm's-length negotiations
12 | over a several-month period between Lead Plaintiff, through Lead Counsel, and the Settling
13 | Defendants, through their counsel.

14 |        The settlement negotiations undertaken in connection with the Settlement, produced a
15 | result that the Settling Parties believe to be within their respective best interests.  Indeed, the
16 | opinion of well-informed and experienced counsel in favor of the Settlement is also entitled to
17 | significant weight.  *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D.
18 | Cal. 2007); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL 901, 1992 WL
19 | 226321, at *2 (C.D. Cal. June 10, 1992) (counsel's opinion favoring settlement is a compelling
20 | factor); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).  Lead Plaintiff and Lead
21 | Counsel consider their claims meritorious, but not without substantial risk.  They have concluded
22 | that it is in the best interests of the Settlement Class to settle with the Remaining Defendants
23 | after considering the following factors: (1) the immediate benefits provided for the Settlement
24 | Class; (2) the risks and uncertainties in predicting the outcome of the Appeal, particularly in light
25 | of the proceedings to date; and (3) the expense and length of time necessary to prosecute the
26 | Action through appeal and, if successful, through discovery and trial.

27 |
28 |

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-
cv-03889-WHO                                                                                    - 9 -

1

2

### 3.     The Settlement Has No Obvious Deficiencies and Falls Within the Range for Approval

3

"[A]t this preliminary approval stage, the court need only 'determine whether the

4

proposed settlement is within the range of possible approval.'"  *West*, 2006 WL 1652598, at *11

5

(citation omitted); J. Moore, et al., MOORE'S FED. PRAC., ¶23.8102-1, at 23-479 (2d ed.

6

1993).  Under this Settlement, the Remaining Defendants will pay $750,000.

7

After several unsuccessful attempts to move the Action beyond the pleading stage, and

8

with the benefit of discovery and cooperation from the Settling Defendants to the Partial

9

Settlement, Plaintiffs' lone opportunity for advancing the Action was the Appeal.  It was against

10

this backdrop that Plaintiffs agreed to the Settlement, which ensures an additional recovery for

11

the Settlement Class Members beyond the benefit of the Partial Settlement.   *See also Ofcrs. for*

12

*Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)

13

("It is well-settled law that a cash settlement amounting to only a fraction of the potential

14

recovery will not *per se* render the settlement inadequate or unfair").  *See also Knight v. Red*

15

*Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *3 (N.D. Cal. Feb. 2, 2009) ("The

16

immediacy and certainty of the settlement award justifies a recovery smaller than the Class

17

Members could seek in the case").

18

Total damages in the Action, as calculated by Plaintiffs' consulting expert, are most

19

conservatively estimated at approximately $34 million, and could range as high as $287 million.

20

*See* Mulholland Decl. at ¶6 (discussing varying scenarios for damages).   As detailed in

21

Plaintiffs' Supplemental Memorandum in Support of Preliminary Approval of Partial

22

Settlement ("Suppl. Memo."), Plaintiffs believe that there were four partial curative disclosures

23

that led to drops in Velti's stock price and should be used to calculate damages; however, if the

24

Court found that *any* of these partial disclosures was not curative of the fraud, then the damages

25

would fall considerably.  *See* Suppl. Memo. at pp. 2-4.  Moreover, as discussed above, here, any

26

judgment against the Remaining Defendants would be reduced "by the greater of (i) an amount

27

that corresponds to the percentage of responsibility of the Released Persons [in the Partial

28

Settlement], or (ii) the amount paid on behalf of the Released Persons in the Partial Settlement."

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03889-WHO

- 10 -

1    Partial Sett. Final Order at ¶14.  Thus, the Settlement here is within range of possible approval,

2    especially given the very substantial risks here as the claims against the Remaining Defendants

3    have been dismissed (thus, there was a very significant risk of Class Members recovering

4    nothing from the Remaining Defendants), and that the combined recovery for the Class from

5    both settlement totals $10.25 million.   *See also* L.T. Bulan, E.M. Ryan, L.E. Simmons,

6    *Securities Class Action Settlements, 2014 Review and Analysis*, Cornerstone Research (2015), at

7    8,  http://securities.stanford.edu/research-reports/1996-2014/Settlements-Through-12-2014.pdf)

8    (stating that securities class action settlements in both 2013 and 2014 recovered a median of

9    2.2% of plaintiffs' estimated damages, which actually an increase from a median recovery of

10   2.1% in 2011 and 1.8% in 2012).

11                   **4.        The Risk, Expense and Complexity of the Action**

12           The fairness of the Settlement is further underscored when the obstacles the Settlement

13   Class faced in succeeding on the merits, as well as the expense and likely duration of the

14   litigation, are considered.  *See Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004).

15   Although Lead Plaintiff believes its claims are meritorious, before being able to even prosecute

16   the substantive aspects of their claims, they would first have to convince the Ninth Circuit to

17   reverse this Court's decision dismissing the case, a daunting obstacle for sure.  There is also a

18   substantial risk that – even if Plaintiffs prevailed on appeal – that Defendants would prevail on

19   later motions for judgment on the pleadings, at summary judgment, or ultimately at trial.  The

20   Settlement will confer an immediate benefit to the Settlement Class and eliminate the risk of

21   continued litigation as to the Remaining Defendants under circumstances where a favorable

22   outcome is uncertain.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)

23   (affirming approval of settlement because "[c]omplex litigation is inherently uncertain and

24   Plaintiffs would have had much difficulty proving scienter"); *see also Knight*, 2009 WL 248367,

25   at *3 (acknowledging that the settlement agreement offered an immediate and certain award for

26   the Class was a superior alternative to continued litigation in light of the uncertain risks

27   associated with plaintiffs' claims).

28

### 5. The Proceedings Are Sufficiently Advanced to Permit Preliminary Approval of the Settlement

Lead Plaintiff, through Lead Counsel, is thoroughly familiar with the factual and legal issues in this case. *See* ECF Dkt. Nos. 44, 65. Lead Plaintiff filed three complaints, after extensive investigation and research, including discovery and cooperation from the Velti Defendants which included interviews with and documents from the Company's officers and directors who were part of the Partial Settlement. As a result, Lead Counsel is thoroughly familiar with the facts of the case and has had ample opportunity to assess the strengths and weaknesses of the claims in which to appraise the sufficiency of the Settlement.

### B. The Proposed Amended Plan of Distribution Should Be Preliminarily Approved

After the Court approved the disbursement of funds from the Partial Settlement (ECF No. 232), Plaintiffs' Counsel located a computantional error in the original Plan of Distribution as devised by the Claims Administrator. *See* Declaration of Paul Mulholland (the "Mulholland Decl."), attached to the Nelson Decl. as Exhibit 2. The error was in the method of calculating Recognized Loss in the original Plan of Distribution specifically related to the inflation per share for common stock purchased and sold within the Class Period. *Id*. at ¶3. The original Plan of Distribution in the Partial Settlement incorrectly computed Recognized Loss as the inflation per share upon sale only versus the correct method of the difference in the inflation per share upon purchase and inflation per share upon sale. *Id*. The error has been corrected, and Plaintiffs request that the Amended Plan of Distribution be approved to be used to disburse funds in the both the Partial Settlement and the Settlement.[7]

The proposed Amended Plan of Distribution will govern how the settlement proceeds will be distributed among Settlement Class Members who timely file a Claim Form. Notably, because the Settlement contains the same Settlement Class Members as the Partial Settlement – Settlement Class Members who submitted a Claim Form pursuant to the Partial Settlement *will*

---

[7] A Notice of Error and Request to Modify the Court's Distribution Order requesting that the Amended Plain of Distribution be approved for the Partial Settlement is being submitted to the Court simultaneously herewith.

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03889-WHO

- 12

1    *not need to re-submit a Claim Form*.  The claim information for the Partial Settlement will

2    automatically be carried over for use for a claim for the Settlement unless a Settlement Class

3    Member who previously submitted a claim for the Partial Settlement opts out of this Settlement.

4         A plan of distribution will be preliminarily approved so long as "the proposed plan is

5    rationally related to the relative strengths and weaknesses of the respective claims asserted."

6    *Rosenburg*, 2007 WL 128232, at *5.  *See also In re Oracle Sec. Litig.*, C-90-0931-VRW, 1994

7    WL 502054, at *1 (N.D. Cal. Jun. 18, 1994) (reasonable to allocate more to class members with

8    stronger claims).  The proposed Amended Plan of Distribution was prepared by Lead Counsel in

9    consultation with its experts and its proposed settlement administrator, Strategic Claims

10   Services, who found it to be fair and equitable.  *See* Mulholland Decl. at ¶5.

11        The structure of the Amended Plan of Distribution, which is set forth in full in the Notice

12   and attached as an exhibit to the Mulholland Decl., is comparable to plans of distribution that

13   have been used in numerous securities class actions.   The Amended Plan of Distribution

14   allocates the Net Settlement Fund based on Lead Counsel's estimate (after consultation with its

15   experts and settlement administrator) of the amounts by which Lead Plaintiff alleges the market

16   price of the Velti shares were artificially inflated during the Class Period, and takes into

17   consideration when an Authorized Claimant purchased his/her/its Velti shares and, if the

18   claimant sold the Shares, when the Shares were sold. Plaintiffs submit that the Plan is fair and

19   reasonable and should be approved together with the Settlement.

20   **IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE**

21        **A.    The Proposed Settlement Class Meets the Prerequisites for Class
              Certification Under Rule 23**

22

23        The Ninth Circuit has long recognized that class actions may be certified for the purpose

24   of settlement only.  *Hanlon*, 150 F.3d 1019.   Rule 23(a) sets forth the following four

25   prerequisites to class certification: (i) numerosity, (ii) commonality, (iii) typicality, and (iv)

26   adequacy of representation.  In addition, the class must meet one of the three requirements of

27   Rule 23(b).  *See* Fed. R. Civ. P. 23; *In re UTStarcom, Inc. Sec. Litig.*, No. C006- 4908, 2010 WL

28   1945737, at * 3 (N.D. Cal. May 12, 2010) (citing *Hanlon*, 150 F.3d at 1019).  The Settlement

1    Class is defined as "all Persons . . . who purchased or otherwise acquired the Shares of Velti

2    between January 27, 2011 and August 20, 2013, inclusive."[8]

3         Courts routinely endorse the use of the class action device to resolve claims brought

4    pursuant to the federal securities laws.  *See, e.g.*, *Hodges v. Akeena Solar Inc.*, 274 F.R.D 259,

5    266 (N.D. Cal. 2011); *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal.

6    2009). "[C]lass actions commonly arise in securities fraud cases as the claims of separate

7    investors are often too small to justify individual lawsuits, making class actions the only efficient

8    deterrent against securities fraud.  Accordingly, the Ninth Circuit and courts in this district hold a

9    liberal view of class actions in securities litigation."  *In re Adobe Sys., Inc. Sec. Litig.*, 139

10   F.R.D. 150, 152 (N.D. Cal. 1991) (citations omitted); *see also In re Seagate Tech. II Sec. Litig.*,

11   843 F. Supp. 1341, 1350 (N.D. Cal.  1994) (same); *Cooper*, 254 F.R.D. at 642  ("The availability

12   of the class action to redress such frauds has been consistently upheld, in large part because of

13   the substantial role that the deterrent effect of class actions plays in accomplishing the objectives

14   of the securities laws.") (quoting *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975)).  This

15   Action is no exception, and Lead Plaintiff submits that, just as the Court already found as to the

16   Partial Settlement, the proposed Settlement Class satisfies each of the requirements of Rules

17   23(a) and 23(b)(3).  *See* Partial Sett. Final Judgment at ¶ 4 ("Solely for purposes of this Partial

18   Settlement and for no other purpose, the Court finds that the prerequisites for a class action under

19   Rule 23 of the Federal Rules of Civil Procedure have been satisfied in that: (a) the members of

20   _____

21   [8]      The Settlement Class definition excludes the following: (1) Persons who submit valid and
     timely requests for exclusion from the Settlement Class; and (2) Defendants, members of the

22   immediate family of any Defendant, any person, firm, trust, corporation, officer, director or other
     individual or entity in which any Defendant has or had a controlling interest, the officers and

23   directors of any Defendant, and legal representatives, agents, executors, heirs, successors or
     assigns of any such excluded Person.  *See* Stipulation at ¶1.21.  The Defendants or any entity in

24   which any of the Defendants has or had a controlling interest (for purposes of this paragraph,
     together a "Defendant-Controlled Entity") are excluded from the Settlement Class only to the

25   extent that such Defendant-Controlled Entity itself purchased a proprietary (*i.e.*, for its own
     account) interest in the Company's Shares.  To the extent that a Defendant-Controlled Entity

26   purchased Velti Shares in a fiduciary capacity or otherwise on behalf of any third-party client,
     account, fund, trust, or employee benefit plan that otherwise falls within the Settlement Class,

27   neither such Defendant-Controlled Entity nor the third-party client, account, fund, trust, or
     employee benefit plan shall be excluded from the Settlement Class with respect to such Velti

28   Shares. *Id.*

     LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
     SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-
     cv-03889-WHO
                                                                                          - 14 -

1    the Settlement Class are so numerous that joinder of all Settlement Class Members in the class

2    action is impracticable; (b) there are questions of law and fact common to the Settlement Class

3    that predominate over any individual question; (c) the claims of Plaintiffs are typical of the

4    claims of the Settlement Class; (d) Plaintiffs and Class Counsel have fairly and adequately

5    represented and protected the interests of Settlement Class Members; and (e) a class action is

6    superior to other available methods for the fair and efficient adjudication of the controversy.").

7                     **1.       Numerosity**

8          Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is

9    impracticable.     The Ninth Circuit has stated that "'impracticability' does not mean

10   'impossibility,' but only the difficulty or inconvenience of joining all members of the class."

11   *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F. 2d 909, 913-14 (9th Cir. 1964) (citation

12   omitted).   Indeed, classes consisting of 25 members have been held to be large enough to justify

13   certification.  *See Perez-Funez v. Dist. Director, Immigration & Naturalization Serv.*, 611 F.

14   Supp. 990, 995 (C.D. Cal. 1984); s*ee also Welling v. Alexy*, 155 F.R.D. 654, 656 (N.D. Cal.

15   1994) (no set number cut-off for numerosity).   Additionally, the exact size of the class need not

16   be known so long as general knowledge and common sense indicate that the class is large.  *Id.;*

17   *see also Schwartz v. Harp*, 108 F.R.D. 279, 281-282 (C.D. Cal. 1985) ("A failure to state the

18   exact number in the proposed class does not defeat class certification, and plaintiff's allegations

19   plainly suffice to meet the numerosity  requirement of Rule 23.") (citations omitted).

20         Here, Velti's shares traded on the NASDAQ, with more than 65 million shares of

21   common stock outstanding during the Class Period, and over 3,500 validly accepted claims were

22   received as part of the Partial Settlement.  *See* Nelson Decl., Ex. D; ECF No. 229.  Accordingly,

23   the proposed Settlement Class consists of thousands of investors who purchased Velti shares

24   during the Class Period.  *See also Akeena Solar*, 274 F.R.D. at 266 (*citing Sullivan v. Chase Inv.*

25   *Servs., Inc.*, 79 F.R.D. 246, 257 (N.D. Cal. 1978)).  A class of this size is sufficiently numerous

26   to make individual joinder impracticable.  *See UTStarcom*, 2010 WL 1945737, at *4; *Yamner v.*

27

28

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-
cv-03889-WHO                                                                          - 15 -

1    *Boich*, No. C-92 - 20597 RPA, 1994 WL 514035, at *3 (N.D. Cal. Sept. 15, 1994).  Thus, the

2    numerosity element is satisfied.

3                    **2.      Commonality**

4         Rule 23(a)(2) is satisfied where the proposed class representatives share at least one

5    question of fact or law with the claims of the prospective class.  *Wehner v. Syntex Corp.*, 715

6    F.R.D. 641, 644 (N.D. Cal. 1987).  Further, commonality exists even if there are varying fact

7    situations among individual members of the class so long as the claims of the plaintiffs and other

8    class members are based on the same legal or remedial theory.  *Blackie*, 524 F. 2d at 902.

9         The common questions of fact and law include: (i) whether the Remaining Defendants

10   violated the federal securities laws; (ii) whether the Remaining Defendants misstated and/or

11   omitted to state material facts in public statements and filings with the SEC; (iii) whether the

12   Remaining Defendants participated directly or indirectly in the course of misconduct; (iv)

13   whether the Remaining Defendants knew or recklessly disregarded that their statements were

14   false and misleading; (v) whether the price of Velti shares, was artificially inflated; and (vi) the

15   extent of damage sustained by Settlement Class Members, and the appropriate measure of

16   damages.[9]

17        Securities actions containing common questions such as the ones listed above repeatedly

18   have been held to be prime candidates for class certification.  Additionally, because the core

19   complaint of all Settlement Class Members is that they purchased shares of Velti shares at

20   artificially inflated prices, the commonality requirement of Rule 23(a)(2) is satisfied.  *See also*

21   Partial Sett. Final Judgment at ¶ 4.

22   _____

23   [9]      *See also UTStarcom*, 2010 WL 1945737, at *4 (finding common questions of law and
     fact as to whether "Defendants engaged in a fraudulent scheme and omitted or misrepresented
     material facts," whether the "publicly traded securities were artificially inflated," and whether
24   "Defendants' . . . omissions caused class members to suffer economic losses").  Here, there are
     common questions of law and fact because the Remaining Defendants' alleged misconduct
25   affected all Settlement Class Members in the same manner; *i.e.*, the Remaining Defendants' false
     and misleading statements and omissions artificially inflated the price of Velti's Securities.  *See,*
26   *e.g., In re VeriSign, Inc. Sec. Litig.*, No. C 02-02270-JW, 2005 U.S. Dist. LEXIS 10438, at *32
     (N.D. Cal. Jan. 13, 2005) ("Here, the issues common to the class – namely, the nature and extent
27   of Defendants' alleged misrepresentations and the like – are predominant."); *In re Emulex Corp.,*
     *Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal.  2002).

28

1

2
3
4
5
6
7
8
9
10

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

28

### 3.      Typicality

The typicality requirement of Rule 23 (a)(3) is satisfied when the claims or defenses of the party or parties representing the class are typical of the claims or defenses of the other class members.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231 (1997) (common-issues test readily met in securities cases).  Differences in the amount of damage, the size or manner of purchase, the nature of the purchaser, and the date of purchase are insufficient to defeat class certification.  *See Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 606 (N.D. Cal. 1991).  In other words, typicality exists "even where factual distinctions exist between the claims of the named representative and the other class members."  *Danis v. USN Commc'n, Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999); *see also West*, 2006 WL 1652598, at *5.

Here, the claims of Lead Plaintiff arise from the same events or course of conduct that give rise to claims of other Settlement Class Members, and the claims asserted are based on the same legal theories.  *See UTStarcom*, 2010 WL 1945737, at *5 (explaining that the test for typicality is "whether 'other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct'") (quoting *Hanon v. Dataproducts Corp.*, 976 F. 2d 497, 508 (9th Cir. 1992)).   Indeed, this case satisfies the Rule 23(a)(3) typicality requirement because the claims of all Settlement Class Members derive from the same legal theories and allege the same set of operative facts.  Lead Plaintiff, like the other Settlement Class Members, purchased Velti shares in the same manner; *i.e.*, the Remaining Defendants' false and misleading statements and omissions artificially inflated the price of Velti's shares.  *See, e.g., In re VeriSign, Inc. Sec. Litig.*, No. C 02-02270-JW, 2005 U.S. Dist. LEXIS 10438, at *32 (N.D. Cal. Jan. 13, 2005) ("Here, the issues common to the class – namely, the nature and extent of Defendants' alleged misrepresentations and the like – are predominant."); *In re Emulex Corp., Sec. Litig.*, 210 F.R.D. 287 (C.D. Cal. 2002).  Additionally, Lead Plaintiff is not subject to any unique defenses that could make it atypical of Settlement Class Members.  Therefore, Lead Counsel respectfully submits that this Court should find that Lead Plaintiff's claims are typical of

1    the claims of the Settlement Class.  *See Akeena Solar*, 274 F.R.D. at 266-67; *Cooper*, 254 F.R.D.

2    at 635-36. *See also* Partial Sett. Final Judgment at ¶ 4.

3                    **4.      Adequacy**

4           The representative parties must satisfy Rule 23(a)'s adequacy requirement by showing

5    that they will fairly and adequately protect the interests of the Settlement Class.  To satisfy this

6    requirement, the proposed class representative must be free of interests that are antagonistic to

7    the other members of the class, and counsel representing the class must be qualified, experienced

8    and capable of conducting the litigation.  *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F. 2d

9    507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at 1020.

10          As described above, Lead Plaintiff has claims that are typical of and coextensive with

11   those of the Settlement Class.  Lead Plaintiff, like all Settlement Class Members, purchased Velti

12   shares at artificially inflated prices as a result of the Remaining Defendants' alleged materially

13   false and misleading statements and/or omissions.  Further, Lead Plaintiff has retained counsel

14   highly experienced in securities class action litigation and who have successfully prosecuted

15   many securities and other complex class actions throughout the United States.[10]   Thus, Lead

16   Plaintiff is an adequate representatives of the Settlement Class, and its counsel are qualified,

17   experienced and capable of prosecuting this Action, in satisfaction of Rule 23(a)(4).  *See also*

18   Partial Sett. Final Judgment at ¶ 4.

19                   **5.      Common Questions of Law Predominate and a Class Action Is
                            the Superior Method of Adjudication**

20

21          In addition to meeting the prerequisites of Rule 23(a), this case also satisfies Rule

22   23(b)(3), which requires that the proposed class representative establish that common questions

23   of law or fact predominate over individual questions, and that a class action is superior to other

24   available methods of adjudication.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct.

25   2179, 2184 (2011); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 525 (N.D. Cal. 2009); *Vathana*

26   *v. EverBank*, No. C 09-02338 RS, 2010 WL 934219, at * 2 (N.D. Cal.  Mar. 15, 2010) (noting

27   _____

28   [10]      *See* ECF Dkt. No. 44.

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-
cv-03889-WHO                                                                                      - 18 -

1    that "subsection [23(b)(3)] encompasses 'those cases in which a class action would achieve

2    economies of time, effort, and expense, and promote uniformity of decision as to persons

3    similarly situated, without sacrificing procedural fairness or bringing about other undesirable

4    results'") (quoting Fed. R. Civ. P. 23. 1966 advisory committee's note).

5          Common questions of law and fact predominate and a class action is clearly the superior

6    method available to fairly and efficiently litigate this securities action.[11]  "[C]ommon issues need

7    only predominate, not outnumber individual issues."  *In re Inter-Op Hip Prosthesis Liab. Litig*.

8    204 F.R.D. 330, 345 (N.D. Ohio 2001).   Further, the superiority of class actions in large

9    securities cases is well recognized.  *See Amchem Prods*., 521 U.S. at 625 (finding common

10   questions predominated in securities class action certified for settlement).

11         As discussed above, there are a number of common questions of law and fact that would

12   warrant class certification of this matter.  These questions clearly predominate over individual

13

14   [11]     When certifying a class for settlement purposes only, the standards for satisfying the class certification element of "superiority" under Rule 2 3(b)(3) may be relaxed because the Court does  not need to consider the difficulties of managing the class in any future litigation or at trial.

15   *See, e.g., Ybarrondo v. NCO Fin. Sys., Inc.*, No. 05cv 2057-L(JMA), 2009 WL 3612864, at *7 n.3 (S.D. Cal. Oct. 28, 2009); *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 477 (E.D. Cal.

16   2010).   Indeed, courts have certified class actions for settlement purposes even where certification was or likely would have been denied for litigation purposes.  *See, e.g., In re Initial*

17   *Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 116 & n.308 (S.D.N.Y. 2009) (granting preliminary approval of a settlement class that included §11 claimants who had been excluded from the

18   litigation class on grounds of "predominance") (citing *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 194-95 (S.D.N.Y. 2005) (reasoning that the "predominance" and "manageability"

19   concerns under Rule 23(b)(3) were intertwined and "because the litigation was no longer going to trial, manageability was no longer  an issue, and the 'predominance defect [] no longer

20   fatal'")); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 557-58 (N.D. Ga. 2007) (certifying a settlement class in antitrust  case despite noting serious questions about

21   whether a litigation class could be certified; finding "that the fact of settlement is relevant to the decision to certify a class" and that "Courts have, thus, certified classes at the settlement stage

22   noting that such a certification does not present the same problems that certification of a litigation class proposing the same class definition would present"); *O'Keefe v. Mercedes-Benz*

23   *USA, LLC*, 214 F.R.D. 266, 292-93 (E.D. Pa. 2003) (certifying a  settlement class bringing state law fraud claims; recognizing that a "manageability problem" was rendered moot by the

24   settlement, and thus was not a bar to class certification in the settlement context); *Ramirez v. DeCoster*, 203 F.R.D. 30, 36-37 (D. Me. 2001) (certifying a settlement class despite having

25   previously ruled that predominance requirement was not met; the settlement context mooted the court's concerns that calculation of individual damages would overwhelm common issues in the

26   litigation); *In re Diet Drugs*, Nos. 1203, 99-20593, 2000 WL 1222042, at *43 (E.D. Pa. Aug. 28, 2000) ("[W]hen taking the settlement into consideration for purposes of determining class

27   certification, individual issues which are normally present in personal injury litigation become irrelevant, allowing the common issues to predominate.").

28

1    questions because the Remaining Defendants' alleged conduct affected all Settlement Class

2    Members in the same manner. *See, e.g.*, *Cooper*, 254 F.R.D. at 632 ("The common questions of

3    whether misrepresentations were made and whether Defendants had the requisite scienter

4    predominate over any individual questions of reliance and damages.").  Indeed, issues relating to

5    the Remaining Defendants' liability are common to all members of the Settlement Class.  *Id.; see*

6    *also LDK Solar*, 255 F.R.D. at 530; *UTStarcom*, 2010 WL 1945737, at *9 (same); *Emulex*, 210

7    F.R.D. at 721 ("The predominant questions of law or fact at issue in this case are the alleged

8    misrepresentation Defendants made during the Class Period and are common to the class.").

9           Falsity, materiality, scienter, and loss causation are issues that "affect investors alike,"

10   and whose proof "can be made on a class-wide basis" because they "affect[] investors in

11   common." *Schleicher v. Wendt*, 618 F.3d 679, 682, 685, 687 (7th Cir. 2010).  Likewise, here, the

12   Remaining Defendants' alleged conduct during the Class Period "affect[ed] [all] investors alike"

13   and proof of falsity, materiality, scienter, and causation will "be made on a class-wide basis."

14   *Schleicher*, 618 F.3d at 685, 687; *Cooper*, 254 F.R.D. at 641.  As a result, common questions of

15   law and fact predominate.

16          In light of the foregoing, all of the requirements of Rule 23(a) and (b) are satisfied, and

17   there are no issues that would prevent the Court from certifying this Settlement Class for

18   settlement purposes, appointing Lead Plaintiff as the Class Representative, and appointing Lead

19   Counsel as counsel for the Settlement Class.  *See, e.g.*, *Wahl v. Am. Sec. Ins. Co.*, No. C08-

20   00555-RS, 2011 U.S. Dist. LEXIS 59559, at *5-*6 (N.D. Cal. Jun. 2, 2011) (class certified for

21   settlement purposes); *Gittin v. KCI USA, Inc.*, No. 09-CV-0583 RS, 2011 WL 1467360, at *

22   19(N.D. Cal. Apr.  12, 2011) (same).  *See also* Partial Sett. Final Judgment at ¶ 4.

23          **B.      The Proposed Plan and Method for Notice Meets All Requirements**

24          "For any class certified under Rule 23(b)(3), the court must direct to class members the

25   best notice practicable under the circumstances, including individual notice to all members who

26   can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The proposed notice

27

28

1  program, provided under the Stipulation, complies with the requirements of Rule 23, and the

2  PSLRA.

3      Lead Plaintiff proposes to give interested parties notice via two separate approaches: (1)

4  by first-class mail, addressed to all Settlement Class Members who can reasonably be identified

5  and located; and (2) by publication.   Lead Plaintiff has retained Strategic Claims Services

6  ("Strategic"), an experienced claims administrator, to handle the notice and claims process.

7      In an effort to reduce the costs of administrating the Settlement, the Stipulation calls for

8  the mailing of the Postcard Notice. *See* Stipulation at Exhibit A-1.  The Postcard Notice contains

9  all relevant information regarding the amount of the Settlement, deadlines for Settlement Class

10 Members, attorneys' fees, and the URL of the website where Settlement Class Members can

11 access the full Notice and the Amended Plan of Distribution and download the Claim Form.

12     Strategic Claims will mail the Postcard to all shareholders of record identified by Velti's

13 transfer agent during the administration of the Partial Settlement and any additional shareholders

14 identified during the administration of the Partial Settlement.  *See* Exhibit 1 (Stipulation).  In

15 addition, Strategic will cause the Summary Notice, Exhibit A-3 to the Stipulation, to be

16 published once in the national edition of Investor's Business Daily and over the PR Newswire no

17 later than ten (10) business days after entry the Notice Date (as defined in the Notice Order).  *Id.*

18 The Postcard Notice advises putative Settlement Class Members of the existence of the Action,

19 and their rights with respect to the Settlement, including directions to the Settlement's website.

20 Similar forms of notice have been approved.  *See e.g.*, *In re General Electric Company*

21 *Securities Litigation,* Civ. No. 09-CIV-1951 (S.D.N.Y.) (postcard notice approved in securities

22 class action settlement); *Malta v. Fed. Home Loan Mortg. Corp.,* No. 10-CV-1290 BEN (NLS),

23 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) (postcard notice approved); *In re Checking Account*

24 *Overdraft Litig.*, No. 09-MD-02036-JLK, 2012 WL 4174502 (S.D. Fla. Sept. 19, 2012) (final

25 approval of postcard notice); *Schulte v. Fifth Third Bank,* 805 F. Supp. 2d 560, 596 (N.D. Ill.

26 2011) (final approval of postcard notice); *In re AT & T Mobility Wireless Data Services Sales*

27 *Tax Litig.,* 789 F. Supp. 2d 935 (N.D. Ill. 2011) (postcard notice approved); *In re Checking*

28

1  *Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) (preliminary approval of postcard

2  notice); *In re Antibiotic Antitrust Actions*, 333 F. Supp. 291, 293 (S.D.N.Y. 1971) (approving

3  postcard notice).

4       Moreover, Plaintiffs are coordinating this Settlement with the Partial Settlement in order

5  to most effectively and efficiently provide Notice to the Class and administer the Settlement.

6  This includes that notice of the amendment to the plan of distribution for the Partial Settlement

7  will also be included in the Notice of this Settlement and that the funds for both settlements will

8  be distributed together to reduce costs.

9      **C.   The Proposed Fee and Expense Award Is Fair and Reasonable**

10       For their efforts in creating a common fund for the benefit of the Settlement Class, in

11  connection with the Motion for Final Approval, Lead Counsel will seek approval of its request

12  for an award of no more than 15% of the Settlement Fund (approximately $112,500). Plaintiffs

13  Counsel's currently estimates their lodestar to be far in excess of their requested fee

14  award. Nelson Decl. at ¶1. Thus, the fee request represents a negative multiplier of

15  lodestar. *Id.* This fee request is well within the normal range of such awards. *See Powers*

16  *v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (the Ninth Circuit has "also established twenty-

17  five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the

18  percentage-of-recovery approach."); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271

19  (9th Cir. 1989) (establishing twenty-five percent benchmark); *CLRB Hanson Indus., LLC v.*

20  *Google*, 05-03649-JW, slip op. (N.D. Cal. Sept. 14, 2009) (awarding 25% of $25 million

21  settlement); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Paul,*

22  *Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989); *Six Mexican Workers v. Az.*

23  *Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990); *Torrisi v. Tucson Elec. Power* Co., 8 F.3d 1370

24  (9th Cir. 1993).

25       Further, Lead Counsel, in connection with the Settlement Hearing, will request approval

26  of reimbursement of approximately $17,000 in expenses advanced by Lead Counsel, and counsel

27  working at the direction of Lead Counsel, for items such as consultant fees, travel costs, legal

28

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-
cv-03889-WHO
    - 22

research, photocopies, and postage and filing fees.  *See Munoz v. UPS Ground Freight, Inc.*, No. 07-00970 MHP, 2009 WL 1626376, at *5 (N.D. Cal. June 9, 2009)(reimbursing routine litigation-related expenses incurred when a review of the proceedings would not reveal any obvious inefficiencies that would require a diminution of the submitted amount); *see also In re Cisco Systems Inc. Sec. Litig.*, No. C-01-20418-JW(PVT), slip op. (N.D. Cal. Dec. 5, 2006) (ORDER) (awarding reimbursement of expenses that amounted to approximately 9% of the total recovery).[12]  These expenses are those incurred by Lead Counsel since the Partial Settlement was finally approved by the Court.

### D.      Proposed Schedule for Final Approval

Based on the terms of the Stipulation, Lead Plaintiff proposes the following schedule for the Court's review:

| Event | Time for Compliance |
|---|---|
| Date by which the Claims Administrator shall mail by first-class mail the Notice and the Proof of Claim | 12 business days after the Court's entry of the Notice Order (the "Notice Date") |
| Deadline for publishing Summary Notice | 10 business days after the Notice Date |
| Deadline for filing Proofs of Claim | 90 days following the Notice Date |
| Deadline for submission in support of final approval | 35 calendar days before the Settlement Hearing |
| Deadline for submitting Exclusion Requests or Written Objections | 21 calendar days before the Settlement Hearing (90 days after the Notice Date) |
| Reply/Responses to Any Objections | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | Approximately 100 days following entry of the Notice Order, or later at the Court's convenience |

## V.      CONCLUSION

Based upon the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant the Motion.

---

[12]      This does not include costs of administration and notice, which Lead Plaintiff is advised will most likely be approximately $75,000. Stipulation at ¶3.6.  Plaintiffs have made efforts to keep these costs low through coordination with the Partial Settlement and Postcard Notice.

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03889-WHO

- 23 -

1   DATED:  August 5, 2016                    Respectfully submitted,

2                                             THE WEISER LAW FIRM, P.C.
                                              CHRISTOPHER L. NELSON
3                                             (admitted *pro hac vice*)

4

5

6                                             _____s/ CHRISTOPHER L. NELSON_____

7                                             ROBERT B. WEISER (admitted *pro hac vice*)
8                                             JAMES M. FICARO
                                              22 Cassatt Avenue, First Floor
9                                             Berwyn, PA 19312
                                              Telephone: (610) 225-2677
10                                            Facsimile:  (610) 408-8062
                                              rw@weiserlawfirm.com
11                                            jmp@weiserlawfirm.com
                                              cln@weiserlawfirm.com
12                                            jmf@weiserlawfirm.com

13                                            KATHLEEN A. HERKENHOFF (168562)
                                              12707 High Bluff Drive, Suite 200
14                                            San Diego, CA 92130
                                              Telephone:  (858) 794-1441
15                                            Facsimile:  (858) 794-1450
                                              kah@weiserlawfirm.com
16
                                              Lead Counsel for Plaintiffs
17

18

19

20

21

22

23

24

25

26

27

28

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-
cv-03889-WHO                                                                        - 24 -

1

<u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on August 5, 2016, I authorized the electronic filing of the foregoing

3  with the Clerk of the Court using the CM/ECF system which will send notification of such filing

4  to the e-mail addresses denoted on the attached Electronic Mail Notice List.

5      I certify under penalty of perjury under the laws of the United States of America that the

6  foregoing is true and correct.  Executed on August 5, 2016.

7

8                                    /s/ CHRISTOPHER L. NELSON
                                   CHRISTOPHER L. NELSON
9
                                   THE WEISER LAW FIRM, P.C.
10                                   22 Cassatt Avenue, First Floor
                                   Berwyn, PA 19312
11                                   Telephone: (610) 225-2677
                                   Facsimile:  (610) 408-8062
12
                                   Email: cln@weiserlawfirm.com
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-
cv-03889-WHO                                                              - 25 -

**Mailing Information for a Case 3:13-cv-03889-WHO Rieckborn v. Velti plc et al**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **AYM Aggressive Value Fund, LP**
  asteyer@steyerlaw.com

- **Peter E. Borkon**
  peterb@hbsslaw.com

- **Donald A. Broggi**
  dbroi@scott-scott.com

- **Joseph Daniel Cohen**
  jcohen@scott-scott.com

- **Hal Davis Cunningham**
  hcunningham@scott-scott.com,efile@scott-scott.com

- **Brock Dahl**
  bdahl@wsgr.com

- **Patrick Norton Downes**
  pdownes@loeb.com,ptaylor@loeb.com

- **Cynthia A. Dy**
  cdy@wsgr.com

- **Boris Feldman**
  boris.feldman@wsgr.com

- **Christine M. Fox**
  cfox@labaton.com,lmehringer@labaton.com,electroniccasefilings@labaton.com,fmalonzo@labaton.com

- **Jonathan Gardner**
  jgardner@labaton.com,jjohnson@labaton.com,cvillegas@labaton.com,acoquin@labaton.com,lmehringer@labaton.com,fmalonzo@labaton.com,acarpio@labaton.com,agreenbaum@labaton.com

- **Lionel Z. Glancy**
  info@glancylaw.com,lglancy@glancylaw.com

- **Michael M. Goldberg**
  michael@goldberglawpc.com

- **Joseph P. Guglielmo**
  jguglielmo@scott-scott.com

- **Christopher T. Heffelfinger**
  cheffelfinger@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Kathleen Ann Herkenhoff**
  kah@weiserlawfirm.com,jmf@weiserlawfirm.com,hl@weiserlawfirm.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,peterb@hbsslaw.com,pashad@hbsslaw.com,sf_filings@hbsslaw.com

- **Nicole Catherine Lavallee**
  nlavallee@bermandevalerio.com,kmoody@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Luke Anthony Liss**
  lliss@wsgr.com,fgarcia@wsgr.com

- **Robert Alan Meyer**
  rmeyer@loeb.com,ptaylor@loeb.com

- **Donald Anthony Miller**
  dmiller@loeb.com,vmanssourian@loeb.com

- **Matthew C Moehlman**
  mmoehlman@labaton.com

- **Christopher Leigh Nelson**
  cln@weiserlawfirm.com

- **Park West Investors Market Fund, Limited**
  asteyer@steyerlaw.com

- **Park West Investors Master Fund, Limited**
  asteyer@steyerlaw.com

- **Park West Partners International Limited**
  asteyer@steyerlaw.com

- **Anthony David Phillips**
  aphillips@archernorris.com,dtatmon@archernorris.com

- **Joseph Mark Profy**
  jmp@weiserlawfirm.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Mark Punzalan**
  markp@punzalanlaw.com,office@punzalanlaw.com

- **Brian J. Robbins**
  notice@robbinsarroyo.com

notice@robbinsarroyo.com

- **Casey Edwards Sadler**
  csadler@glancylaw.com

- **Charlene Sachi Shimada**
  charlene.shimada@morganlewis.com

- **Evan Jason Smith**
  esmith@brodsky-smith.com

- **Allan Steyer**
  asteyer@steyerlaw.com,lrorem@steyerlaw.com

- **Michael Walter Stocker**
  mstocker@labaton.com,drogers@labaton.com,ravan@labaton.com,ElectronicCaseFiling@labaton.com,lmehringer@labaton.com

- **Jon A Tostrud**
  jtostrud@tostrudlaw.com,acarter@tostrudlaw.com

- **Diane Marie Walters**
  dwalters@wsgr.com,vshreve@wsgr.com

- **Lucy Han Wang**
  lucy.wang@morganlewis.com,andrew.obach@morganlewis.com

- **Robert Brian Weiser**
  rw@weiserlawfirm.com

- **Wendy Hope Zoberman**
  wzoberman@bermandevalerio.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)