THE WEISER LAW FIRM, P.C.
KATHLEEN A. HERKENHOFF (168562)
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone:  (858) 794-1441
Facsimile:  (858) 794-1450
kah@weiserlawfirm.com

*Lead Counsel for Plaintiffs and*
*Counsel for Lead Plaintiff Bobby Yadegar/Ygar Capital LLC*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re VELTI PLC SECURITIES LITIGATION | ) Master File No. 3:13-cv-03889-WHO |
| | ) |
| | ) (Consolidated with Case Nos. |
| | ) 3:13-cv-03954-WHO |
| This Document Relates To: | ) 3:13-cv-04140-WHO |
| | ) 3:13-cv-04606-WHO |
| ALL ACTIONS. | ) 3:14-cv-00372-WHO) |
| | ) |
| | ) CLASS ACTION |
| | ) |
| | NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |

DATE:        February 8, 2017
TIME:        2:00 p.m.
CTRM:        2, 17th Floor
JUDGE:       The Hon. William H. Orrick

Date Action Filed: 8/22/13

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION PLAINTIFFS' COUNSEL'S FEE AND
EXPENSE AWARD ..................................................................................................1

ISSUES TO BE DECIDED ........................................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ................................................2

I.      INTRODUCTION ..........................................................................................2

II.     THE FEE PORTION OF THE FEE AND EXPENSE AWARD COMPLIES
WITH APPLICABLE LAW, IS REASONABLE, AND SHOULD BE
GRANTED FINAL APPROVAL .....................................................................3

       A.     The Legal Standards Governing the Award of Attorneys' Fees in Common
Fund Cases Support the Requested Fee and Expense Award ...............................3

            1.     A Reasonable Percentage of the Settlement Fund Recovered Is the
Appropriate Method for Awarding Attorneys' Fees in Common
Fund Cases .................................................................................3

       B.     A Percentage Fee of 15% of the Settlement Fund Created by the
Settlement Is Reasonable in This Action ......................................................6

            1.     The Result Achieved via the Settlement ..................................................6

            2.     The Risks of the Litigation of the Action and the Novelty and
Difficulty of the Questions Presented ........................................................7

            3.     The Skill Required and the Quality and Efficiency of the Work..............11

            4.     The Contingent Fee Nature of the Action and the Financial Burden
Carried by Plaintiffs' Counsel ..................................................................12

            5.     A 15% Fee Award Is Well Below the Market Rate in Similar
Complex, Contingent Litigation ..................................................................14

       C.     Reaction of the Settlement Class Supports Approval of the Fee and
Expense Award ...........................................................................................14

       D.     The Requested Fee and Expense Award Is Reasonable Under a Lodestar
Cross-Check Analysis .................................................................................15

       E.     Plaintiffs' Counsel's Hourly Rates and Time Expended Are Reasonable...........17

III.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE
NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED .................18

IV.    CONCLUSION...............................................................................................19

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE
AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:13-cv-
03889-WHO

- i -

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Anixter v. Home-Stake Prod. Co.,*
   77 F.3d 1215 (10th Cir. 1996) ................................................................. 13

*Armstrong v. Brown,*
   No. C94-2307, 2011 WL 3443922 (N.D. Cal. Aug. 8, 2011) ...................... 17

*Backman v. Polaroid Corp.,*
   910 F.2d 10 (1st Cir. 1990) ....................................................................... 13

*Barbosa v. Cargill Meat Sols. Corp.,*
   No. 1:11-cv-00275-SKO, 2013 WL 3340939 (E.D. Cal. July 2, 2013) ........ 18

*Behrens v. Wometco Enters., Inc.,*
   118 F.R.D. 534 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990) ......... 6

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
   603 F.2d 263 (2d Cir. 1979) ...................................................................... 13

*Blum v. Stenson,*
   465 U.S. 886 (1984) .............................................................................. 4, 16

*Brown v. Phillips Petroleum Co.,*
   838 F.2d 451 (10th Cir. 1988) ..................................................................... 4

*Camden I Condo. Ass'n v. Dunkle,*
   946 F.2d 768 (11th Cir. 1991) ..................................................................... 4

*Cent. R.R. & Banking Co. v. Pettus,*
   113 U.S. 116 (1885) ................................................................................ 3, 4

*Churchill Vill., L.L.C. v. Gen. Elec.,*
   361 F.3d 566 (9th Cir. 2004) ....................................................................... 8

*City of Westland Police and Fire Ret. Sys. v. Sonic Sols.,*
   No. C 07-05111-CW (N.D. Cal. Apr. 8, 2010) (ORDER) ........................... 14

*Clark v. Lomas & Nettleton Fin. Corp.,*
   79 F.R.D. 641 (N.D. Tex. 1978), *vacated on other grounds,* 625 F.2d 49 (5th
   Cir. 1980) ................................................................................................. 11

*Dura Pharms., Inc. v. Broudo,*
   544 U.S. 336 (2005) .................................................................................... 9

*Faigman v. AT&T Mobility LLC,*
   No. C06-04622 MHP, 2011 WL 672648 (N.D. Cal. Feb. 16, 2011) ........... 17

*Fernandez v. Victoria Secret Stores, LLC,*
   No. CV-06-04149 MMM, 2008 U.S. Dist. LEXIS 123546 (C.D. Cal. July 21,
   2008) ......................................................................................................... 15

1

2                                                                                          **Page**

3

*Gates v. Deukmejian,*
   987 F.2d 1392 (9th Cir. 1992) ...............................................................17

*Goldberger v. Integrated Res., Inc.,*
   209 F.3d 43 (2d Cir. 2000).......................................................................4

*Gottlieb v. Barry,*
   43 F.3d 474 (10th Cir. 1994) ....................................................................4

*Harman v. Lyphomed, Inc.,*
   945 F.2d 969 (7th Cir. 1991) ....................................................................4

*Harris v. Marhoefer,*
   24 F.3d 16 (9th Cir. 1994) ......................................................................18

*HCL Partners Ltd. P'ship v. Leap Wireless Intern., Inc.,*
   07 CV 2245 MMA, 2010 WL 4156342 (S.D. Cal., Oct. 15, 2010)....................13

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983)..................................................................................6

*In re Apollo Grp., Inc. Sec. Litig.,*
   No. CV 04-2147-PHx-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4,
   2008), *rev'd,* No. 08-16971, 2010 U.S. App. LEXIS 14478 (9th Cir. June 23,
   2010) ........................................................................................................9

*In re Apple Comput. Sec. Litig.,*
   No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6,
   1991) .......................................................................................................13

*In re BankAtlantic Bancorp, Inc.,*
   No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)...................9, 13

*In re Bluetooth Headset Prods. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) ....................................................................6

*In re Charles Schwab Corp. Sec. Litig.,*
   No. C 08-01510 WHA, 2011 U.S. Dist. LEXIS 44547 (N.D. Cal. April 19,
   2011) .......................................................................................................16

*In re Equity Funding Corp. Sec. Litig.,*
   438 F. Supp. 1303 (C.D. Cal. 1977) ........................................................12

*In re Gilead Scis. Sec. Litig.,*
   No. C-03-4999-SI (N.D. Cal. Nov. 5, 2010) (ORDER) .............................14

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.,*
   No. 02-ML-1475-DT, 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10,
   2005) ...............................................................................................7, 11, 14

**Page**

*In re Ikon Office Sols., Inc.*,
    194 F.R.D. 166 (E.D. Pa. 2000) ...........................................................................................11

*In re Impax Labs., Inc. Sec. Litig.*,
    No. C-04-4802-JW (N.D. Cal. May 12, 2009) (ORDER) ........................................................14

*In re Infineon Techs. AG Sec. Litig.*,
    No. C-04-4156-JW (N.D. Cal. Nov. 2, 2011) (ORDER) .........................................................14

*In re King Res. Co. Sec. Litig.*,
    420 F. Supp. 610 (D. Colo. 1976) ...........................................................................................6

*In re Nuvelo, Inc. Sec. Litig.*,
    No. C 07-0405 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011) ...........................................14

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ..................................................................6, 7, 12, 15

*In re Oracle Corp. Sec. Litig.*,
    No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009).............................................9

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001) ......................................................................................11

*In re Rite Aid Corp. Sec. Litig.*,
    269 F. Supp. 2d 603 (E.D. Pa. 2003), *vacated on other grounds*, 396 F.3d 294
    (3d Cir. 2005)...........................................................................................................................16

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005)......................................................................................................16

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999)........................................................................................16

*In re Tyco Int'l, Ltd.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) ......................................................................................9, 10

*In re U.S. Aggregates, Inc. Sec. Litig.*,
    No. C-01-1688-CW (N.D. Cal. Apr. 6, 2006) (ORDER) ........................................................14

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 0165 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ...................................10

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986)....................................10

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ..........................................................................................*passim*

1

2                                                                                              **Page**

3

4   *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
        364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................13, 16

5   *Kirchoff v. Flynn*,
        786 F.2d 320 (7th Cir. 1986) ...........................................................................................5

6
    *Larsen v. Trader Joe's Co.*,
7       Case No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ...................14

8   *Maley v. Del Global Techs. Corp.*,
        186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...........................................................................12

9
    *Miller v. Woodmoor Corp.*,
10      No. 74-F-988, 1978 U.S. Dist. LEXIS 15234 (D. Colo. Sept. 28, 1978) .........................11

11  *Nguyen v. Radient Pharms. Corp.*,
        No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293 (C.D. Cal. May 6,
12      2014) ...........................................................................................................................9, 12

13  *Paul, Johnson, Alston & Hunt v. Graulty*,
        886 F.2d 268 (9th Cir. 1989) ...................................................................................3, 4, 6

14
    *Perlmutter v. Intuitive Surgical, Inc.*,
15      No. 10-CV-03451-LHK, 2011 WL 566814 (N.D.Cal. Feb. 15, 2011) .............................9

16  *Powers v. Eichen*,
        229 F.3d 1249 (9th Cir. 2000) .........................................................................................6

17
    *Redwen v. Sino Clean Energy, Inc.*,
18      No. CV 11-3936, 2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013) .....................18

19  *Reynolds v. Beneficial Nat'l Bank*,
        288 F.3d 277 (7th Cir. 2002) ...........................................................................................7

20
    *Robbins v. Koger Props.*,
21      116 F.3d 1441 (11th Cir. 1997) ...................................................................................9, 13

22  *Schwartz v. Sec'y of Health & Human Servs.*,
        73 F.3d 895 (9th Cir. 1995) ...........................................................................................17

23
    *Six Mexican Workers v. Ariz. Citrus Growers*,
24      904 F.2d 1301 (9th Cir. 1990) .........................................................................................4

25  *Suzuki v. Hitachi Global Storage Techs., Inc.*,
        No. C06-7289, 2010 WL 956896 (N.D. Cal. Mar. 12, 2010) ...........................................17

26
    *Swedish Hosp. Corp. v. Shalala*,
27      1 F.3d 1261 (D.C. Cir. 1993) .........................................................................................4

28

Page

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ...............................................................................4, 6

*Trustees v. Greenough*,
  105 U.S. 527 (1882) ................................................................................................3

*Twinde v. Threshold Pharms., Inc., et al.*,
  No. 4:07-cv-04972-CW (N.D. Cal. Apr. 16, 2010) (ORDER) ...............................14

*Vincent v. Hughes Air West, Inc.*,
  557 F.2d 759 (9th Cir. 1977) ..................................................................................3

*Vincent v. Reser*,
  No. 11-03572 (CRB), 2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ......................18

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ...................................................................... *passim*

*Wren v. RGIS Inventory Specialists*,
  No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ......................17

*Young v. Polo Retail, LLC*,
  No. C-02-4546 VRW, 2007 U.S. Dist. LEXIS 27269 (N.D. Cal. Mar. 28,
  2007) ......................................................................................................................15

SECONDARY AUTHORITIES

Charles Silver, *Due Process and the Lodestar Method: You Can't Get There from
  Here* (June 2000) 74 Tul. L. Rev. 1809 .................................................................5

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of
  Economic Theory for Private Enforcement of Law Through Class and
  Derivative Actions*, 86 Colum. L. Rev. 669 (1986) .................................................5

Richard Posner, *Economic Analysis of Law* §21.9 (3d ed. 1986) ................................12

**NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE AWARD**

TO:   ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on February 8, 2017, at 2:00 p.m., or as soon thereafter as the matter may be heard, in connection with seeking final approval (the "Final Approval Motion") of the July 28, 2016 Stipulation and Agreement of Settlement with Remaining Defendants (the "Stipulation" or the "Settlement Agreement")[1], Plaintiffs' Counsel will, and hereby do, move the Honorable William H. Orrick, located in Courtroom 2, 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94101 for an order awarding Plaintiffs' Counsel's Fee and Expense Award of 15% of the Settlement Fund plus expenses incurred in the prosecution of the above-captioned action (the "Action").   This motion is based upon the attached Memorandum of Points and Authorities, the Nelson Decl., the Declaration of Christopher L. Nelson in Support of Petition for Attorney's Fees and Reimbursement of Expenses on Behalf of The Weiser Law Firm, P.C., the Declaration of Jonathan Gardner in Support of Petition for Attorney's Fees and Reimbursement of Expenses on Behalf of Labaton Sucharow LLP, the Declaration of Nicole Lavallee in Support of Petition for Attorney's Fees and Reimbursement of Expenses on Behalf of Berman DeValerio[2], and all other pleadings and matters of record, and such additional evidence and testimony as may be presented before or at the Settlement Hearing.

---

[1]      Unless otherwise defined herein, all capitalized terms have the same meaning as set forth in the Stipulation.  A true and correct copy of the Stipulation is attached as Exhibit A to the Declaration of Christopher L. Nelson in Support of Plaintiffs' Motion for Final Approval of Settlement and Plaintiffs' Counsel's Fee and Expense Award (the "Nelson Decl.").  Citations to the paragraphs of the Nelson Decl. appear in the following format: "Nelson Decl. at __."  In the interest of brevity, Plaintiffs incorporate herein the factual and procedural background of the Action, as set forth in the concurrently filed Final Approval Motion and in the Stipulation (including, but not limited to, the "Statement of Facts and Procedural History" section of the Final Approval Motion).  All cites to "ECF Dkt. No. ___" are to the docket in Master File No. 3:13-cv-03889-WHO.   All citations to "¶__" are to paragraphs of the Second Amended Consolidated Complaint for Violations of the Securities Act of 1933 and the Securities and Exchange Act of 1934 (the "Second Amended Consolidated Complaint"), ECF Dkt. No. 209.

[2] Each of the above noted declarations are attached as Exhibits C-E to the Nelson Decl.

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:13-cv-03889-WHO

- 1 -

**ISSUES TO BE DECIDED**

1.      Whether Plaintiffs' Counsel are entitled to the Fee and Expense Award in view of the benefits to the Settlement Class via the $750,000 Settlement and the diligent efforts of Plaintiffs' Counsel in litigating the Action and in securing the Settlement?

2.      Whether the Fee and Expense Award is reasonable pursuant to applicable law within this District and the Ninth Circuit?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Plaintiffs' Counsel have succeeded in obtaining an additional $750,000 cash settlement for the benefit of the Settlement Class, which, along with the previously approved Partial Settlement, brings the total settlement of the Action to $10,250,000.   The overall recovery obtained for the Settlement Class was achieved through the skill, work, tenacity, and effective advocacy of Plaintiffs' Counsel in the face of considerable risk, including, but not limited to, securing a meaningful recovery from Velti plc ("Velti" or the "Company"), a bankrupt foreign company.   As compensation for their efforts in achieving this result, Plaintiffs' Counsel seek, as part of the Fee and Expense Award provided in the Stipulation, a fee equal to 15% of the Settlement Fund (in the amount of $112,500) plus expenses incurred in the prosecution of the Action. As set forth herein, the requested Fee and Expense Award is well below the Ninth Circuit's 25% "benchmark" fee in similar actions, numerous decisions in this Circuit, a recent decision of this Court, and decisions throughout the United States.   The amount requested is warranted in light of the recovery obtained for the Settlement Class, the extensive efforts of Plaintiffs' Counsel in obtaining this result, and the significant risks in prosecuting this Action. *See* Nelson Decl. at ¶¶19-26.   This modest fee request is the result of a concerted effort by Plaintiffs' Counsel to take the prudent steps to reduce the costs associated with the Settlement in order to ensure the Settlement Fund remains robust to compensate the members of the Settlement Class.

As discussed herein, as well as in the Final Approval Motion and the Nelson Decl., the requested Fee and Expense Award is fair and reasonable when considered under the applicable standards in the Ninth Circuit and is well within the range of awards in class actions in this Circuit and courts nationwide, particularly in view of the substantial risks of bringing and pursuing this Action, the extensive investigation and litigation efforts, and the results achieved for the Settlement Class.

## II.   THE FEE PORTION OF THE FEE AND EXPENSE AWARD COMPLIES WITH APPLICABLE LAW, IS REASONABLE, AND SHOULD BE GRANTED FINAL APPROVAL

### A.   The Legal Standards Governing the Award of Attorneys' Fees in Common Fund Cases Support the Requested Fee and Expense Award

#### 1.   A Reasonable Percentage of the Settlement Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

For their efforts in creating a common fund for the benefit of the Settlement Class, Plaintiffs' Counsel seek a reasonable percentage of the Settlement Fund recovered as attorneys' fees.  The percentage method of awarding fees has become an accepted, if not the prevailing, method for awarding fees in common fund cases in this Circuit and throughout the United States.

It has long been recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  The purpose of this doctrine is to avoid unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").  This rule, known as the "common fund" doctrine, is firmly rooted in American law.  *See, e.g., Trustees v. Greenough*, 105 U.S. 527 (1882); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885).[3]

---

[3]     In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989), the Ninth Circuit explained the principle underlying fee awards in common fund cases:

1    In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that

2  under the common fund doctrine a reasonable fee may be based "on a percentage of the fund

3  bestowed on the class."  In this District, based upon applicable Ninth Circuit authority, this Court

4  has discretion to award fees in common fund cases based on either the lodestar/multiplier method

5  or the percentage-of-the-fund method.  *WPPSS*, 19 F.3d at 1296.  In *Paul, Johnson*, 886 F.2d

6  268, *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990), *Torrisi v.

7  Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993), and *Vizcaino v. Microsoft Corp.*, 290 F.3d

8  1043 (9th Cir. 2002), the Ninth Circuit expressly approved the use of the percentage method in

9  common fund cases.  Moreover, supporting authority for the percentage method in other circuits

10  is overwhelming.[4]

11    Since *Paul, Johnson* and its progeny, district courts in this Circuit have almost uniformly

12  shifted to the percentage method in awarding fees in common fund representative actions.  The

13  rationale for compensating counsel in common fund cases on a percentage basis is sound.  First,

14  it is consistent with the practice in the private marketplace where contingent fee attorneys are

15  customarily compensated by a percentage of the recovery.  Second, it more closely aligns the

16  lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum

---

Since the Supreme Court's 1885 decision in [*Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885)], it is well settled that the lawyer who creates a common fund is allowed an ***extra*** reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit.  The amount of such a reward is that which is deemed "reasonable" under the circumstances.

*Id.* at 271 (citations omitted, emphasis in original).

[4]    Courts in other circuits favor the percentage-of-recovery approach for the award of attorneys' fees in common fund cases.  Two circuits have ruled that the ***percentage method is mandatory in common fund cases***.  *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991).  Other circuits and commentators have expressly approved the use of the percentage method.  *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (citing footnote 16 of *Blum* recognizing both "implicitly" and "explicitly" that a percentage recovery is reasonable in common fund cases); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

1    possible recovery in the shortest amount of time.[5]  Indeed, one of the nation's leading scholars in

2    the field of class actions and attorneys' fees, Professor Charles Silver ("Professor Silver") of the

3    University of Texas School of Law, has concluded that the percentage method of awarding fees

4    is the *only* method of fee awards that is consistent with class members' due process rights.

5    Professor Silver notes:

6         The consensus that the contingent percentage approach creates a closer harmony
         of interests between class counsel and absent plaintiffs than the lodestar method is

7         strikingly broad.  It includes leading academics, researchers at the RAND Institute
         for Civil Justice, and many judges, including those who contributed to the Manual

8         for Complex Litigation, the Report of the Federal Courts Study Committee, and
         the report of the Third Circuit Task Force.  Indeed, it is difficult to find anyone

9         who contends otherwise.  No one writing in the field today is defending the
         lodestar on the ground that it minimizes conflicts between class counsel and

10        absent claimants.

11         In view of this, it is as clear as it possibly can be that judges should not apply the
         lodestar method in common fund class actions.  The Due Process Clause requires

12        them to minimize conflicts between absent claimants and their representatives.
         The contingent percentage approach accomplishes this.

13    Charles Silver, *Due Process and the Lodestar Method: You Can't Get There from Here*,

14    (June 2000) 74 Tul. L. Rev. 1809, 1819-20 (footnotes omitted).[6]

15

16    _____

17    [5]     In *Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986), the court stated:

18         The contingent fee uses private incentives rather than careful monitoring to align
         the interests of lawyer and client.  The lawyer gains only to the extent his client

19         gains. . .   The unscrupulous lawyer paid by the hour may be willing to settle for a
         lower recovery coupled with a payment for more hours.   Contingent fees

20         eliminate this incentive and also ensure a reasonable proportion between the
         recovery and the fees assessed to defendants. . . .

21    At the same time as it automatically aligns interests of lawyer and client, rewards success, and

22    penalizes failure, the contingent fee automatically handles compensation for the uncertainty of
   litigation.

23    [6]     Professor John C. Coffee also argues that a percentage of the recovery is the only

24    reasonable method of awarding fees in common fund cases:

25         If one wishes to economize on the judicial time that is today invested in
         monitoring class and derivative litigation, the highest priority should be given to

26         those reforms that restrict collusion and are essentially self-policing.   The
         percentage of the recovery fee award formula is such a "deregulatory" reform

27         because it relies on incentives rather than costly monitoring.  Ultimately, this
         "deregulatory" approach is the only alternative . . . .

28

### B.     A Percentage Fee of 15% of the Settlement Fund Created by the Settlement Is Reasonable in This Action

In *Paul, Johnson*, 886 F.2d at 272, the Ninth Circuit established 25% of a common fund as the "benchmark" award for attorneys' fees.  *See also Torrisi*, 8 F.3d at 1376 (reaffirming 25% benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (same); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 943 (9th Cir. 2011) (reaffirming 25% benchmark in a common fund case).   Here, Plaintiffs' Counsel's 15% of the common fund request is substantially lower than the 25% benchmark.

The guiding principle in the Ninth Circuit is that a fee award should be "'reasonable under the circumstances.'"  *WPPSS*, 19 F.3d at 1296 (citation and emphasis omitted).   "The Ninth Circuit has approved a number of factors which may be relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).   The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but rather, should be evaluated in light of the totality of the circumstances.  *Vizcaino*, 290 F.3d at 1048-50.   In view of the risks in pursuing this Action, the favorable result obtained, the financial commitment of Plaintiffs' Counsel, the contingent nature of the representation, and the skill of Plaintiffs' Counsel, an award of 15% of the recovery obtained for the Settlement Class is entirely appropriate.

#### 1.      The Result Achieved via the Settlement

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of the recovery, and end result achieved are of primary

---

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions*, 86 Colum. L. Rev. 669, 724-25 (1986).

1   importance, for these are the true benefit to the client"); *Behrens v. Wometco Enters., Inc.*, 118

2   F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before

3   trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).  Here, a

4   material and certain recovery of $750,000 in cash has been obtained through the efforts of

5   Plaintiffs' Counsel.

6          Accordingly, as detailed herein, in the Final Approval Motion, and in the Nelson Decl.,

7   there were significant legal and factual roadblocks to obtaining a more favorable outcome

8   against the Remaining Defendants in this Action, including the threshold matter of the necessity

9   that Plaintiffs would need to be successful on their appeal of the dismissal of the Action as to the

10   Remaining Defendants in order to move their claims forward.  Despite these obstacles to

11   recovery, Plaintiffs' Counsel secured a material recovery for the benefit of the Settlement Class.

12   As a result of this Settlement, Settlement Class Members will receive compensation for their

13   losses on Velti Shares now[7] rather than waiting for the very uncertain outcome of the Action in

14   the future.   Plaintiffs' Counsel submits that this Settlement is a favorable benefit to the

15   Settlement Class and that Plaintiffs' Counsel's efforts in securing the Settlement warrant

16   granting this Fee and Expense Award Motion in full.

17         **2.**      **The Risks of the Litigation of the Action and the Novelty and Difficulty of the Questions Presented**

18

19          Numerous cases have recognized that risk as well as the novelty and difficulty of the

20   issues presented are important factors in determining a fee award.  *E.g.*, *Vizcaino*, 290 F.3d at

21   1048; *WPPSS*, 19 F.3d at 1299-1301.  Uncertainty that an ultimate recovery would be obtained is

22   highly relevant in determining risk.  *WPPSS*, 19 F.3d at 1300.  *See also In re Heritage Bond*

23   *Litig. v. U.S. Trust Co. of Tex., N.A.*, No. 02-ML-1475-DT (RCx), 2005 U.S. Dist. LEXIS 13627,

24   at *44 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of

25   non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee

26

27   ---

   [7]    *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").

28

1   award."); *Omnivision,* 559 F. Supp. 2d at 1047 (noting that the risks of litigation, including the

2   ability to prove loss causation and the risk that defendants prevail on damages, support the

3   requested fee).

4         There is no question that from the outset of the litigation of this Action, as in any PSLRA

5   case, there were sharply contested issues of both fact and law, and that Plaintiffs faced uphill

6   fights on the issues of liability and damages.  This is a complex class action involving legal and

7   factual issues under the federal securities laws.  Plaintiffs' claims, as to the Remaining

8   Defendants, center on allegations that these Defendants caused Velti to overstate its revenues and

9   earnings by failing to timely write down approximately $111 million in uncollectible receivables,

10  thereby causing the artificial inflation of the price of Velti's securities in their roles as auditor

11  and underwriters for the Company.  In response to the final alleged partial disclosure at the end

12  of the Class Period, Velti's stock price experienced a steep decline of more than 66%.

13  Throughout the litigation, all Defendants have adamantly denied liability and asserted defenses

14  to Plaintiffs' claims.  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004)

15  (concluding that district court properly weighed risk when it concluded defendant's belief that it

16  had strong case on merits supporting finding of risk).

17        While Plaintiffs believe that their claims are strong, they are also aware of their current

18  reality.  First, they would face a difficult appeal before the Ninth Circuit on this Court's ruling

19  granting the Remaining Defendants' respective motions to dismiss – an appeal that the

20  Remaining Defendants would undoubtedly vigorously oppose and which Plaintiffs would need

21  to be successful on in order to even advance their claims.  Then, if Plaintiffs were successful on

22  appeal, they would then need to address the variety of upcoming risks associated with litigation

23  of this type.  *See* Nelson Decl. at ¶21.

24        Therefore, as discussed in the Nelson Decl. and the Final Approval Motion, substantial

25  risks and uncertainties in this type of litigation, and in this Action in particular, made it far from

26  certain that a cash recovery would ultimately be obtained from the Remaining Defendants.

27  Therefore, from the outset this Action (no matter the strength of the claims asserted) presented

28

1    no assurance whatsoever that the litigation would survive the Remaining Defendants' attacks on

2    the pleadings and class certification, motion(s) for summary judgment, or arguments and

3    defenses at trial.

4          Moreover, as to Velti's auditor (one of the Remaining Defendants), they would have

5    vigorously contested loss causation if the litigation continued.   The United States Supreme

6    Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005), and subsequent

7    cases interpreting *Dura*, have made proving loss causation even more difficult and uncertain than

8    in the past.   *See In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007) ("Proving loss

9    causation would be complex and difficult.").   Two examples illustrate this point.   In *In re Oracle*

10   *Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), the court

11   granted summary judgment in defendants' favor holding that shareholder plaintiffs failed to

12   present sufficient evidence to establish loss causation under Rule 10b-5.   While the Ninth Circuit

13   reversed the decision, the court in *In re Apollo Grp., Inc. Sec. Litig.*, No. CV 04-2147-PHx-JAT,

14   2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), *rev'd*, No. 08-16971, 2010 U.S. App.

15   LEXIS 14478 (9th Cir. June 23, 2010), on a motion for judgment as a matter of law, overturned a

16   jury verdict in favor of shareholders based on insufficient evidence presented at trial to establish

17   loss causation.[8]

18         The amount of damages incurred by Settlement Class Members would also have been

19   hotly-contested at trial.   Damages in securities class action cases are always difficult to prove

20   and, at trial, the damage assessments of Plaintiffs' and the Remaining Defendants' experts were

21   sure to vary substantially, and in the end, this crucial element at trial would have been reduced to

22   a battle of the experts.   *See Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011

23   WL 566814, at *5 (N.D.Cal. Feb. 15, 2011) (collecting cases and noting that "[i]n general,

24   calculating damages in a securities fraud case is a highly technical task that usually involves a

25   _____

26   [8]      *See also In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (court granted defendants' judgment as a matter of law on the basis of loss causation, overturning jury verdict and award in plaintiff's favor); *Robbins v. Koger Props.*, 116

27   F.3d 1441 (11th Cir. 1997) (finding no loss causation and overturning $81 million jury verdict).

28

1    battle of experts."); *Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014

2    WL 1802293, at *2 (C.D. Cal. May 6, 2014) (noting that "[p]roving and calculating damages

3    required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in

4    a complex area of the law"); *Tyco*, 535 F. Supp. 2d at 260-61 ("even if the jury agreed to impose

5    liability, the trial would likely involve a confusing "battle of the experts" over damages").

6    Plaintiffs would have likely faced a motion *in limine* by the Remaining Defendants to preclude

7    Plaintiffs' damage expert's testimony under the *Daubert* test and risked a decision that a

8    valuation model might not be admissible in evidence.  The reaction of a jury to battling expert

9    testimony is highly unpredictable and in such a battle, Plaintiffs' Counsel recognize the

10   possibility that a jury could be swayed by convincing experts for the Settling Defendants, and

11   find that there were no damages or only a fraction of the amount of damages Plaintiffs

12   contended.  *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y.

13   1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986) (approving settlement where "it is virtually impossible to

14   predict with any certainty which testimony would be credited, and ultimately, which damages

15   would be found to have been caused by actionable, rather than the myriad nonactionable factors

16   such as general market conditions"); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165

17   (CM), 2007 WL 4115809, at *10 (S.D.N.Y. Nov. 7, 2007) ("The jury's verdict with respect to

18   damages would depend on its reaction to the complex testimony of experts, a reaction which at

19   best is uncertain.").

20          While it is certain that Plaintiffs would present evidence at trial that the aggregate

21   damages exceed the amount of the proposed Settlement, that assumes that most, if not all, of the

22   significant liability and damage issues would have been resolved in the Settlement Class' favor.

23   Even if Plaintiffs prevailed and obtained a substantial judgment after trial, there is little doubt

24   that the Remaining Defendants would have appealed.  The appeals process would have likely

25   spanned several years, during which the Settlement Class would have received no additional

26   distribution on any damage award.  In addition, an appeal of any verdict would carry the risk of

27

28

1    reversal, in which case the Settlement Class would receive no recovery after having prevailed on

2    the claims at trial.

3         As the court noted in *In re Ikon Office Sols., Inc.*, 194 F.R.D. 166, 194-95 (E.D. Pa.

4    2000), "[t]here were the legal obstacles of establishing scienter, damages, causation . . . .  The

5    court also acknowledges that securities actions have become more difficult from a plaintiff's

6    perspective in the wake of the PSLRA. . . .  The Act imposes many new procedural hurdles . . . .

7    It also substantially alters the legal standards applied to securities fraud claims in ways that

8    generally benefit defendants rather than plaintiffs."  The court's statement in *Ikon* is certainly

9    applicable here.[9]

10              **3.    The Skill Required and the Quality and Efficiency of the Work**

11        The "'prosecution and management of a complex national class action requires unique

12   legal skills and abilities.'"  *Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *40 (citations

13   omitted).  These unique skills were called upon here and support the requested Fee and Expense

14   Award.  From the outset Plaintiffs' Counsel engaged in a concerted effort to obtain the maximum

15   recovery for the Settlement Class.  This Action required a determined investigation and the skill

16   to respond to a host of legal and factual defenses raised by the Remaining Defendants.

17        The recovery obtained for the Settlement Class is the direct result of the significant

18   efforts of highly skilled and specialized attorneys who possess substantial experience in the

19   prosecution of complex securities class actions.  Unlike those cases where Plaintiffs' Counsel

20

21

22   [9]      Even before the passage of the PSLRA, courts had noted that a securities case "by its
     very nature, is a complex animal."  *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 654
23   (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980).  *See also Miller v.
     Woodmoor Corp.*, No. 74-F-988, 1978 U.S. Dist. LEXIS 15234, at *11-*12 (D. Colo. Sept. 28,
24   1978):

25        The benefit to the class must also be viewed in its relationship to the complexity,
          magnitude, and novelty of the case. . . .
26

27        Despite years of litigation, the area of securities law has gained little
          predictability.  There are few "routine" or "simple" securities actions.

28
     NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE
     AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
     3:13-cv-03889-WHO                                                                    - 11 -

1   were able to rely on the investigations of others (such as the SEC or other governmental agency),

2   here Plaintiffs' Counsel developed the claims in the Action against all Defendants. [10]

3         The quality of opposing counsel is also important in evaluating the quality of the work

4   done by Plaintiffs' Counsel.  *See, e.g.*, *Nguyen*, 2014 WL 1802293, at *3; *In re Equity Funding*

5   *Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977).  Plaintiffs' Counsel was opposed in

6   the litigation as to the Remaining Defendants by very skilled and highly respected counsel from

7   Morgan, Lewis & Bockius LLP and Loeb & Loeb LLP, two law firms with well-deserved

8   reputations for vigorous advocacy in the defense of complex civil cases – including securities

9   class actions such as this one.  In the face of this formidable opposition, Plaintiffs' Counsel was

10  able to develop their case so as to persuade the Remaining Defendants to enter into a Settlement

11  of the Action.

12          **4.**      **The Contingent Fee Nature of the Action and the Financial**
                      **Burden Carried by Plaintiffs' Counsel**

13

14        A determination of a fair fee must include consideration of the contingent nature of the

15  fee and the difficulties which were overcome in obtaining the Settlement.

16        It is an established practice in the private legal market to reward attorneys for taking the

17  risk of non-payment by paying them a premium over their normal hourly rates for winning

18  contingency cases.  *See* Richard Posner, *Economic Analysis of Law* §21.9, at 534-35 (3d ed.

19  1986).  Contingent fees that may far exceed the market value of the services if rendered on a

20  non-contingent basis are accepted in the legal profession as a legitimate way of assuring

21  competent representation for plaintiffs who could not afford to pay on an hourly basis regardless

22  whether they win or lose.  *WPPSS*, 19 F.3d at 1299; *see also Omnivision*, 559 F. Supp. 2d at

---

23  [10]    *See In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (in
awarding 25% of a $193 million settlement fund, the court noted the skill and efficiency of

24  plaintiffs' counsel and outstanding results "in a litigation that was far ahead of public agencies
like the [SEC] and the United States Department of Justice, which long after the institution of

25  this litigation awakened to the concerns that plaintiffs' counsel first identified"); *Maley v. Del
Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (In awarding 33-1/3% of the

26  settlement fund, the court noted, "[i]n this Action, Plaintiffs' Class Counsel did not 'piggy back'
on any prior governmental action . . . .  Plaintiffs' Class Counsel developed, litigated and

27  successfully negotiated this Action by themselves, expending substantial time and effort.").

28

1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee.").

In awarding counsel's attorneys' fees in *HCL Partners Ltd. P'ship v. Leap Wireless Intern., Inc.*, 07 CV 2245 MMA, 2010 WL 4156342, at *4 (S.D. Cal., Oct. 15, 2010), the court noted the risks that plaintiffs' counsel had taken:

> "The Court hereby awards Plaintiff's Counsel attorneys' fees of 25% of the Settlement Fund, which is $13,750,000, plus the interest earned thereon for the same time period and at the same rate as that earned on the Settlement Fund until the fee is paid, plus reimbursement of litigation expenses in the amount of $112,715.16. The Court finds that the amount of fees awarded is appropriate and is fair and reasonable under both the "percentage-of-recovery" method and the lodestar method given the substantial risks of non-recovery, the time and effort involved, and the result obtained for the Class."

Indeed, the risk of no recovery is very real in cases like the Action.  There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.  As the court in *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."  *Id*. at 994.  Even plaintiffs who get past summary judgment and succeed at trial may find their judgment overturned on appeal or on a post-trial motion.[11]

Because the fee in this Action was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be realized only after considerable and difficult effort.  Plaintiffs' Counsel committed significant resources of both time and money to the vigorous and successful prosecution of this Action for the benefit of the Settlement Class.  Moreover, here, the fee request is far less than Plaintiffs' Counsel's lodestar

---

[11]    *See, e.g., BankAtlantic Bancorp,* 2011 WL 1585605; *Robbins,* 116 F.3d at 1448-49; *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996); *In re Apple Comput. Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608, at *1-*2 (N.D. Cal. Sept. 6, 1991); *Backman v. Polaroid Corp.*, 910 F.2d 10, 18 (1st Cir. 1990); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 309 (2d Cir. 1979).

1    for the hours spent on this portion of the Action, as discussed below.  The contingent nature of

2    counsel's representation strongly favors approval of the Fee and Expense Award.

3         **5.    A 15% Fee Award Is Well Below the Market Rate in Similar Complex, Contingent Litigation**

4

5         Courts often look to fees awarded in comparable cases to determine if the fee requested is

6    reasonable.  *See Vizcaino*, 290 F.3d at 1050 n.4.  A fee of 25% or more has been repeatedly

7    awarded by courts within this District with settlement recoveries under $10 million.  *See, e.g.*,

8    *Larsen v. Trader Joe's Co.*, Case No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11,

9    2014) (granting fee request of 28% on a $3.375 million settlement fund in consumer class

10   action); *In re Nuvelo, Inc. Sec. Litig.*, No. C 07-0405 CRB, 2011 WL 2650592, at *3 (N.D. Cal.

11   July 6, 2011) (awarding 30% of $8.9 million settlement); *In re Gilead Scis. Sec. Litig.*, No. C-03-

12   4999-SI, (N.D. Cal. Nov. 5, 2010) (ORDER) (awarded 30% of $8.25 million recovery, plus

13   expenses); *In re Infineon Techs. AG Sec. Litig.*, No. C-04-4156-JW (N.D. Cal. Nov. 2, 2011)

14   (ORDER) (awarded fees of 27% of $6.2 million recovery, plus expenses); *Twinde v. Threshold

15   Pharms., Inc., et al.*, No. 4:07-cv-04972-CW (N.D. Cal. Apr. 16, 2010) (ORDER) (awarded fees

16   of 25% of $10 million recovery, plus expenses); *City of Westland Police and Fire Ret. Sys. v.

17   Sonic Sols.*, No. C 07-05111-CW (N.D. Cal. Apr. 8, 2010) (ORDER) (awarded fees of 25% of $5

18   million recovery, plus expenses); *In re Impax Labs., Inc. Sec. Litig.*, No. C-04-4802-JW (N.D.

19   Cal. May 12, 2009) (ORDER) (awarded fees of 25% of $9 million recovery, plus expenses); *In

20   re U.S. Aggregates, Inc. Sec. Litig.*, No. C-01-1688-CW (N.D. Cal. Apr. 6, 2006) (ORDER)

21   (awarded fees of 25% of $3.5 million recovery, plus expenses).  *See* Nelson Decl. Ex. F.

22   Plaintiffs' Counsels' request of 15% follows a determined effort, including actions to reduce the

     cost of notice to the Class, to preserve the Settlement Fund for the Settlement Class.

23        **C.    Reaction of the Settlement Class Supports Approval of the Fee and Expense Award**

24

25        Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also

26   consider the reaction of the class when deciding whether to award the requested fee.  *Heritage

27   Bond*, 2005 U.S. Dist. LEXIS 13627, at *48 ("The presence or absence of objections . . . is also a

28

1    factor in determining the proper fee award."); *Larsen*, 2014 WL 3404531, at *5-*6 (considering

2    reaction of settlement class and upholding settlement despite sixteen objections).

3           Pursuant to the Preliminary Approval Order, mailing of the Postcard Notice was

4    completed by October 26, 2016, the Summary Notice was published in the national edition of

5    *Investor's Business Daily* as well as over the *Business Wire* on October 31, 2016, and the Notice

6    of Pendency and Proposed Settlement of Class Action (in addition to other relevant documents)

7    was published on the Settlement website, www.veltisecuritieslitigation.com.   Nelson Decl. at

8    ¶33.  Settlement Class Members were informed in the Notice that Plaintiffs' Counsel were

9    moving the Court for a Fee and Expense Award, with the fee portion being 15% of the

10   Settlement Fund and for payment of expenses in an amount not to exceed $17,000.  While the

11   deadline to file objections – January 18, 2017 – has not yet passed, the Notices advised the

12   Settlement Class Members of their right to object to the Fee and Expense Award.  As of the date

13   of this memorandum, no objections to the Fee and Expense Award provision have been filed.

14   Additionally, only one shareholder has exercised their right to opt-out of the Settlement.  *See id.*

15   at ¶34.[12]

16          **D.      The Requested Fee and Expense Award Is Reasonable Under a
                     Lodestar Cross-Check Analysis**

17          Although Plaintiffs' Counsel seek approval of a fee based on a percentage of the

18   recovery, "[a]s a final check on the reasonableness of the requested fees, courts often compare

19   the fee counsel seeks as a percentage with what their hourly bills would amount to under the

20   lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048.[13]  In *Vizcaino*, the Ninth Circuit noted

21   that an analysis of the "lodestar method is merely a cross-check on the reasonableness of a

---

[12]      Additional information concerning the response of the Settlement Class Members, as required by this District's Procedural Guidelines for Class Action Settlements are addressed in the Final Approval Motion.

[13]      *See Fernandez v. Victoria Secret Stores, LLC*, No. CV-06-04149 MMM (SHx), 2008 U.S. Dist. LEXIS 123546, at *14 (C.D. Cal. July 21, 2008) (explaining the lodestar cross-check "need not be as exhaustive as a pure lodestar calculation" and "'can be performed with less exhaustive cataloging and review of counsel's hours.'") (quoting *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 U.S. Dist. LEXIS 27269, at *15 (N.D. Cal. Mar. 28, 2007)).

1   percentage figure, and it is widely recognized that the lodestar method creates incentives for

2   counsel to expend more hours than may be necessary on litigating a case so as to recover a

3   reasonable fee, since the lodestar method does not reward early settlement." 290 F.3d at 1050

4   n.5.[14]

5          Here, Plaintiffs' Counsel spent 1,871.55 hours of attorney and paraprofessional time

6   prosecuting this Action on behalf of the Settlement Class from August 8, 2014 through the

7   present.[15]   The resulting lodestar is $1,088,078.00.   The requested fee of 15% of the Settlement

8   Fund would equal $112,500.   Thus, the requested fee represents *a negative multiplier* of

9   approximately 0.10.   In *Vizcaino*, the Ninth Circuit approved a 28% fee that resulted in a 3.65

10  multiplier.   *Vizcaino*, 290 F.3d at 1052-54 (finding multipliers ranged as high as 19.6 though

11  most run from 1.0-4.0); *see also In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399

12  (S.D.N.Y. 1999) ("'In recent years multipliers of between 3 and 4.5 have been common' in

13  federal securities cases.") (citations omitted); *In re Charles Schwab Corp. Sec. Litig.*, No. C 08-

14  01510 WHA, 2011 U.S. Dist. LEXIS 44547, at *28-*29 (N.D. Cal. April 19, 2011) (multiplier of

15  2.68 permitted as reasonable); *Xcel*, 364 F. Supp. 2d at 998-99 (awarding 4.7 multiplier); *In re*

16  *Rite Aid Corp. Sec. Litig.*, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003) (multiplier of 4.07 and

17  recognizing that "'multipliers in this range are fairly common'") (citation omitted), *vacated on*

18  *other grounds*, 396 F.3d 294 (3d Cir. 2005).   Accordingly, as the request represents a significant

19  negative multiplier, the lodestar cross-check supports the request here.

20

21

22

23

---

24  [14]     *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) (cross-check is "not a full-
    blown lodestar inquiry" and the court "should be satisfied with a summary of the hours expended

25  by all counsel at various stages") (citations omitted).   To the extent the Court would like to
    review the time detail for Plaintiffs' Counsel, Plaintiffs' Counsel will, upon notification from the

26  Court, submit it to the Court for an in camera review.   *Blum*, 465 U.S. at 895.

27  [15]     All hours from the filing of the Action through August 7, 2014 were presented to the
    Court as part of the Partial Settlement and are not included here.

28

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE
AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO                                                                              - 16 -

1

2

### E.   Plaintiffs' Counsel's Hourly Rates and Time Expended Are Reasonable

3

Under the lodestar method, reasonable hourly rates are determined by "prevailing market

4

rates in the relevant community," which are the rates a lawyer of comparable skill, experience

5

and reputation could command in the relevant community.  The relevant community is that in

6

which the court sits; here the Northern District of California.[16]

7

Plaintiffs' Counsel, with this filing, submit sworn declarations attesting to their hourly

8

rates and total hours devoted to the Action since the approval of the Partial Settlement, their

9

experience, and describing their efforts to prosecute this Action.[17]  The hourly rates submitted by

10

Plaintiffs' Counsel reflect their actual billing rates in contingent actions or non-contingent work.

11

*See* Nelson Decl. Exs. C-E.  These hourly rates are consistent with the rates previously approved

12

by the Court in the Partial Settlement.[18]  Plaintiffs' Counsel are all highly respected members of

13

their respective bars with extensive experience in prosecuting high-stakes complex litigation,

14

including securities class actions, shareholder derivative actions, and consumer class actions.

15

Nelson Decl. at Exs. C-E.  Plaintiffs' Counsel's rates are appropriate for complex, nationwide

16

17

[16]      *See Schwartz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).

18

[17]      *See* Nelson Decl. Exs. C-E.  These rates are those currently charged by each firm and it is well within the Court's discretion to calculate the lodestar based on these prevailing rates. *Vizcaino*, 290 F.3d at 1051; *Gates v. Deukmejian*, 987 F.2d 1392, 1406 (9th Cir. 1992) (use of current rates appropriate "in order to adjust for inflation and loss of use funds"); *WPPSS*, 19 F.3d at 1305 (district court is "free to use either current rates for attorneys of comparable ability and experience or historical rates coupled with a prime rate enhancement," but denial of both is reversible error because this would "inadequately compensate the firm for the delay in receiving its fees").

19

20

21

22

[18]      *See Faigman v. AT&T Mobility LLC*, No. C06-04622 MHP, 2011 WL 672648, at *5 (N.D. Cal. Feb. 16, 2011) (approving hourly rates ranging up to $735.74 for partner services, $448.86 for associate attorney services, and $175 for paralegal services); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *20 (N.D. Cal. Apr. 1, 2011) (approving hourly rates ranging up to $725 for partner services); *Suzuki v. Hitachi Global Storage Techs., Inc.*, No. C06-7289, 2010 WL 956896, at *3 (N.D. Cal. Mar. 12, 2010) (finding reasonable attorneys" fees based on rates of $650 for partner services, $500 for associate attorney services, and $150 for paralegal services); *Armstrong v. Brown*, No. C94-2307, 2011 WL 3443922, at *2-*3 (N.D. Cal. Aug. 8, 2011) (approving partner-level rates ranging from $560 to $800, associate-level rates ranging from $285 to $510, and litigation support staff and paralegal clerks ranging from $150 to $240 in the "Bay Area").

23

24

25

26

27

28

1   litigation.  Thus, the rates used to generate the lodestar are reasonable.  In addition, given the

2   complexity of the Action, the filing of substantial pleadings, undertaking extensive investigatory

3   efforts, and hard fought motion practice, the hours expended were also reasonable.  *See id*.

4   **III.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE
            NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED**

5
6           Plaintiffs' Counsel also request payment of expenses incurred by them in connection with

7   the prosecution of this Action.  Plaintiffs' Counsel have incurred expenses in the amount of

8   $16,989.00.   These expenses are categorized in the Nelson Decl., submitted to the Court

9   herewith, and include court filing costs, travel expenses, and legal research costs.

10          The appropriate analysis to apply in deciding which expenses are compensable in a

11  common fund case of this type is whether the particular costs are of the type typically billed by

12  attorneys to paying clients in the marketplace.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.

13  1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses

14  that 'would normally be charged to a fee paying client.'") (citations omitted).  As was also

15  recently explained, "[a]ttorneys who created a common fund are entitled to the reimbursement of

16  expenses they advanced for the benefit of the class."  *Vincent v. Reser*, No. 11-03572 (CRB),

17  2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013).  Therefore, it is proper to pay reasonable

18  expenses even though they are greater than taxable costs.  *Harris*, 24 F.3d at 19.  *See also*

19  *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936, 2013 U.S. Dist. LEXIS 100275, at *32

20  (C.D. Cal. July 9, 2013) (reimbursing "expenses for mediation fees, copying, telephone calls,

21  expert expenses, research costs, travel, postage, messengers, and filing fees."); *Barbosa v.*

22  *Cargill Meat Sols. Corp.*, No. 1:11-cv-00275-SKO, 2013 WL 3340939, at *22 (E.D. Cal. July 2,

23  2013) (noting that "travel, mediation fees, photocopying,[a] private investigator to locate missing

24  Class Members, and delivery and mail charges" are "routinely reimbursed.")

25          The categories of expenses for which counsel seek reimbursement here are the type of

26  expenses routinely charged to hourly clients and, therefore, should be reimbursed out of the

27  common fund.  The expenses detailed in the Nelson Decl. do not take into account expenses

28

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE
AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO                                                                    - 18 -

1   already reimbursed for the results of the Partial Settlement, but instead can be directly traced to

2   the efforts to advance the Action against the Remaining Defendants.

3   **IV.        CONCLUSION**

4           Based on the foregoing and upon the entire record herein, Plaintiffs' Counsel respectfully

5   submit that the Court should grant this Fee and Expense Award Motion, and award attorneys'

6   fees in the amount of 15% of the Settlement Fund, plus expenses in the amount of $16,989.00.

7   DATED:  December 22, 2016                    Respectfully submitted,

8                                                THE WEISER LAW FIRM, P.C.
                                                 KATHLEEN A. HERKENHOFF (SBN 168562)
9

10                                                   s/ KATHLEEN A. HERKENHOFF
                                                    KATHLEEN A. HERKENHOFF
11
                                                 12707 High Bluff Drive, Suite 200
12                                               San Diego, CA 92130
                                                 Telephone:  (858) 794-1441
13                                               Facsimile:  (858) 794-1450
                                                 kah@weiserlawfirm.com
14
                                                 THE WEISER LAW FIRM, P.C.
15                                               ROBERT B. WEISER
                                                 (admitted *pro hac vice*)
16                                               CHRISTOPHER L. NELSON
                                                 (admitted *pro hac vice*)
17                                               JAMES M. FICARO
                                                 22 Cassatt Avenue, First Floor
18                                               Berwyn, PA 19312
                                                 Telephone: (610) 225-2677
19                                               Facsimile:  (610) 408-8062
                                                 rw@weiserlawfirm.com
20                                               cln@weiserlawfirm.com
                                                 jmf@weiserlawfirm.com
21
                                                 *Lead Counsel for Plaintiffs and Counsel for Lead*
22                                               *Plaintiff Bobby Yadegar/Ygar Capital LLC*

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE
AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO                                                                      - 19 -

1 | BERMAN DEVALERIO
2 | JOSEPH J. TABACCO, JR. (SBN 75284)
  | NICOLE LAVALLEE (SBN 165755)
  | KRISTIN MOODY (SBN 206326)
3 | One California Street, Suite 900
  | San Francisco, CA 94111
4 | Telephone: (415) 433-3200
  | Facsimile:  (415) 433-6382
5 | jtabacco@bermandevalerio.com
  | nlavallee@bermandevalerio.com
6 | kmoody@bermandevalerio.com

7 | *Attorneys for Plaintiff St. Paul Teachers'*
  | *Retirement Fund Association*
8 |
9 | LABATON SUCHAROW LLP
  | JONATHAN GARDNER
  | (admitted *pro hac vice*)
10 | 140 Broadway, 34th Floor
   | New York, NY 10005
11 | Telephone: (212) 907-0700
   | Facsimile: (212) 818-0470
12 | jgardner@labaton.com

13 | *Attorneys for Plaintiffs Newport News*
   | *Employees' Retirement Fund and Oklahoma*
14 | *Firefighters Pension and Retirement System*

15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' COUNSEL'S FEE AND EXPENSE
AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF –
3:13-cv-03889-WHO

1

<u>CERTIFICATE OF SERVICE</u>

2

3

     I hereby certify that on December 22, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

4

5

     I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 22, 2016.

6

7

8

   s/ KATHLEEN A. HERKENHOFF
   KATHLEEN A. HERKENHOFF

9

   THE WEISER LAW FIRM, P.C.

10

   12707 High Bluff Drive, Suite 200
   San Diego, CA 92130
   Telephone:  (858) 794-1441

11

   Facsimile:  (858) 794-1450

12

   Email:  kah@weiserlawfirm.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Mailing Information for a Case 3:13-cv-03889-WHO Rieckborn v. Velti plc et al**

#### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **AYM Aggressive Value Fund, LP**
  asteyer@steyerlaw.com

- **Peter E. Borkon**
  peterb@hbsslaw.com

- **Donald A. Broggi**
  dbroi@scott-scott.com

- **Joseph Daniel Cohen**
  jcohen@scott-scott.com

- **Hal Davis Cunningham**
  hcunningham@scott-scott.com,efile@scott-scott.com

- **Brock Dahl**
  bdahl@wsgr.com

- **Patrick Norton Downes**
  pdownes@loeb.com,ptaylor@loeb.com

- **Cynthia A. Dy**
  cdy@wsgr.com

- **Boris Feldman**
  boris.feldman@wsgr.com

- **Christine M. Fox**
  cfox@labaton.com,lmehringer@labaton.com,electroniccasefilings@labaton.com,fmalonzo@labaton.com

- **Jonathan Gardner**
  jgardner@labaton.com,jjohnson@labaton.com,cvillegas@labaton.com,acoquin@labaton.com,lmehringer@labaton.com,fmalonzo@labaton.com,acarpio@labaton.com,agreenbaum@labaton.com

- **Lionel Z. Glancy**
  info@glancylaw.com,lglancy@glancylaw.com

- **Michael M. Goldberg**
  michael@goldberglawpc.com

- **Joseph P. Guglielmo**
  jguglielmo@scott-scott.com

- **Christopher T. Heffelfinger**
  cheffelfinger@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Kathleen Ann Herkenhoff**
  kah@weiserlawfirm.com,jmf@weiserlawfirm.com,hl@weiserlawfirm.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,peterb@hbsslaw.com,brianm@hbsslaw.com,sf_filings@hbsslaw.com

- **Nicole Catherine Lavallee**
  nlavallee@bermandevalerio.com,kmoody@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Luke Anthony Liss**
  lliss@wsgr.com,fgarcia@wsgr.com

- **Robert Alan Meyer**
  rmeyer@loeb.com,ptaylor@loeb.com

- **Donald Anthony Miller**
  dmiller@loeb.com,vmanssourian@loeb.com

- **Matthew C Moehlman**
  mmoehlman@labaton.com

- **Kristin J. Moody**
  kmoody@bermandevalerio.com

- **Christopher Leigh Nelson**
  cln@weiserlawfirm.com

- **Park West Investors Market Fund, Limited**
  asteyer@steyerlaw.com

- **Park West Investors Master Fund, Limited**
  asteyer@steyerlaw.com

- **Park West Partners International Limited**
  asteyer@steyerlaw.com

- **Anthony David Phillips**
  aphillips@archernorris.com,dtatmon@archernorris.com

- **Joseph Mark Profy**
  jmp@weiserlawfirm.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Mark Punzalan**
  markp@punzalanlaw.com,office@punzalanlaw.com

markp@pahzalaw.com,office@pahzalaw.com

- **Brian J. Robbins**
  notice@robbinsarroyo.com

- **Casey Edwards Sadler**
  csadler@glancylaw.com

- **Charlene Sachi Shimada**
  charlene.shimada@morganlewis.com

- **Evan Jason Smith**
  esmith@brodsky-smith.com

- **Allan Steyer**
  asteyer@steyerlaw.com,lrorem@steyerlaw.com

- **Michael Walter Stocker**
  mstocker@labaton.com,drogers@labaton.com,ravan@labaton.com,ElectronicCaseFiling@labaton.com,lmehringer@labaton.com

- **Jon A Tostrud**
  jtostrud@tostrudlaw.com,acarter@tostrudlaw.com

- **Diane Marie Walters**
  dwalters@wsgr.com,vshreve@wsgr.com

- **Lucy Han Wang**
  lucy.wang@morganlewis.com

- **Robert Brian Weiser**
  rw@weiserlawfirm.com

- **Wendy Hope Zoberman**
  wzoberman@bermandevalerio.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)